# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JOEL DOUGLAS et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) 2:20-cv-00227-JDL |
| | ) |
| SCOTT LALUMIERE et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER

Joel Douglas and Steven Fowler have filed an Emergency Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 10). Fowler seeks an order restraining Androscoggin Savings Bank (the Bank) from conducting a foreclosure sale on property located at 661 Allen Avenue in Portland, which sale is scheduled for Thursday, September 17, 2020, and Douglas seeks an order restraining LH Housing, LLC from instituting a forcible entry and detainer action against Joel Douglas from property located at 75 Queen Street in Gorham, which action, according to Douglas, LH Housing will institute on October 1, 2020. ECF No. 10. A hearing was held on the motion on September 16, 2020 (ECF No. 26). Attorney Robert C. Andrews, Esq., appeared for the Plaintiffs, and Attorneys Paul McDonald, Esq., and Daniel J. Murphy, Esq., appeared for the Defendant Androscoggin Savings Bank. For the reasons explained below, I deny the motion.

# I. BACKGROUND

The gravamen of the Plaintiffs' claims is that they were fraudulently induced to enter unfavorable or predatory lease-option arrangements. The legal bases for those claims are, as relevant here, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961-1968 (West 2020), and Maine contract law.

The Plaintiffs allege the following facts through their affidavits and attached exhibits. Their motion also cites several exhibits attached to their First Amended Complaint (ECF No. 11), which I have referred to as necessary to make sense of the allegations in their emergency motion.

## A. Fowler

Fowler, or an entity associated with Fowler, owned property at 661 Allen Avenue in Portland. *See* ECF No. 11-9. In 2017, Fowler was approached by Defendant Scott Lalumiere, who knew that Fowler was in financial straits. ECF No. 10-2 ¶¶ 26-28. Lalumiere told Fowler that he would loan Fowler $200,000 and, in exchange, Fowler would deed the Allen Avenue property to Birch Point Storage, LLC, an entity associated with Lalumiere. ECF No. 10-2 ¶¶ 28-32. Lalumiere told Fowler that if he agreed to the deal, "made the payments on the mortgage, and maintain[ed] the property, [Fowler] could remain on [the] property as if [he] owned it and could buy it back at any time for $219,000.00." ECF No. 10-2 ¶ 29. Fowler agreed to the deal and entered into a lease with Birch Point, subject to a purchase option that could be exercised at any time during the lease's 60-month initial term. ECF No. 10-2 ¶¶

2

30-31 & Ex. A. Fowler's affidavit also represents that the property "has a value near $600,000.00." ECF No. 10-2 ¶ 39.

On the same day that Fowler transferred the property to Birch Point—April 28, 2017—Birch Point mortgaged the property to the Bank for approximately $400,000. ECF No. 10-2 ¶ 33; ECF No. 11-10 at 1, 22. At the same time, Birch Point assigned its rights under Fowler's lease to the Bank. ECF No. 11-12. According to Fowler's affidavit, in Lalumiere's communications with the Bank, Lalumiere "characterized the transaction" between Fowler and Birch Point "as [a] sale." ECF No. 10-2 ¶ 33.

Apparently, in late 2019, Fowler learned that Birch Point and Lalumiere were no longer making mortgage payments to the Bank, so Fowler began making payments directly to the bank in the amount of rent pursuant to his lease. ECF No. 10-2 ¶ 46 & Ex. B. The Bank now seeks to foreclose pursuant to its power of sale under the mortgage, and has scheduled a foreclosure sale for September 17, 2020. ECF No. 10-2 Ex. C; *see* 14 M.R.S.A. § 6203-A (West 2020).

**B.     Douglas**

In 2015, Douglas and Lalumiere, through MECAP, LLC, an entity associated with Lalumiere, entered into an agreement to finance the purchase of a home at 75 Queen Street in Gorham. ECF No. 10-1 ¶¶ 3-8. Pursuant to that agreement, MECAP and Lalumiere would purchase the property in MECAP's name and lease it to Douglas for one year, subject to a purchase and sale agreement that would close at the end of the lease, on June 30, 2016. ECF No. 10-1 ¶9; ECF No. 11-1 at 8-10. The purchase and sale agreement was for $275,000 and required Douglas to make an

3

earnest money deposit of $30,000 prior to closing. ECF No. 11-1 at 8. Douglas does not assert that he ever tendered the purchase price or otherwise attempted to exercise his rights under the purchase agreement. The purchase agreement also recited that "[Douglas] will lease the property from June 1, 2015 to June 30, 2016." *Id.* Douglas does not allege that there is any other lease agreement, and there is no indication of one in the record.

On April 13, 2016, MECAP transferred the property to LH Housing, LLC, an entity that Douglas alleges is affiliated with Lalumiere. ECF No. 10-1 ¶ 11. LH Housing subsequently mortgaged the property. ECF No. 10-1 ¶ 12. Defendant Russell Oakes, whom Douglas alleges to be associated with Lalumiere, told Douglas in June of 2019 that the price for the property was $405,000; at another unspecified time, Oakes told Douglas that "they do not need to honor [the original] purchase and sale agreement." ECF No. 10-1 ¶¶ 13-16; ECF No. 11-5. Douglas has continued "to pay [his] obligation" on the lease and has made substantial improvements to the property. ECF No. 10-1 ¶ 23. On July 27, 2020, LH Housing sent Douglas a sixty-day notice to quit. ECF No. 10-1 ¶ 24.

## II. LEGAL STANDARD

"In order to determine whether to issue a temporary restraining order, [a court] applies the same four-factor analysis used to evaluate a motion for preliminary injunction." *Animal Welfare Inst. v. Martin*, 665 F. Supp. 2d 19, 22 (D. Me. 2009). Those factors are: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm to the movant if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the

4

hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Id.* (alterations omitted) (quoting *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 17-18 (1st Cir. 2006)). "Of these four factors, the movant's likelihood of success 'is the touchstone of the preliminary injunction inquiry.'" *Maine Educ. Ass'n Benefits Tr. v. Cioppa*, 695 F.3d 145, 152 (1st Cir. 2012) (quoting *Philip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 674 (1st Cir. 1998.)). "If the moving party cannot establish that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Id.* (quotation marks omitted).

"[A] preliminary injunction may be imposed 'only on notice to the adverse party,' a requirement that has been held to include a hearing followed by findings that the party to be favored has a substantial likelihood of success in the pending action, would otherwise suffer irreparable harm and can claim the greater hardship in the absence of an order, which will not disserve the public interest if imposed." *Fryzel v. Mortg. Elec. Reg. Sys., Inc.*, 719 F.3d 40, 44 (1st Cir. 2013) (quoting Fed. R. Civ. P. 65(a)(1)).

### III. ANALYSIS

#### A. Fowler

Fowler asserts both RICO and breach-of-contract claims against the Bank (ECF No. 10 at 7-15), which I address in turn.

##### 1. RICO

To succeed on the merits of a civil RICO claim predicated, like Fowler's claim, on mail or wire fraud, 18 U.S.C.A. §§ 1341, 1343 (West 2020), requires proof of "a scheme to defraud with the specific intent to defraud." *McEvoy Travel Bureau, Inc.*

5

*v. Heritage Travel, Inc.*, 904 F.2d 786, 790 (1st Cir. 1990). Other than conclusory allegations, the factual assertions in Fowler's affidavit do not remotely indicate either that the Bank possessed intent to defraud or that the Bank participated knowingly in a scheme to defraud. Fowler argues that I should infer knowledge from the discrepancy between the mortgage price ($400,000) and the repurchase price in his lease and purchase agreement ($219,000), but such discrepancies can arise for a multitude of reasons, and, without more, is not sufficient to put the Bank on notice, let alone provide actual knowledge, of anything amiss.[1] Fowler has not established that his RICO claims against the Bank are likely to succeed.

### 2. Breach of Contract

Fowler's breach-of-contract argument is predicated on a theory that, under 11 M.R.S.A. § 2-1303 (West 2020), Birch Point's assignment of the lease to the Bank obligated the Bank to take on all of Birch Point's duties under the lease, including the duty to sell the property back to Fowler. Section 2-1303, however, like the rest of Article 2-A, does not apply to leases of real property. *See* 11 M.R.S.A. §§ 2-1102, 2-1103(j) (West 2020). Furthermore, there is no suggestion in Fowler's affidavit, nor elsewhere in the record, that he ever entered into a contract with the Bank, and he has identified no authority that might support a determination that the Bank had any contractual obligations to Fowler. Therefore, Fowler has not established a likelihood of success on a breach of contract theory against the Bank.

---

[1] For purposes of the present motion, I do not address Fowler's allegations regarding Lalumiere and the other actors in the alleged fraudulent scheme.

Because Fowler has failed to demonstrate that he is likely to succeed on the merits of his claim against the Bank, I deny the emergency motion as to him.[2]

**B.     Douglas**

Before turning to the merits of Douglas's request, I address one preliminary matter. At the hearing on September 16, Douglas's counsel acknowledged that he had failed to provide notice of the hearing to LH Housing or its attorney and could not explain that failure. An ex parte order pursuant to Rule 65(b) is therefore inappropriate. I write to explain why Douglas has nevertheless failed to establish an entitlement to preliminary relief.

Douglas alleges that Lalumiere and MECAP breached the purchase agreement between MECAP and Douglas when MECAP sold the property to LH Housing. However, to whatever extent that Douglas might have a breach of contract claim against Lalumiere or MECAP for selling the property to a third party, Douglas has not explained, and nothing in his affidavit makes clear, the nature of his contractual relationship with LH Housing, how LH Housing might have breached whatever that contractual relationship is, or how the transfer from MECAP to LH Housing has led to his current circumstance. The purchase agreement, by its terms, expired on June 30, 2016 (ECF No. 11-1 at 8), and Douglas has not asserted that he ever attempted to exercise or enforce the purchase agreement against any party, for instance, by tendering the purchase price, either before or after the purchase agreement was due to close.

---

[2] Because I conclude that Fowler has failed to establish a "likelihood of success on the merits" of his claim against the Bank, I need not and do not address the remaining factors. *Philip Morris, Inc.*, 159 F.3d at 673.

I therefore conclude that, on the record before me, Douglas has failed to establish a likelihood of success on the merits to support granting an ex parte temporary restraining order.[3]

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Plaintiffs' Emergency Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 10) is **DENIED**.

**SO ORDERED.**

**Dated this 16th day of September, 2020.**

/s/ JON D. LEVY
**CHIEF U.S. DISTRICT JUDGE**

---

[3] Because I conclude that Douglas, like Fowler, has failed to establish a "likelihood of success on the merits," I need not and do not address the remaining factors. *Philip Morris, Inc.*, 159 F.3d at 673.