UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JOEL DOUGLAS, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
|          v. | )   2:20-cv-00227-JDL |
| | ) |
| SCOTT LALUMIERE, et al., | ) |
| | ) |
|    Defendants. | ) |

### ORDER ON PLAINTIFF STEVEN FOWLER'S MOTION FOR TEMPORARY RESTRAINING ORDER

On February 16, 2021, Plaintiff Steven Fowler filed a motion for a temporary restraining order and preliminary injunction in this case (ECF No. 183). Fowler seeks an order restraining Whipping Post, LLC, and its sole member, Marc Fishman, from proceeding with a pending state court action for forcible entry and detainer on property located at 661 Allen Avenue in Portland (the "Property"). A video teleconference hearing was held on February 17, 2021. After hearing argument and receiving Fishman's testimony, I denied Fowler's motion orally on the record (ECF No. 191). I write now to explain the basis for my decision.

### I. BACKGROUND

I previously outlined Fowler's claims in my Order denying his previous request for a temporary restraining order with regard to a foreclosure sale on the Property in September 2020 (ECF No. 29), but repeat the relevant facts here. Fowler contends that he was fraudulently induced to enter into an unfavorable lease/buy back arrangement with regard to the Property, and that this was part of a broader

conspiracy led by Defendant Scott Lalumiere to obtain properties through fraudulent transactions and siphon off the equity. As relevant here, Fowler brings claims against Lalumiere and the other named defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961-1968 (West 2021), and Article 9 of Maine's Consumer Credit Code, 9-A M.R.S.A. §§ 9-101 to 9-408 (West 2021).

Specifically, Fowler alleges the following facts through an affidavit attached to his motion (ECF No. 183-1).[1] In 2017, Fowler—who at that time owned the Property through a business entity—was approached by Lalumiere, who knew that Fowler was in financial straits. *Id.* ¶¶ 20-22. Lalumiere offered to lend Fowler $200,000 in exchange for Fowler deeding the Property to Defendant Birch Point Storage, LLC, an entity associated with Lalumiere. *Id.* ¶¶ 21-25. Lalumiere told Fowler that if he agreed to the deal, "made the payments on the mortgage, and maintained the property, [Fowler] could remain on [the] property as if [he] owned it and could buy it back at any time for $219,000[.]" *Id.* ¶ 22. Fowler agreed to the deal and entered into a lease with Birch Point, subject to a purchase option. ECF No. 10-2 ¶¶ 30-31. Fowler also represents that the Property "has a value over $600,000[.]" ECF No. 183-1 ¶ 32.

On the same day that Fowler transferred the Property to Birch Point—April 28, 2017—Birch Point mortgaged the Property to Defendant Androscoggin Savings Bank (the "Bank") for over $400,000. ECF No. 183-1 ¶ 28; *see* ECF No. 10-2 ¶ 33. In late 2019, Fowler learned that Birch Point and Lalumiere were no longer making

---

[1] I also refer to the First Amended Complaint (ECF No. 11), as well as an affidavit that Fowler attached to his prior motion for a temporary restraining order (ECF No. 10-2), for context for his allegations.

2

payments on the mortgage. ECF No. 10-2 ¶ 46. On September 15, 2020, after Fowler learned that the Bank had scheduled a non-judicial foreclosure sale on the Property for September 17, Fowler filed a motion for a temporary restraining order against the Bank, seeking to enjoin the foreclosure sale (ECF No. 10). On September 16, I denied Fowler's motion on the basis that he had not established a likelihood of success on the merits of his RICO claim against the Bank (ECF No. 29).

On September 17, the Bank conducted a non-judicial foreclosure sale of the Property. ECF No. 183-1 ¶¶ 37-39. On September 22, Fowler received a voice message from Marc Fishman, the buyer at the foreclosure sale. *Id.* ¶ 42. The message stated:

> [M]y name is Marc Fishman of the Fishman Realty Group umm I was the high bidder at the [a]uction . . . on the property located on Allen Avenue which you occupy. Ah Shawn Lyden[,] a mutual friend and ah business partner—not business partner—but we do deals together collaboratively . . . suggested I reach out to you.

*Id.* ¶ 43. Shawn Lyden is also a Defendant in this action, although his precise role in the alleged conspiracy is neither clear from the First Amended Complaint's allegations nor pivotal to deciding this motion.

In early February 2021, Fishman, through Whipping Post, initiated a forcible entry and detainer action in the Maine District Court in Portland. There is a trial management conference in that matter scheduled for today. *Id.* ¶ 44. Fowler filed this motion on February 16, 2021, requesting that the Court enter a temporary restraining order or a preliminary injunction enjoining Fishman and Whipping Post from proceeding with the eviction action.

## II. LEGAL STANDARD

"To determine whether to issue a temporary restraining order, [a court] applies the same four-factor analysis used to evaluate a motion for preliminary injunction." *Animal Welfare Inst. v. Martin*, 665 F. Supp. 2d 19, 22 (D. Me. 2009). Those factors are: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm to the movant if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." *Id.* (alterations omitted) (quoting *Esso Standard Oil Co. v. Monroig-Zayas*, 445 F.3d 13, 17-18 (1st Cir. 2006)). "Of these four factors, the movant's likelihood of success 'is the touchstone of the preliminary injunction inquiry.'" *Me. Educ. Ass'n Benefits Tr. v. Cioppa*, 695 F.3d 145, 152 (1st Cir. 2012) (quoting *Philip Morris, Inc. v. Harshbarger*, 159 F.3d 670, 674 (1st Cir. 1998)). "If the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." *Id.* (alteration and quotation marks omitted).

## III. ANALYSIS

Fowler asserts two bases of relief: first, that he is likely to succeed on a RICO claim against Fishman based on Fishman's alleged connection to Lyden, and second, that because he is likely to succeed on his claim that his initial lease/buy back transaction with Birch Point violated Maine's Consumer Credit Code, which allows a remedy of rescission, Fowler may unwind the transfers culminating with Whipping Post's acquisition of title to the Property back to and including the original, allegedly unlawful transaction. As I will explain, both of Fowler's contentions fail for the same

4

reason: he has not met his burden to establish that Fishman has the requisite connection to the alleged fraud to demonstrate either a likelihood of success on the merits on his RICO claim or an entitlement to rescission under the Maine Consumer Credit Code.

**A.    Legal Framework**

Fowler brings his RICO claim under 18 U.S.C.A. § 1962(d),[2] which requires the plaintiff to show, among other things, "that the defendant knowingly joined the conspiracy to participate in the conduct of the affairs of the enterprise." *Aetna Cas. Sur. Co. v. P & B Autobody*, 43 F.3d 1546, 1561 (1st Cir. 1994). Thus, if Fowler cannot show that Fishman "knowingly joined" the alleged conspiracy, he cannot succeed on a RICO claim against Fishman.[3]

Fowler's rescission claim is premised on a section of the Maine Consumer Credit Code, 9-A M.R.S.A. § 9-401, which provides that if a creditor "induce[s] a consumer to enter a consumer credit transaction by misrepresentation of a material fact with respect to the terms and conditions of the extension of credit," the consumer "may rescind the sale, lease or loan or recover actual damages, or both." However, even if the original lease/buy back transaction was unlawful—a question I do not decide here—rescission is generally not available if it "would prejudice intervening rights of innocent third parties." Restatement (Third) of Restitution and Unjust

---

[2] Fowler's allegations against Fishman are asserted in his motion and supporting affidavit. Fowler has not yet sought to amend his First Amended Complaint to add Fishman and Whipping Post, LLC, as defendants.

[3] For purposes of the present motion, I do not address Fowler's allegations regarding Lalumiere, Lyden, or the other actors in the alleged fraudulent scheme.

Enrichment § 54(4)(c) (Am. Law Inst. 2011). Here, the alleged violation of § 9-401 was committed by Birch Point, not Fishman, but Fishman now owns the property. Thus, if Fowler cannot establish that Fishman knew of or was otherwise involved in the alleged fraud, Fowler is not entitled to a recessionary remedy against Fishman regardless of the merits of his claims against Lalumiere, Lyden, and the other Defendants.

**B.  Fishman's Connection**

The question, then, is whether Fowler has established a connection between Fishman and the alleged conspiracy. He has not.

Fowler argues that the voice message he received from Fishman, in which Fishman described himself as a "business partner" of Lyden's, is sufficient to suggest that Fishman knowingly joined in the alleged conspiracy. But this possible inference—based on nothing more than the cold transcript of Fishman's voice message—was fully rebutted by Fishman's testimony at the February 17 hearing. Fishman credibly testified that although he previously had a business relationship with Shawn Lyden, they had a falling out fourteen or fifteen years ago in connection with a real estate transaction and have not worked together since. Instead, he has had no more than infrequent contact with Lyden in recent years, and the two are not business partners nor are they particularly close.

Fishman further testified that he learned of the foreclosure auction through an email listserv sponsored by the auction company and that he sent his employees to the auction because he was out of state at the time. At the auction, the employees ran into Lyden and learned from him that Fowler and Lyden knew each other. When

6

Fishman reached out to Fowler after buying the Property, he invoked Lyden's name in an attempt—which Fishman surely now regrets—to establish a connection with Fowler through a shared acquaintance.

Based on Fishman's testimony, which I credit, and the other sworn evidence before me, I find that Fowler has not demonstrated that Fishman knew of or was involved in the allegedly fraudulent conduct on which Fowler's claims rest. For similar reasons, Fowler has not met his burden to show that Fishman knew of Birch Point's or Lalumiere's alleged misrepresentations when he bought the property at the foreclosure sale, nor has he demonstrated any other basis for which rescission would be proper.

Because Fowler has not demonstrated that he is likely to succeed on the merits of a RICO claim as to Fishman and has not established an entitlement to rescission under 9-A M.R.S.A. § 9-401, I deny his motion as to both his request for a temporary restraining order and his request for a preliminary injunction.[4]

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Fowler's Emergency Motion for Temporary Restraining Order and Preliminary Injunction (ECF No. 183) is **DENIED**, as was stated on the record at the hearing.

---

[4] Because I conclude that Fowler has failed to establish a likelihood of success on the merits of his claim against Fishman and Whipping Post, I need not and do not address the remaining factors. *See Philip Morris, Inc.*, 159 F.3d at 673. Similarly, I do not address the other objections Fishman has raised in opposition to Fowler's motion.

7

SO ORDERED.

Dated this 18th day of February, 2021.

                                                                                  /s/ JON D. LEVY  
                                                                      **CHIEF U.S. DISTRICT JUDGE**