# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JOEL DOUGLAS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) 2:20-cv-00227-JDL |
| | ) |
| SCOTT LALUMIERE, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON ANDROSCOGGIN SAVINGS BANK'S MOTION TO DISMISS

Joel Douglas, Steven Fowler, and James Lewis (collectively, "Plaintiffs") bring this action against Scott Lalumiere and twenty-five other defendants (collectively, "Defendants"), asserting seventeen claims arising out of an alleged scheme to defraud the Plaintiffs and obtain control or ownership of their real estate properties for the purpose of borrowing against the properties' equity. In total, the Defendants have filed thirteen motions to dismiss the First Amended Complaint (the "Complaint") (ECF No. 11) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] This order addresses Androscoggin Savings Bank's ("ASB") Motion to Dismiss (ECF No. 37). The claims arise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961-1968 (West 2021), federal and state consumer lending laws, and Maine tort and

---

[1] The following defendants have filed motions to dismiss: Androscoggin Savings Bank (ECF No. 37); Camden National Bank (ECF No. 61); TTJR, LLC, LH Housing, LLC, and Eric Holsapple (ECF No. 65); LOSU, LLC and David Hirshon (ECF No. 70); Bangor Savings Bank and Robert Burgess (ECF No. 98); Wayne Lewis (ECF No. 110); Machias Savings Bank (ECF No. 111); Coastal Realty Capital, LLC, Michael Lyden, and Shawn Lyden (ECF No. 118); Andre Bellucci (ECF No. 147); BLR Capital, LLC (ECF No. 197); F.O. Bailey Real Estate, LLC and David Jones (ECF No. 203); Russell Oakes (ECF No. 223); and David Clarke (ECF No. 225). Only Defendants Scott Lalumiere, MECAP, LLC, and Birch Point Storage, LLC have not filed motions to dismiss.

contract law. For the reasons that follow, I grant ASB's Motion to Dismiss, deny the Plaintiffs' Motion for Limited Discovery,[2] and deny as moot the Plaintiffs' objection to the Magistrate Judge's order denying the Plaintiffs' Motion for Limited Discovery.

## I. BACKGROUND

The Complaint alleges the following facts, which I treat as true for purposes of ruling on this motion to dismiss.

The Complaint asserts that Scott Lalumiere and other defendants engaged in three distinct but intertwined schemes to defraud the Plaintiffs. In the first scheme, the Complaint alleges that Scott Lalumiere, funded by various banks and private lenders, fraudulently induced several vulnerable individuals including Plaintiffs Steven Fowler and Joel Douglas, who lacked access to conventional credit, to enter into unfavorable lease/buy-back agreements. Under the terms of the agreements, the victim's property would be transferred to a corporate entity controlled by Lalumiere with the victim, as the lessee, retaining a purchase option. The Lalumiere-controlled entity would subsequently mortgage the property to banks and private lenders, and, when the entity defaulted on its loan, the mortgagees foreclosed on the property, frustrating the victim's option to purchase.

In the second alleged scheme, Fowler entered into an agreement with Lalumiere whereby he would provide labor and materials at a discounted rate to renovate certain properties controlled by Lalumiere, with the understanding that

---

[2] I recognize that Magistrate Judge John C. Nivison denied the Motion for Limited Discovery on January 21, 2021 (ECF No. 156). His order expressly recognized, however, that the Plaintiffs' request for limited discovery should be revisited as part of the Court's assessment of the Motion to Dismiss. Accordingly, I have treated the earlier order denying the motion as a deferral of action on the motion. Further, I have considered the merits of the motion and, for the reasons explained herein, I deny the motion.

Fowler could purchase the properties back upon the completion of the renovations. However, Lalumiere frustrated Fowler's right to purchase the properties by defaulting on the mortgages, causing the mortgagees to foreclose on the properties.

In the third alleged scheme, several of the Defendants agreed to pay-off and discharge Plaintiff James Lewis's defaulted mortgage and to lend him money to make improvements to his property in exchange for him deeding the property to a corporation and making certain payments. After the title was transferred, they refused to loan him the money and subsequently foreclosed on the property.

The Plaintiffs' claims against ASB involve the first and second schemes noted above in relation to two Maine properties: 661 Allen Avenue, Portland and 16 Old Ben Davis Road, Lyman. In May 2016, Fowler entered into an agreement with Lalumiere whereby Lalumiere would pay Fowler for renovation work on the Old Ben Davis Road property in exchange for the right to purchase the property for the payoff amounts on the outstanding conventional mortgages once the work was completed. In March 2017, Fowler transferred the Allen Avenue property to Birch Point Storage, LLC—a Lalumiere-controlled entity—subject to a five-year lease and purchase agreement under which Fowler could buy back the property. ASB extended commercial loans to a Lalumiere-controlled entity, secured by a mortgage on the properties. Because Lalumiere and his co-conspirators defaulted on their mortgages with ASB, the Allen Avenue and Old Ben Davis Road properties were subjected to non-judicial foreclosure sales.

The Plaintiffs filed a Motion for Limited Discovery from ASB in connection with their response to the Motion to Dismiss. On January 21, 2021, Magistrate Judge

John C. Nivison entered an order denying the Plaintiffs' limited discovery request without prejudice, stating that "[t]he Court will consider Plaintiffs' [discovery] requests as part of the Court's assessment of each defendant's motion to dismiss." ECF No. 156 at 3. On January 28, 2021, the Plaintiffs filed a timely objection to the Magistrate Judge's order (ECF No. 162). Below, I address the Plaintiffs' Motion for Limited Discovery and the Plaintiffs' objection to Magistrate Judge Nivison's order as it relates to ASB's Motion to Dismiss.

## II. LEGAL ANALYSIS

In reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). Additionally, a court may consider inferences "gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

To assess the complaint's adequacy, courts apply a "two-pronged approach," *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011): First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as

true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). To determine the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although conclusory legal statements may "provide the framework of a complaint, they must be supported by factual allegations." *Id.* The court must determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.*

In addition, the Plaintiffs' fraud-related claims are subject to Federal Rule of Civil Procedure 9(b), which requires that a complaint "state with particularity the circumstances constituting fraud." To satisfy this requirement, the complaint must set forth the "time, place and content of an alleged false representation." *Howell v. Advantage Payroll Servs., Inc.*, No. 2:16-cv-438-NT, 2017 WL 782881, at *6 (D. Me. Feb. 28, 2017) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)). The Plaintiffs' RICO claims are based in part on the predicate acts of mail and wire fraud, which "must satisfy the particularity requirements of Rule 9(b)." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).

The Plaintiffs' claims against ASB cluster into three categories: (A) the RICO claims; (B) the Truth in Lending Act ("TILA"), Maine Consumer Credit Code ("MCCC"), fraud, and contract claims; and (C) an unjust enrichment claim. The RICO claims include multiple counts against the alleged enterprise operating the alleged conspiracy. The TILA, MCCC, fraud, and contract claims all stem from Lalumiere's representations to the Plaintiffs that they had an option to purchase certain

properties. The unjust enrichment claim stands for itself. I address each category in turn.

### A.    RICO Claims (Counts II and IV)

The Complaint asserts that ASB participated in a RICO conspiracy under 18 U.S.C.A. § 1962(d) (West 2021). "To prove a RICO conspiracy offense, the [plaintiff] must show that 'the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators "to further the endeavor, which, if completed, would satisfy all the elements of a substantive RICO offense."'" *United States v. Velazquez-Fontanez*, 6 F.4th 205, 212 (1st Cir. 2021) (alterations omitted) (quoting *United States v. Rodríguez-Torres*, 939 F.3d 16, 23 (1st Cir. 2019)). It is not necessary to "prove that the defendant or his co-conspirators committed any overt act in furtherance of the conspiracy." *United States v. Leoner-Aguirre*, 939 F.3d 310, 317 (1st Cir. 2019).

Here, the Complaint alleges that ASB conspired to violate 18 U.S.C.A. § 1962(a), which makes it unlawful to use or invest income derived from a pattern of racketeering activity under certain circumstances:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in . . . interstate or foreign commerce.

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4) (West 2021). "To establish a pattern of racketeering, a plaintiff must show at least two predicate acts of 'racketeering

6

activity', as the statute defines such activity, and must establish that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 788 (1st Cir. 1990) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239). "Racketeering activity" encompasses mail fraud under 18 U.S.C.A. § 1341 (West 2021), wire fraud under 18 U.S.C.A. § 1343 (West 2021), and money laundering under 18 U.S.C.A. § 1956 (West 2021). 18 U.S.C.A. § 1961(1). A plaintiff asserting a § 1962(a) claim must further prove that he was "injured 'in his business or property by reason of' the defendant's violation." *Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995) (quoting 18 U.S.C.A. § 1964(c) (West 2021)).

The Plaintiffs' theory is that ASB conspired with the Lalumiere Defendants[3] to reinvest the income from a pattern of racketeering activity back into the enterprise. The alleged racketeering activity was money laundering and mail and wire fraud. ASB argues that the Complaint fails to plausibly allege that ASB knowingly joined the overall conspiracy or that its actions resulted in an investment injury independent from the underlying predicate acts.[4] I agree.

---

[3] This term refers to Defendant Scott Lalumiere and the corporate entities he controlled: Defendants Birch Point Storage, LLC and MECAP, LLC.

[4] As I will explain, the Complaint fails to plausibly allege that ASB knowingly joined Lalumiere's conspiracy or that the Plaintiffs suffered a distinct investment injury. For those reasons alone, the Plaintiffs' RICO claims against ASB fail. Therefore, I do not address ASB's additional argument that the Complaint fails to sufficiently plead a plausible pattern of racketeering activity.

### 1.     Knowingly Conspired

The Complaint asserts that ASB knowingly joined the overall conspiracy because ASB was privy to information suggesting that the terms of the transactions were favorable to Lalumiere. Based on this knowledge, the Complaint asserts that ASB should have known that the underlying transactions were fraudulent.

The Plaintiffs argue that the Complaint alleges facts "sufficient to allow the legitimate inference" that ASB "knew the extent of Mr. Lalumiere's racketeering activity," specifically, that Lalumiere never intended to honor the Allen Avenue lease, and that ASB nonetheless continued to fund the enterprise. The Complaint also alleges that ASB had access to the lease and therefore should have known the lease was fraudulent. For reasons I will explain, the Complaint's generalized allegations regarding ASB's knowledge are not sufficient to establish the required element of knowledge.

First, the Complaint alleges that because ASB had access to the Allen Avenue lease agreement and the opportunity to review it before making the loan, it should have known that Lalumiere did not intend to honor the agreement. However, the Complaint fails to point to any of the specific terms of the lease arrangement that, without more, would have put ASB on notice that Lalumiere intended to violate the agreement's terms. Thus, the allegations suggest nothing more than a bank engaged in arm's-length financing in the normal course of business. *See Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991) ("Bankers do not become racketeers by acting like bankers"). The Complaint's conclusory allegations to the contrary are not enough to survive ASB's motion to dismiss.

8

Second, the Complaint relies on a discrepancy between the U.S. Department of Housing and Urban Development ("HUD") statement and the mortgage prepared in connection with the transaction as evidence that ASB knew or should have known of fraudulent activity. The HUD statement for the Allen Avenue property does not mention the ASB mortgage. The Plaintiffs assert that this omission is sufficient to demonstrate that ASB knew that Lalumiere never intended to sell the property back to Fowler. Again, while knowledge may be pled generally, it cannot be alleged vaguely. The Complaint fails to explain how a possible mistake in the HUD statement should have revealed to ASB that there was a larger fraudulent conspiracy at play.

Finally, the Complaint asserts that ASB should have known that the funds used to purchase the Old Ben Davis Road property were a part of the larger conspiracy to launder the enterprise's money. Specifically, the Complaint alleges that the Old Ben Davis Road property was paid for with the proceeds from a fraudulent transaction. However, these generalized and conclusory allegations regarding ASB's knowledge are not sufficient to establish the required element of knowledge.

Accordingly, the Complaint fails to allege facts that, if proven, would demonstrate that ASB knowingly joined the conspiracy.

### 2. Investment Injury

"[T]o have a private cause of action, a plaintiff asserting a civil RICO conspiracy claim must show 'injur[y] in his business or property by reason of a violation of Section 1962.'" *Veilleux v. Elec. Maine, LLC*, No. 1:16-cv-571-NT, 2017 WL 5490838, at *8 (D. Me. Nov. 15, 2017) (quoting 18 U.S.C. § 1964(c)). In the context

9

of § 1962(a), this requirement is referred to as the "investment use rule," whereby "many courts have concluded that the mere reinvestment of racketeering proceeds in a corporate enterprise with the result that the enterprise continues to engage in the predicate acts of racketeering[] is insufficient to give rise to a 'use or investment injury' that is distinct from the harm caused by the predicate acts." *MyFreeMedicine.com, LLC v. Alpine Investors*, 739 F. Supp. 2d 8, 20 n.10 (D. Me. 2010). "[A] plaintiff cannot comply with the 'investment use rule' simply by 'repeating the crux of [his or her] allegations in regard to the pattern of racketeering.'" *Id.* (citations omitted). "[A] plaintiff must show that his or her injury was caused by the defendant's use or investment of racketeering proceeds," distinct from the injury caused by the predicate acts. *Id.* (citing *Compagnie De Reassurance*, 57 F.3d at 91).

With respect to ASB, the Allen Avenue property was ultimately sold to a third party as the result of ASB's non-judicial foreclosure. The Complaint asserts that the non-judicial foreclosure sale, and the ultimate loss of the property, was a result of fraud. Fowler believed the lease would be honored and he would have the option to buy back his property after five years. However, because ASB foreclosed on the property, Fowler lost the ability to exercise his option to purchase. The Plaintiffs similarly allege that Fowler had an agreement to purchase the Old Ben Davis Road property after he completed the renovation work on the property. However, because ASB foreclosed on the Old Ben Davis Road property, Fowler was deprived of the opportunity to purchase the property.

The Complaint alleges facts demonstrating that Fowler was harmed. However, the Complaint fails to identify an investment injury distinct from the harm

caused by the predicate fraud. The Complaint alleges that "proceeds from the fraud were used to purchase additional real estate for the Enterprise and were made to appear legitimate through those other real estate transactions." ECF No. 11 at ¶ 91. Although the Complaint asserts that the proceeds were reinvested in the enterprise and furthered the alleged fraud, these allegations do not satisfy the injury requirement. Even if one accepts the Complaint's theory that the Defendants' transactions were fraudulent, the Complaint fails to allege a plausible investment injury distinct from the loss of the property. Without a specifically alleged investment injury, the Complaint fails to adequately plead an injury that is separate from the predicate harm.

Without pleading facts that could establish the required element of an investment injury, the Plaintiffs have failed to allege any substantive § 1962(a) claim, and therefore the § 1962(d) conspiracy claims must be dismissed. *See Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000) ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails."); *see also MyFreeMedicine.com*, 739 F. Supp. 2d at 30-31 (dismissing § 1962(d) conspiracy count because the complaint failed to allege a substantive RICO violation).

In sum, with regards to RICO, the Complaint fails to allege that ASB knowingly joined the overall conspiracy and also fails to allege an investment injury distinct from the predicate acts. Therefore, the RICO claims against ASB are dismissed.

11

**B.    TILA, MCCC, Fraud, and Contract Claims (Counts V, VI, VIII, X)**

The Complaint asserts four claims premised on Lalumiere's misrepresentations that Fowler would be able to purchase the Allen Avenue and Old Ben Davis Road properties: TILA and MCCC violations, fraud, and breach of contract. Although these claims have different bases in the law, they all fail for the same reason—ASB was not a party to the allegedly fraudulent transactions. Because ASB did not make any representations to Fowler and did not enter into any agreements with Fowler, each claim against it must fail.

First, the Plaintiffs premise the TILA, 15 U.S.C.A. § 1601, et seq. (West 2021), and MCCC, Me. Rev. Stat. Ann. tit. 9-A, §§ 8-505, 9-401 (West 2021), violations on the alleged misrepresentations and omissions made in connection with the Allen Avenue transaction. As a threshold matter, while the Complaint states that Count V is based in part on TILA, none of the allegations of Count V refer to TILA. Regardless, the claim fails because ASB was not a party to that transaction. "A claim of misrepresentation under the Maine Consumer Credit Code requires a showing that a creditor or person acting for him induced a consumer to enter a credit transaction by misrepresenting a material fact with respect to the terms and conditions of the extension of credit." *McGahey v. Fed. Nat'l Mortg. Ass'n*, 266 F. Supp. 3d 421, 442 (D. Me. 2017) (citing Me. Rev. Stat. Ann. tit. 9-A, § 9-401). Without any alleged misrepresentation or transaction involving ASB, the Complaint fails to plead an MCCC claim.[5]

---

[5] ASB also argues that TILA and MCCC do not apply to commercial transactions or extensions of credit primarily for business or commercial purposes, and the TILA and MCCC claims are time-barred.

Second, like the TILA and MCCC claims, the fraud claim is premised on Lalumiere's false promise that Fowler could purchase the Allen Avenue property. The Complaint does not assert any factual allegations that ASB made any fraudulent misrepresentations to Fowler. Therefore, the fraud claim similarly fails.

Finally, the breach of contract claims for the Allen Avenue and Old Ben Davis Road properties fail for two reasons. First, in their response to ASB's motion to dismiss, the Plaintiffs do not address ASB's request for dismissal of the contract claims, and I may, therefore, treat the contract claims as abandoned. *See ITI Holdings, Inc. v. Odom*, 468 F.3d 17, 18 (1st Cir. 2006) (affirming dismissal based on failure to oppose motion to dismiss under Rule 12(b)(6)). Second, there is no allegation that ASB was a party to the transactions regarding the Allen Avenue or Old Ben Davis Road properties. Without more, the Complaint cannot sustain a claim against a party that was not involved in the agreements at issue.

### C.   Unjust Enrichment Claim (Count XVII)

The Complaint asserts a claim for unjust enrichment against ASB based on the alleged "extraction of equity from the homes at 661 Allen Avenue and 57 Queen Street." ECF No. 11 ¶ 255.

A claim for unjust enrichment requires proof that "(1) [the complaining party] conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without

---

Because the Complaint fails to establish that ASB was involved in the underlying transactions, I do not reach these additional arguments.

payment of its value." *Knope v. Green Tree Servicing, LLC*, 2017 ME 95, ¶ 12, 161 A.3d 696, 699 (quoting *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712).

As a threshold matter, like the contract claims, the Plaintiffs do not address ASB's request for dismissal of Count XVII, and I treat the claim as abandoned. Notwithstanding any abandonment, the Complaint's unjust enrichment claim fails for two reasons. First, the Complaint does not allege that a benefit was conferred on ASB. Although it is undisputed that Douglas and Fowler suffered harm through the frustration of their rights to purchase the Queen Street and Allen Avenue properties, the Complaint fails to plausibly assert facts that would establish that a resulting benefit was conferred on ASB. There cannot be an unjust enrichment without a "conferred benefit."

Second, the Complaint does not allege that ASB had or should have had "appreciation or knowledge" of the benefit received. The agreements that Lalumiere allegedly never intended to honor were entered into before ASB became involved. Further, for the reasons I have already discussed, the Complaint fails to allege facts that, if proven, would establish that ASB knew or should have known of the fraud when it made its loans to Lalumiere.

In sum, the Complaint fails to plead facts that, if proven, would establish a right of recovery based on unjust enrichment.

### D.     Motion for Limited Discovery

A dismissal is not automatic once the lower court determines that Rule 9(b) has not been satisfied. *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290

(1st Cir. 1987). Instead, after the Rule 9(b) determination, a "court should make a *second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint." *Id.* The plaintiff may have a right to limited discovery, to the extent necessary to cure a Rule 9(b) defect about "the details of just when and where the mail or wires were used." *Id.* A court also has "some latitude" to allow discovery "where a plausible claim may be indicated 'based on what is known,' at least where . . . 'some of the information needed may be in the control of the defendants.'" *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (alteration omitted) (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)).

Here, the Plaintiffs seek limited discovery from ASB to reveal "communications between ASB and the out of state managers" who were allegedly involved in the conspiracy. ECF No. 46 at 2. Under the Plaintiffs' theory, ASB had exclusive access to communications that are necessary to prove the elements of fraud. ASB opposes the motion, asserting that the Plaintiffs have failed to demonstrate a right to limited discovery because they have not pled a plausible claim and limited discovery is granted to cure particularity deficiencies, not plausibility defects.

The decisions in *Becher* and *Menard* establish two possible grounds for granting limited discovery. First, under *Menard*, where modest discovery may "provide the missing link" to satisfy the Rule 12(b)(6) plausibility standard, the court may allow limited discovery "at least where . . . 'some of the information needed may be in the control of the defendants.'" 698 F.3d at 45 (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)). Here, however, the Complaint is not lacking a

15

"missing link." The Complaint does not plausibly suggest that ASB had information that would provide the "missing link" needed to remedy its deficiencies.

Second, as discussed in *Becher*, a court may allow discovery as to "the details of just when and where the mail or wires were used" in a "RICO mail and wire fraud case." 829 F.2d at 290; *see also Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Here, however, the Complaint already contains factual allegations as to how the scheme involved the use of interstate wires. There is no doubt that ASB uses interstate wires in the course of its regular business activity. Additional information as to how the conspiracy used the mail or wires would not cure the Complaint's failure to sufficiently allege that ASB knowingly joined the conspiracy.

Neither *Menard* nor *Becher* offers a basis to grant limited discovery for the Plaintiffs as against ASB. Thus, the Motion for Limited Discovery as to ASB is denied, and the Plaintiffs' objection to the Magistrate Judge's Order deferring action on the Motion for Limited Discovery until the Court assessed the motions to dismiss, is denied as moot.

### III. CONCLUSION

For the reasons stated above, it is **ORDERED** that Androscoggin Savings Bank's Motion to Dismiss (ECF No. 37) is **GRANTED**. The Amended Complaint (ECF No. 11) as to Androscoggin Savings Bank is **DISMISSED**. The Plaintiffs' Motion for Limited Discovery (ECF No. 46) is **DENIED** and the Plaintiffs' Objection to the Magistrate Judge's Order on Limited Discovery (ECF No. 162) is **DENIED AS MOOT** as to Androscoggin Savings Bank.

**SO ORDERED.**

**Dated: September 29, 2021**

                                                      **/s/ JON D. LEVY**
                                        **CHIEF U.S. DISTRICT JUDGE**