## UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

| | |
|---|---|
| JOEL DOUGLAS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | )  2:20-cv-00227-JDL |
| | ) |
| SCOTT LALUMIERE, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON BANGOR SAVINGS BANK AND ROBERT BURGESS'S MOTION TO DISMISS

Joel Douglas, Steven Fowler, and James Lewis (collectively, "Plaintiffs") bring this action against Scott Lalumiere and twenty-five other defendants (collectively, "Defendants"), asserting seventeen claims arising out of an alleged scheme to defraud the Plaintiffs and obtain control or ownership of their real estate properties for the purpose of borrowing against the properties' equity. In total, the Defendants have filed thirteen motions to dismiss the First Amended Complaint (the "Complaint") (ECF No. 11) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] This order addresses Bangor Savings Bank ("BSB") and Robert Burgess's (collectively, "BSB Defendants") motion to dismiss the claims asserted against them under the Racketeer Influenced and

---

[1] The following defendants have filed motions to dismiss: Androscoggin Savings Bank (ECF No. 37); Camden National Bank (ECF No. 61); TTJR, LLC, LH Housing, LLC, and Eric Holsapple (ECF No. 65); LOSU, LLC and David Hirshon (ECF No. 70); Bangor Savings Bank and Robert Burgess (ECF No. 98); Wayne Lewis (ECF No. 110); Machias Savings Bank (ECF No. 111); Coastal Realty Capital, LLC, Michael Lyden, and Shawn Lyden (ECF No. 118); Andre Bellucci (ECF No. 147); BLR Capital, LLC (ECF No. 197); F.O. Bailey Real Estate, LLC and David Jones (ECF No. 203); Russell Oakes (ECF No. 223); and David Clarke (ECF No. 225). Only Defendants Scott Lalumiere, MECAP, LLC, and Birch Point Storage, LLC have not filed motions to dismiss.

Corrupt Organizations Act (RICO), 18 U.S.C.A. §§ 1961-1968 (West 2021), and state law (ECF No. 98). For the reasons that follow, I grant the BSB Defendants' Motion to Dismiss, deny the Plaintiffs' Motion for Limited Discovery,[2] and deny as moot the Plaintiffs' objection to the Magistrate Judge's order denying the Plaintiffs' Motion for Limited Discovery.

## I.  BACKGROUND

The Complaint alleges the following facts, which I treat as true for purposes of ruling on this Motion to Dismiss.

The Complaint asserts that Scott Lalumiere and other defendants engaged in three distinct but intertwined schemes to defraud the Plaintiffs. In the first scheme, the Complaint alleges that Scott Lalumiere, funded by various banks and private lenders, fraudulently induced several vulnerable individuals, including Plaintiffs Steven Fowler and Joel Douglas, who lacked access to conventional credit, to enter into unfavorable lease/buy-back agreements. Under the terms of the agreements, the title of the victim's property would be transferred to a corporate entity controlled by Lalumiere with the victim, as the lessee, retaining a purchase option. The Lalumiere-controlled entity would subsequently mortgage the property to banks and private lenders, and, when the entity defaulted on its loan, the mortgagees foreclosed on the property, frustrating the victim's option to purchase.

---

[2] I recognize that Magistrate Judge John C. Nivison denied the Motion for Limited Discovery on January 21, 2021 (ECF No. 156). His order expressly recognized, however, that the Plaintiffs' request for limited discovery should be revisited as part of the Court's assessment of the Motion to Dismiss. Accordingly, I have treated the earlier order denying the motion as a deferral of action on the motion. Further, I have considered the merits of the motion and, for the reasons explained herein, I deny the motion.

In the second alleged scheme, Fowler entered into an agreement with Lalumiere whereby he would provide labor and materials at a discounted rate to renovate certain properties controlled by Lalumiere, with the understanding that Fowler could purchase the properties back upon the completion of the renovations. However, Lalumiere frustrated Fowler's right to purchase the properties by defaulting on the mortgages, causing the mortgagees to foreclose on the properties.

In the third alleged scheme, several of the Defendants agreed to pay-off and discharge Plaintiff James Lewis's defaulted mortgage and to lend him money to make improvements to his property in exchange for him deeding the property to a corporation and making certain payments. After the title was transferred, they refused to loan him the money and subsequently foreclosed on the property.

The Plaintiffs' claims against the BSB Defendants involve the second scheme noted above in relation to one property: 33 Sanborn Lane in Limerick, Maine. In May 2016, Fowler entered into an agreement with Lalumiere whereby Lalumiere would pay Fowler for renovation work on the Sanborn Lane property in exchange for the right to purchase the property for the payoff amount on the outstanding conventional mortgage once the work was complete. In November 2016, BSB extended a loan to Lalumiere secured by a $139,200 mortgage on the Sanborn Lane property. Fowler was given control of the Sanborn Lane property, where he rented out the house portion and used the garage portion for his business. Fowler paid Lalumiere rent for the Sanborn Lane property from October 2016 to November 2019. In March 2020, David Jones, another defendant, denied Fowler access to 33 Sanborn Lane and

removed Fowler's personal property. Even though Robert Burgess, a BSB representative, denied that BSB delegated authority to Jones, the Complaint alleges that "David Jones claimed to be acting under the authority of BSB." ECF No. 11 at ¶ 123.

The Plaintiffs filed a Motion for Limited Discovery from the BSB Defendants in connection with the Plaintiffs' response to the Motion to Dismiss. On January 21, 2021, Magistrate Judge John C. Nivison entered an order denying the Plaintiffs' limited discovery request without prejudice, stating that "[t]he Court will consider Plaintiffs' [discovery] requests as part of the Court's assessment of each defendant's motion to dismiss." ECF No. 156 at 3. On January 28, 2021, the Plaintiffs filed a timely objection to the Magistrate Judge's order (ECF No. 162). Below, I address the Plaintiffs' Motion for Limited Discovery and the Plaintiffs' objection to Magistrate Judge Nivison's order as it relates to the BSB Defendants' motion to dismiss.

## II.  LEGAL ANALYSIS

In reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). Additionally, a court may consider inferences "gleaned from documents incorporated by reference

into the complaint, matters of public record, and facts susceptible to judicial notice." *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

To assess the complaint's adequacy, courts apply a "two-pronged approach," *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011): First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). To determine the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusory statements may "provide the framework of a complaint, they must be supported by factual allegations." *Id.* The court must determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.*

In addition, the Plaintiffs' fraud-related claims are subject to Federal Rule of Civil Procedure 9(b), which requires that a complaint "state with particularity the circumstances constituting fraud." To satisfy this requirement, the complaint must set forth the "time, place and content of an alleged false representation." *Howell v. Advantage Payroll Servs., Inc.*, No. 2:16-cv-438-NT, 2017 WL 782881, at *6 (D. Me. Feb. 28, 2017) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)). The Plaintiffs' RICO claims are based in part on the predicate acts of mail and wire fraud,

which "must satisfy the particularity requirements of Rule 9(b)." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).

This Order addresses four claims against the BSB Defendants: (A) the RICO claim, (B) the contract claim, (C) the Maine Unfair and Deceptive Trade Practice ("MUTPA") claim, and (D) the unjust enrichment claim. The RICO claim is one count against the alleged enterprise operating the conspiracy. The contract claim, MUTPA claim, and unjust enrichment claim stand for themselves. I address each category in turn. The Complaint also alleges an illegal eviction claim (Count XII) and a conversion of personal property claim (Count XIV) against the BSB Defendants, but the BSB Defendants do not move to dismiss those claims. Thus, I do not address those claims.

## A.    **RICO (Count IV)**

The Complaint asserts that the BSB Defendants participated in a RICO conspiracy under 18 U.S.C.A. § 1962(d) (West 2021). "To prove a RICO conspiracy offense, the [plaintiff] must show that 'the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators "to further the endeavor, which, if completed, would satisfy all the elements of a substantive RICO offense."'" *United States v. Velazquez-Fontanez*, 6 F.4th 205, 212 (1st Cir. 2021) (alterations omitted) (quoting *United States v. Rodríguez-Torres*, 939 F.3d 16, 23 (1st Cir. 2019)). It is not necessary to "prove that the defendant or his co-conspirators committed any overt act in furtherance of the conspiracy." *United States v. Leoner-Aguirre*, 939 F.3d 310, 317 (1st Cir. 2019).

Here, the Complaint alleges that the BSB Defendants conspired to violate 18 U.S.C.A. § 1962(a), which makes it unlawful to use or invest income derived from a pattern of racketeering activity under certain circumstances:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in . . . interstate or foreign commerce.

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4) (West 2021). "To establish a pattern of racketeering, a plaintiff must show at least two predicate acts of 'racketeering activity', as the statute defines such activity, and must establish that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 788 (1st Cir. 1990) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239). "Racketeering activity" encompasses mail fraud under 18 U.S.C.A. § 1341 (West 2021), wire fraud under 18 U.S.C.A. § 1343 (West 2021), and money laundering under 18 U.S.C.A. § 1956 (West 2021). 18 U.S.C.A. § 1961(1). A plaintiff asserting a § 1962(a) claim must further prove that he was "injured 'in his business or property by reason of' the defendant's violation." *Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995) (quoting 18 U.S.C.A. § 1964(c) (West 2021)).

The Plaintiffs' theory is that the BSB Defendants conspired with the Lalumiere Defendants[3] to reinvest the income from a pattern of racketeering activity back into the enterprise. The alleged racketeering activity was money laundering and mail and wire fraud. The Plaintiffs assert that the BSB Defendants knowingly conspired with Lalumiere because the BSB Defendants were privy to information that the funds used to purchase the Sanborn Lane property were part of a larger conspiracy to launder the enterprise's money. Specifically, the Complaint alleges that the Sanborn Lane property was paid for with proceeds from a fraudulent transaction involving the property at 75 Queen Street, Gorham, Maine. The BSB Defendants argue that the Complaint fails to plausibly allege that they knowingly joined the overall conspiracy. For the reasons that follow, I conclude that the Complaint's generalized allegations regarding the BSB Defendants' knowledge are not sufficient to establish the required element of knowledge.[4]

First, the Complaint alleges that the BSB Defendants were "informed of the fraudulent conduct in late November 2019." However, while knowledge can be pled generally, it cannot be alleged vaguely. The BSB Defendants were not involved in the Queen Street transaction and the Complaint does not allege that the BSB Defendants knew Lalumiere's purchase of the Sanborn Lane property was funded by the proceeds from fraudulent transactions involving the Queen Street property. The

---

[3] This term refers to Defendant Scott Lalumiere and the corporate entities he controlled: Defendants Birch Point Storage, LLC and MECAP, LLC.

[4] As I will explain, the Complaint fails to plausibly allege that the BSB Defendants knowingly joined Lalumiere's conspiracy. For this reason alone, the Plaintiffs' RICO claim against the BSB Defendants fails. Therefore, I do not address the BSB Defendants' additional argument that the Complaint fails to sufficiently plead a plausible pattern of racketeering activity.

conclusory allegation that the BSB Defendants were "informed of the fraudulent conduct" is not sufficient to survive the BSB Defendants' Motion to Dismiss.

Second, the Plaintiffs assert that the BSB Defendants knew Lalumiere was involved in lease/buy-back agreements, and this information should have put the BSB Defendants on notice that the transaction for the Sanborn Lane property was fraudulent. However, this assertion is made for the first time in the Plaintiffs' opposition to the BSB Defendants' Motion to Dismiss and is not contained in the Complaint. Regardless of the failure to properly plead this allegation, the Complaint fails to point to any of the specific terms of the lease arrangement that, without more, would have put the BSB Defendants on notice that this transaction was used to launder money. The allegations thus suggest nothing more than a bank engaged in arm's-length financing in the normal course of business. *See Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991) ("Bankers do not become racketeers by acting like bankers"). The Complaint's conclusory allegations to the contrary are not enough to survive the BSB Defendants' Motion to Dismiss.

Accordingly, the Complaint fails to allege facts that, if proven, would demonstrate that the BSB Defendants knowingly joined the conspiracy. Therefore, the RICO claim against the BSB Defendants is dismissed.

## B.   Contract Claim (Count X)

The Complaint asserts one claim against the BSB Defendants based on Lalumiere's misrepresentation that Fowler would be able to purchase the Sanborn Lane property: breach of contract. The problem, as the BSB Defendants point out, is

that the BSB Defendants were not parties to the allegedly fraudulent transaction. In response, the Plaintiffs argue that there was an enforceable contract but do not contest the fact that the BSB Defendants were not parties to that contract. Without more, the Complaint cannot sustain a claim against a party that was not involved in the agreement at issue.

## C.    MUTPA Claim (Count XIII)

The Complaint asserts that the BSB Defendants violated MUTPA, 5 Me. Rev. Stat. tit. 5, §§ 205-214 (West 2021). Specifically, the Complaint alleges that, pursuant to Me. Rev. Stat. tit. 14, § 6030 (West 2021), "[i]t is an unfair and deceptive trade practice in violation of [Me. Rev. Stat. tit. 5, § 207 (West 2021)] for a landlord to require a tenant to enter into a lease or tenancy at will agreement for a dwelling unit . . . in which the tenant agrees to a provision that has the effect of waiving a tenant right" under various tenant-protection laws.

MUTPA provides "a private right of action to consumers who are injured as a result of the use of unfair or deceptive business practices." *McGahey v. Fed. Nat'l Mortg. Ass'n*, 266 F. Supp. 3d 421, 435 (D. Me. 2017). By its terms, however, MUTPA applies only to transactions that are made "primarily for personal, family or household purposes." Me. Rev. Stat. tit. 5, § 213(1) (West 2021); *see C-B Kenworth, Inc. v. Gen. Motors Corp.*, 706 F. Supp. 952, 957 (D. Me. 1988) ("[MUTPA] creates a private right of action *only* for those who have purchased goods, services or property 'primarily for personal, family or household purposes.'" (quoting Me. Rev. Stat. tit. 5, § 213(1)); *Seacoast RV, Inc. v. Sawdran, LLC*, 2013 ME 6, ¶ 5, 58 A.3d 1135, 1137

10

(concluding the plaintiff did not purchase a car "primarily for personal purposes, and, therefore, cannot bring a private cause of action pursuant to the [M]UTPA"). The Complaint alleges that Fowler "rented out the house portion" of the Sanborn Lane property and "used the garage portion for his business." ECF No. 11 at ¶ 119. There is no allegation that Fowler used the property for personal, family or household purposes. Thus, the Complaint fails to allege that Fowler, or any other plaintiff, ever used the property for non-business purposes.

Notwithstanding the lack of personal, family or household purpose, the Plaintiffs' MUTPA claim otherwise fails to state a violation of Me. Rev. Stat. tit. 5, § 207. The Plaintiffs assert their MUTPA claim is based on Me. Rev. Stat. tit. 14, § 6030, which prohibits landlords from requiring a tenant to enter into a lease or tenancy at will agreement, in which the tenant agrees to a provision that has the effect of waiving a tenant right. The Complaint, however, does not allege the BSB Defendants were landlords or that they required Fowler to enter into a tenancy at will agreement. Thus, the Complaint does not allege any violations of Me. Rev. Stat. tit. 14, § 6030, and therefore there is not any MUTPA claim.

Because Fowler used the Sanborn Lane property for business purposes, and because the Complaint does not state a violation of Me. Rev. Stat. tit. 14, § 6030, the MUTPA claim against the BSB Defendants is dismissed.

### D.   Unjust Enrichment Claim (Count XVII)

The Complaint asserts a claim for unjust enrichment against the BSB Defendants based on the alleged "extraction of equity from the homes at 661 Allen Avenue and 57 Queen Street."  ECF No. 11 ¶ 255.

A claim for unjust enrichment requires proof that "(1) [the complaining party] conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Knope v. Green Tree Servicing, LLC*, 2017 ME 95, ¶ 12, 161 A.3d 696, 699 (quoting *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712).

The Complaint's unjust enrichment claim fails for two reasons.  First, the Complaint does not allege that a benefit was conferred on the BSB Defendants.  The Complaint also fails to allege that the BSB Defendants had any involvement in the Allen Avenue or Queen Street transactions, nor does it assert an unjust enrichment claim arising from the Sanborn Lane renovation work.  Although Fowler suffered harm through the frustration of his right to purchase the Sanborn Lane property and his alleged eviction, the Complaint fails to plausibly assert facts that would establish that a resulting benefit was conferred on the BSB Defendants.  There cannot be an unjust enrichment without a "conferred benefit."

Second, the Complaint does not allege that the BSB Defendants had or should have had "appreciation or knowledge" of the benefit received.  The agreements that

Lalumiere allegedly never intended to honor were entered into before the BSB Defendants became involved.  Further, for the reasons I have already discussed, the Complaint fails to allege facts which, if proven, would establish that BSB knew or should have known of the fraud when it made its loan to Lalumiere.

In sum, the Complaint fails to plead facts which, if proven, would establish a right of recovery based on unjust enrichment.

## E.   Motion for Limited Discovery

A dismissal is not automatic once the lower court determines that Rule 9(b) has not been satisfied.  *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987).  Instead, after the Rule 9(b) determination, a "court should make a *second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint."  *Id*.  The plaintiff may have a right to limited discovery, to the extent necessary to cure a Rule 9(b) defect about "the details of just when and where the mail or wires were used."  *Id*.  A court also has "some latitude" to allow discovery "where a plausible claim may be indicated 'based on what is known,' at least where . . . 'some of the information needed may be in the control of the defendants.'"  *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (alteration omitted) (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)).

Here, Plaintiffs seek limited discovery from the BSB Defendants to reveal "communications between [BSB] and the other defendants" who were allegedly involved in the conspiracy.  ECF No. 129 at 3.  Under the Plaintiffs' theory, they

believe that BSB had exclusive access to communications which are necessary to prove the elements of fraud. BSB opposes the motion, asserting that the Plaintiffs have failed to demonstrate a right to limited discovery because they have not pled a plausible claim and limited discovery is generally granted to cure particularity deficiencies, not plausibility defects.

The decisions in *Becher* and *Menard* establish two possible grounds for granting limited discovery. First, under *Menard*, where modest discovery may "provide the missing link" to satisfy the Rule 12(b)(6) plausibility standard, the court may allow limited discovery "at least where . . . 'some of the information needed may be in the control of the defendants.'" 698 F.3d at 45 (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)). Here, however, the Complaint is not lacking a "missing link." The Complaint does not plausibly suggest that BSB had information that would provide the "missing link" needed to remedy its deficiencies.

Second, as discussed in *Becher*, a court may allow discovery as to "the details of just when and where the mail or wires were used" in a "RICO mail and wire fraud case." 829 F.2d at 290; *see also Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Here, however, the Complaint already contains factual allegations as to how the scheme involved the use of interstate wires. There is no doubt that BSB uses interstate wires in the course of its regular business activity. Additional information as to how the conspiracy used the mail or wires would not cure the Complaint's failure to sufficiently allege that BSB knowingly joined the conspiracy.

14

Neither *Menard* nor *Becher* offers a basis to grant limited discovery for the Plaintiffs as against BSB.  Thus, the Motion for Limited Discovery as to the BSB Defendants is denied, and the Plaintiffs' objection to the Magistrate Judge's Order deferring action on the Motion for Limited Discovery until the Court assessed the motions to dismiss, is denied as moot.

### III.  CONCLUSION

For the reasons stated above, it is **ORDERED** that Bangor Savings Bank and Robert Burgess's Motion to Dismiss (ECF No. 98) is **GRANTED**.  The Amended Complaint (ECF No. 11) as to Bangor Savings Bank and Robert Burgess is **DISMISSED** in part as to all claims except Count XII and Count XIV.  The Plaintiffs' Motion for Limited Discovery (ECF No. 129) is **DENIED** and the Plaintiffs' Objection to the Magistrate Judge's Order on Limited Discovery (ECF No. 162) is **DENIED AS MOOT** as to Bangor Savings Bank and Robert Burgess.

**SO ORDERED.**

 **Dated:  September 29, 2021**

_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**
