# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JOEL DOUGLAS, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
|         v. | )  2:20-cv-00227-JDL |
| | ) |
| SCOTT LALUMIERE, et al., | ) |
| | ) |
|    Defendants. | ) |

## ORDER ON ANDRE BELLUCCI'S MOTION TO DISMISS

Joel Douglas, Steven Fowler, and James Lewis (collectively, "Plaintiffs") bring this action against Scott Lalumiere and twenty-five other defendants (collectively, "Defendants"), asserting seventeen claims arising out of an alleged scheme to defraud the Plaintiffs and obtain control or ownership of their real estate properties for the purpose of borrowing against the properties' equity.  In total, the Defendants have filed thirteen motions to dismiss the First Amended Complaint (the "Complaint") (ECF No. 11) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  This order addresses Andre Bellucci's Motion to Dismiss the claims asserted against him under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961-1968 (West 2021), and

---

[1] The following defendants have filed motions to dismiss: Androscoggin Savings Bank (ECF No. 37); Camden National Bank (ECF No. 61); TTJR, LLC, LH Housing, LLC, and Eric Holsapple (ECF No. 65); LOSU, LLC and David Hirshon (ECF No. 70); Bangor Savings Bank and Robert Burgess (ECF No. 98); Wayne Lewis (ECF No. 110); Machias Savings Bank (ECF No. 111); Coastal Realty Capital, LLC, Michael Lyden, and Shawn Lyden (ECF No. 118); Andre Bellucci (ECF No. 147); BLR Capital, LLC (ECF No. 197); F.O. Bailey Real Estate, LLC and David Jones (ECF No. 203); Russell Oakes (ECF No. 223); and David Clarke (ECF No. 225).  Only Defendants Scott Lalumiere, MECAP, LLC, and Birch Point Storage, LLC have not filed a motions to dismiss.

Maine tort and contract law (ECF No. 147). For the reasons that follow, I grant Bellucci's Motion to Dismiss and deny the Plaintiffs' Motion for Limited Discovery.[2]

## I. BACKGROUND

The Complaint alleges the following facts, which I treat as true for purposes of ruling on this Motion to Dismiss.

The Complaint asserts that Scott Lalumiere and other defendants engaged in three distinct but intertwined schemes to defraud the Plaintiffs. In the first scheme, the Complaint alleges that Scott Lalumiere, funded by various banks and private lenders, fraudulently induced several vulnerable individuals, including Plaintiffs Steven Fowler and Joel Douglas, who lacked access to conventional credit, to enter into unfavorable lease/buy-back agreements. Under the terms of the agreements, the title of the victim's property would be transferred to a corporate entity controlled by Lalumiere with the victim, as the lessee, retaining a purchase option. The Lalumiere-controlled entity would subsequently mortgage the property to banks and private lenders, and, when the entity defaulted on its loan, the mortgagees foreclosed on the property, frustrating the victim's option to purchase.

In the second alleged scheme, Fowler entered into an agreement with Lalumiere whereby he would provide labor and materials at a discounted rate to renovate certain properties controlled by Lalumiere, with the understanding that

---

[2] I recognize that Magistrate Judge John C. Nivison denied the Motion for Limited Discovery on April 6, 2021 (ECF No. 213). His order expressly recognized, however, that the Plaintiffs' request for limited discovery should be revisited as part of the Court's assessment of the Motion to Dismiss. Accordingly, I have treated the earlier order denying the motion as a deferral of action on the motion. Further, I have considered the merits of the motion and, for the reasons explained herein, I deny the motion.

Fowler could purchase the properties back upon the completion of the renovations. However, Lalumiere frustrated Fowler's right to purchase the properties by defaulting on the mortgages, causing the mortgagees to foreclose on the properties.

In the third alleged scheme, several of the Defendants agreed to pay-off and discharge Plaintiff James Lewis's defaulted mortgage and to lend him money to make improvements to his property in exchange for him deeding the property to a corporation and making certain payments. After the title was transferred, they refused to loan him the money and subsequently foreclosed on the property.

The Plaintiffs' claims against Bellucci involve the third scheme noted above in relation to one property: 57 Beach Street, South Portland, Maine. In December 2010, Milk Street Capital, LLC—a Lalumiere-controlled entity—through Michael Lyden, allegedly made promises to James Lewis that Milk Street Capital would pay-off his defaulted mortgage and loan him money to make improvements in exchange for him deeding the Beach Street property to a corporation to hold the title. Per the agreement, James Lewis could continue to live at the Beach Street property so long as he paid the mortgage. The Complaint fails to identify the specific mortgage to which it refers. On December 12, 2010, James Lewis executed a transfer of the 57 Beach Street property to Lewis Plumbing and Heating, LLC. The Complaint alleges that Coastal Realty Capital "refused to honor its promises to loan additional money to Mr. Lewis for the necessary home improvements and never intended to loan Mr. Lewis money for home improvements," ECF No. 11 ¶ 115, although, on September 19, 2014, Michael Lyden arranged for Coastal Realty Capital to loan

James Lewis $125,000.[3] Coastal Realty Capital subsequently foreclosed on the Beach Street property. As alleged in the Complaint, Bellucci's only involvement in this scheme was offering to buy the Beach Street property from Lewis for $380,000 and then revoking the offer days before the foreclosure sale.

The Plaintiffs filed a Motion for Limited Discovery from Bellucci in connection with their response to his Motion to Dismiss. On April 6, 2021, Magistrate Judge John C. Nivison entered an order denying the Plaintiffs' limited discovery request without prejudice, stating that "[t]he Court will consider Plaintiffs' [discovery] requests as part of the Court's assessment of each defendant's motion to dismiss." ECF No. 213 at 2. The Plaintiffs did not file an objection. Below, I address the Plaintiffs' Motion for Limited Discovery as it relates to Bellucci's Motion to Dismiss.

## II. LEGAL ANALYSIS

In reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). Additionally, a court may consider inferences "gleaned from documents incorporated by reference

---

[3] The Complaint alleges that Milk Street Capital made the initial promise to loan James Lewis money, but then alleges Coastal Realty Capital refused to honor the promise. The Complaint does not explain how Milk Street Capital and Coastal Realty Capital are related, or how Coastal Realty Capital is responsible for Milk Street Capital's promise.

into the complaint, matters of public record, and facts susceptible to judicial notice." *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

To assess the complaint's adequacy, courts apply a "two-pronged approach," *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011): First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and second, the court will "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). To determine the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although conclusory legal statements may "provide the framework of a complaint, they must be supported by factual allegations." *Id.* The court must determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.*

In addition, the Plaintiffs' fraud-related claims are subject to Federal Rule of Civil Procedure 9(b), which requires that a complaint "state with particularity the circumstances constituting fraud." To satisfy this requirement, the complaint must set forth the "time, place and content of an alleged false representation." *Howell v. Advantage Payroll Servs., Inc.*, No. 2:16-cv-438-NT, 2017 WL 782881, at *6 (D. Me. Feb. 28, 2017) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)). The Plaintiffs' RICO claims are based in part on the predicate acts of mail and wire fraud,

which "must satisfy the particularity requirements of Rule 9(b)." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).

The Plaintiffs assert four claims against Bellucci: (A) the RICO claim, (B) the fraud claim (C) the negligent infliction of emotional distress claim, and (D) the unjust enrichment claim. The RICO claim includes a single count against the alleged enterprise operating the conspiracy. The fraud claim stems from Lalumiere's representations to the Plaintiffs that they had an option to purchase certain properties, and the negligent infliction of emotional distress claim is based on Bellucci's unfulfilled offer to buy the Beach Street property. The unjust enrichment claim stands for itself. I address each in turn.[4]

## A.    RICO (Count IV)

The Complaint asserts that Bellucci participated in a RICO conspiracy under 18 U.S.C.A. § 1962(d) (West 2021). "To prove a RICO conspiracy offense, the [plaintiff] must show that 'the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators "to further the endeavor, which, if completed, would satisfy all the elements of a substantive RICO offense."'" *United States v. Velazquez-Fontanez*, 6 F.4th 205, 212 (1st Cir. 2021) (alterations omitted) (quoting *United States v. Rodríguez-Torres*, 939 F.3d 16, 23 (1st Cir. 2019)). It is not necessary to

---

[4] The Complaint references Bellucci in Count XIII, Unfair and Deceptive Trade Practice, but does not explicitly name him in the count. Bellucci addresses the unfair and deceptive trade practice claim anyway, arguing that he was not involved in the alleged eviction at 33 Sanborn Lane on which the claim is based. In their opposition to the Motion to Dismiss, the Plaintiffs state that "Paragraph 236 is meant to provide notice as to the punitive damages requested as part of Paragraph 202" regarding the fraud claim, and they do not press the unfair and deceptive trade practice claim against Bellucci. ECF No. 164 at 14 n.4. Therefore, to the extent Count XIII asserts an unfair and deceptive trade practice claim against Bellucci, I deem it abandoned.

"prove that the defendant or his co-conspirators committed any overt act in furtherance of the conspiracy." *United States v. Leoner-Aguirre*, 939 F.3d 310, 317 (1st Cir. 2019).

Here, the Complaint alleges that Bellucci conspired to violate 18 U.S.C.A. § 1962(a), which makes it unlawful to use or invest income derived from a pattern of racketeering activity under certain circumstances:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in . . . interstate or foreign commerce.

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4) (West 2021). "To establish a pattern of racketeering, a plaintiff must show at least two predicate acts of 'racketeering activity', as the statute defines such activity, and must establish that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 788 (1st Cir. 1990) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239). "Racketeering activity" encompasses mail fraud under 18 U.S.C.A. § 1341 (West 2021), wire fraud under 18 U.S.C.A. § 1343 (West 2021), and money laundering under 18 U.S.C.A. § 1956 (West 2021). 18 U.S.C.A. § 1961(1). A plaintiff asserting a § 1962(a) claim must further prove that he was "injured 'in his business or property by reason of' the defendant's violation." *Compagnie De Reassurance D'Ile de France v. New England*

7

*Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995) (quoting 18 U.S.C.A. § 1964(c) (West 2021)).

The Plaintiffs' theory for their RICO claim against Bellucci is that he conspired with the Lalumiere Defendants[5] to reinvest the income from a pattern of racketeering activity back into the enterprise. The alleged racketeering activity was money laundering and mail and wire fraud. Bellucci argues that the Complaint fails to plausibly allege that he knowingly joined the overall conspiracy. For the reasons that follow, I agree.

The Complaint's RICO claims are based on Lalumiere's alleged schemes involving 661 Allen Avenue, 75 Queen Street, 33 Sanborn Lane, 181 St. John Street, and 16 Old Ben Davis Road. However, the only allegation against Bellucci is that he extended an offer to Lewis to purchase the Beach Street property, which is not included in any of the RICO counts. The Complaint does not contain any facts that, if proven, would establish whether and how the alleged Beach Street fraud scheme is related to Lalumiere's schemes. The Complaint alleges that Bellucci and others "realized the proceeds" of Lalumiere's fraud and "were informed of the fraudulent conduct in late November 2019," ECF No. 11 ¶¶ 174, 179, but, beyond these conclusory allegations, the Complaint does not contain any allegation that Bellucci knew anything about the Lalumiere Defendants, let alone their allegedly fraudulent schemes.

---

[5] This term refers to Defendant Scott Lalumiere and the corporate entities he controlled: Defendants Birch Point Storage, LLC and MECAP, LLC.

Without any further information, the Complaint fails to allege facts establishing that Bellucci knew of Lalumiere's fraud or knowingly agreed to facilitate Lalumiere's scheme. For these reasons, I dismiss the RICO count against Bellucci.[6]

## B. Fraud Claim (Count VI)

The Complaint's fraud claim is not premised on Bellucci's offer to purchase the Beach Street property from James Lewis. Rather, the Plaintiffs seek to hold Bellucci liable for Lalumiere's alleged misrepresentations to Douglas and Fowler that they would be able to purchase the Queen Street, Allen Avenue, and Beach Street properties. The Plaintiffs acknowledge that Bellucci was not a party to those transactions, but they argue that the fraud claim "appropriately alleges a civil conspiracy on which Maine law attributes liability." ECF No. 164 at 14.

Under Maine law, fraud has the following five elements:

> (1) A party made a false representation, (2) The representation was of a material fact, (3) The representation was made with knowledge of its falsity or in reckless disregard of whether it was true or false, (4) The representation was made for the purpose of inducing another party to act in reliance upon it, and (5) The other party justifiably relied upon the representation as true and acted upon it to the party's damage.

*Thompson v. Cloud*, 764 F.3d 82, 88 n.9 (1st Cir. 2014) (quoting *Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280, 1286-87). To prevail, a party must prove the five elements by clear and convincing evidence. *Harris Mgmt., Inc. v. Coulombe*, 2016 ME 166, ¶ 26 n.7, 151 A.3d 7, 16 n.7. In Maine, civil conspiracy "is not a separate tort

---

[6] The Complaint fails to plausibly allege that Bellucci knowingly joined Lalumiere's conspiracy, and for that reason alone, the Plaintiffs' RICO claim against Bellucci fails. Therefore, I do not address Bellucci's additional argument that the Complaint fails to sufficiently plead a plausible pattern of racketeering activity.

but rather a rule of vicarious liability." *Spyderco, Inc. v. Kevin, Inc.*, No. 2:17-cv-309-DBH, 2017 WL 6375965, at *3 (D. Me. Dec. 12, 2017) (quoting *Vincent v. Town of Scarborough*, No. Civ. 02-239-PH, 2003 WL 22757940, at *32 (D. Me. Nov. 20, 2003)). Therefore, a claim of civil conspiracy "is only a way of obtaining vicarious liability against someone who did not himself perform the tortious act." *Forbis v. City of Portland*, 270 F. Supp. 2d 57, 61 (D. Me. 2003).

As a threshold matter, the fraud count in the Complaint does not assert any theory of civil conspiracy. The count merely states that Bellucci and others misrepresented that the Plaintiffs would ever regain title to their properties, the misrepresentation was made with "actual malice" and with the intention that the Plaintiffs would rely upon it, and the fraud cost the Plaintiffs "more than $2,750,000.00 in damages." ECF No. 11 ¶¶ 199-202. However, the Complaint's only nonconclusory allegation against Bellucci states that he offered to buy the Beach Street property and then revoked his offer days before the foreclosure. The Complaint does not assert that Bellucci's offer was false, nor does it assert that Bellucci made the offer with the intention that Lewis would rely upon it or that Lewis did, in fact, rely upon it. Thus, the Complaint does not assert a plausible fraud claim if it is only based on Bellucci's withdrawn offer to buy the Beach Street property.

Even if the fraud count included allegations of civil conspiracy, I have already explained that the Complaint fails to allege that Bellucci conspired with Lalumiere. Bellucci was not involved in the Queen Street or Allen Avenue lease buy-back transactions, and there is no allegation that he agreed to facilitate Lalumiere's

10

schemes. Thus, Bellucci cannot be held vicariously liable for Lalumiere's alleged misrepresentations.

Because the Complaint fails to allege that Bellucci made any fraudulent misrepresentation or that he is liable for Lalumiere's alleged misrepresentations, I dismiss the fraud claim against Bellucci.

### C. Negligent Infliction of Emotional Distress (Count XVI)

The Plaintiffs assert a claim of negligent infliction of emotional distress against Bellucci based on the revocation of his offer to buy the Beach Street property from Lewis just days before the foreclosure sale. The Complaint alleges that Bellucci's behavior was "so outrageous that it cannot be tolerated in civilized society," caused Lewis "severe emotional distress," the resulting severe emotional distress was reasonably foreseeable, and the distress was "so severe that no ordinary person could be expected to endure it." ECF No. 11 ¶¶ 250-54.

"Under Maine law, proof of negligent infliction of emotional distress requires plaintiffs to show that (1) defendants were negligent; (2) plaintiffs suffered emotional distress that was a reasonably foreseeable result of defendants' negligent conduct; [and] (3) and plaintiffs suffered severe emotional distress as a result of defendants' negligence." *Veilleux v. Nat'l Broad. Co.*, 206 F.3d 92, 129 (1st Cir. 2000). Moreover, a plaintiff must prove that the defendant violated a special duty of care owed to the plaintiff. *Id.* at 130; *see Curtis v. Porter*, 2001 ME 158, ¶ 18, 784 A.2d 18, 25 ("[T]here is no . . . general duty to avoid negligently causing emotional harm to others."). Maine law "recognize[s] a duty to act reasonably to avoid emotional harm to others in very

11

limited circumstances," such as where "a special relationship exists between the actor and the person emotionally harmed." *Curtis*, 2001 ME 158, ¶ 19, 784 A.2d at 25; *see Veilleux*, 206 F.3d at 130-31 (collecting cases where Maine has recognized special relationships). However, an "ordinary business relationship" is usually not a special relationship from which the duty of care will arise. *Cheung v. Wambolt*, No. Civ. 04-127-B-W, 2005 WL 1331195, at *10 (D. Me. June 2, 2005), *aff'd*, 2005 WL 1586569 (D. Me. July 5, 2005).

The Plaintiffs' negligent infliction of emotional distress claim fails for two reasons. First, the Complaint does not contain any nonconclusory allegations that would establish that Lewis suffered severe emotional distress. The Complaint does not provide any facts about the "severe emotional distress" that Lewis allegedly suffered as a result of Bellucci revoking his offer. Second, the Complaint does not provide any factual information that might plausibly support the existence of a "special relationship" between Bellucci and Lewis. The Complaint does not suggest more than an "ordinary business relationship," which "is not the kind of 'unique relationship' from which a special duty of care will arise to avoid causing emotional harm." *Cheung*, 2005 WL 1331195, at *10. Therefore, I dismiss the negligent infliction of emotional distress claim against Bellucci.

**D.    Unjust Enrichment Claim (Count XVII)**

The Complaint asserts a claim for unjust enrichment against Bellucci based on the alleged "extraction of equity from the homes at 661 Allen Avenue and 57 Queen Street." ECF No. 11 ¶ 255.

A claim for unjust enrichment requires proof that "(1) [the complaining party] conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Knope v. Green Tree Servicing, LLC*, 2017 ME 95, ¶ 12, 161 A.3d 696, 699 (quoting *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712).

The Plaintiffs' unjust enrichment claim cannot succeed because the Complaint fails to allege any facts indicating that that a benefit was conferred on Bellucci. The Complaint does not assert that Bellucci had any involvement in the Allen Avenue or Queen Street transactions, nor does it assert an unjust enrichment claim arising from the Beach Street transaction. Although the Plaintiffs allegedly suffered harm through the frustration of their rights to purchase the two properties, the Complaint fails to assert facts that would plausibly establish that a resulting benefit was conferred on Bellucci. Relatedly, the Complaint does not allege that Bellucci had or should have had "appreciation or knowledge" of the benefit received. There cannot be an unjust enrichment without a "conferred benefit" or "knowledge of the benefit."

In sum, the Complaint fails to plead facts which, if proven, would establish a right of recovery based on unjust enrichment.

E.   **Motion for Limited Discovery**

A dismissal is not automatic once the lower court determines that Rule 9(b) has not been satisfied. *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290

(1st Cir. 1987). Instead, after the Rule 9(b) determination, a "court should make a *second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint." *Id.* The plaintiff may have a right to limited discovery, to the extent necessary to cure a Rule 9(b) defect about "the details of just when and where the mail or wires were used." *Id.* A court also has "some latitude" to allow discovery "where a plausible claim may be indicated 'based on what is known,' at least where . . . 'some of the information needed may be in the control of the defendants.'" *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (alteration omitted) (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)).

Here, the Plaintiffs seek limited discovery from Bellucci to reveal "communications between Andre Bellucci, Michael Lyden, Shawn Lyden, Coastal [Realty] Capital, and Maine Capital Group and the other defendants" who were allegedly involved in the conspiracy. ECF No. 165 at 3-4. Under the Plaintiffs' theory, they believe that Bellucci had exclusive access to communications which are necessary to prove the elements of fraud.

The decisions in *Becher* and *Menard* establish two possible grounds for granting limited discovery. First, under *Menard*, where modest discovery may "provide the missing link" to satisfy the Rule 12(b)(6) plausibility standard, the court may allow limited discovery "at least where . . . 'some of the information needed may be in the control of the defendants.'" 698 F.3d at 45 (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)). Here, however, the Complaint is not lacking a

14

"missing link." The Complaint does not plausibly suggest that Bellucci had information that would provide the "missing link" needed to remedy its deficiencies.

Second, as discussed in *Becher*, a court may allow discovery as to "the details of just when and where the mail or wires were used" in a "RICO mail and wire fraud case." 829 F.2d at 290; *see also Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Here, however, additional information as to how the conspiracy used the mail or wires would not cure the Complaint's failure to sufficiently allege that Bellucci knowingly joined the conspiracy.

Neither *Menard* nor *Becher* offers a basis to grant limited discovery for the Plaintiffs as against Bellucci. Thus, I deny the Motion for Limited Discovery as to Bellucci.

### III. CONCLUSION

For the reasons stated above, it is **ORDERED** that Andre Bellucci's Motion to Dismiss (ECF No. 147) is **GRANTED**. The Amended Complaint (ECF No. 11) as to Andre Bellucci is **DISMISSED**. The Plaintiffs' Motion for Limited Discovery (ECF No. 165) is **DENIED.**

SO ORDERED.

Dated: September 29, 2021

                                               /s/ JON D. LEVY
                                      **CHIEF U.S. DISTRICT JUDGE**