## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **JOEL DOUGLAS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **2:20-cv-00227-JDL** |
| | ) | |
| **SCOTT LALUMIERE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### ORDER ON CAMDEN NATIONAL BANK'S MOTION TO DISMISS

Joel Douglas, Steven Fowler, and James Lewis (collectively, "Plaintiffs") bring this action against Scott Lalumiere and twenty-five other defendants (collectively, "Defendants"), asserting seventeen claims arising out of an alleged scheme to defraud the Plaintiffs and obtain control or ownership of their real estate properties for the purpose of borrowing against the properties' equity. In total, the Defendants have filed thirteen motions to dismiss the First Amended Complaint (the "Complaint") (ECF No. 11) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] This order addresses Camden National Bank's ("CNB") motion to dismiss the claims asserted against it under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961-1968 (West 2021) and Maine contract law (ECF No. 61). For the reasons that follow, I grant

---

[1] The following defendants have filed motions to dismiss: Androscoggin Savings Bank (ECF No. 37); Camden National Bank (ECF No. 61); TTJR, LLC, LH Housing, LLC, and Eric Holsapple (ECF No. 65); LOSU, LLC and David Hirshon (ECF No. 70); Bangor Savings Bank and Robert Burgess (ECF No. 98); Wayne Lewis (ECF No. 110); Machias Savings Bank (ECF No. 111); Coastal Realty Capital, LLC, Michael Lyden, and Shawn Lyden (ECF No. 118); Andre Bellucci (ECF No. 147); BLR Capital, LLC (ECF No. 197); F.O. Bailey Real Estate, LLC and David Jones (ECF No. 203); Russell Oakes (ECF No. 223); and David Clarke (ECF No. 225). Only Defendants Scott Lalumiere, MECAP, LLC, and Birch Point Storage, LLC have not filed motions to dismiss.

CNB's Motion to Dismiss, deny the Plaintiffs' Motion for Limited Discovery,[2] and deny as moot the Plaintiffs' objection to the Magistrate Judge's order denying the Plaintiffs' Motion for Limited Discovery.

## I. BACKGROUND

The Complaint alleges the following facts, which I treat as true for purposes of ruling on this Motion to Dismiss.

The Complaint asserts that Scott Lalumiere and other defendants engaged in three distinct but intertwined schemes to defraud the Plaintiffs.  In the first scheme, the Complaint alleges that Scott Lalumiere, funded by various banks and private lenders, fraudulently induced several vulnerable individuals, including Plaintiffs Steven Fowler and Joel Douglas, who lacked access to conventional credit, to enter into unfavorable lease/buy-back agreements.  Under the terms of the agreements, the title of the victim's property would be transferred to a corporate entity controlled by Lalumiere with the victim, as the lessee, retaining a purchase option.  The Lalumiere-controlled entity would subsequently mortgage the property to banks and private lenders, and, when the entity defaulted on its loan, the mortgagees foreclosed on the property, frustrating the victim's option to purchase.

In the second alleged scheme, Fowler entered into an agreement with Lalumiere whereby he would provide labor and materials at a discounted rate to renovate certain properties controlled by Lalumiere, with the understanding that

---

[2] I recognize that Magistrate Judge John C. Nivison denied the Motion for Limited Discovery on January 21, 2021 (ECF No. 156).  His order expressly recognized, however, that the Plaintiffs' request for limited discovery should be revisited as part of the Court's assessment of the Motion to Dismiss. Accordingly, I have treated the earlier order denying the motion as a deferral of action on the motion. Further, I have considered the merits of the motion and, for the reasons explained herein, I deny the motion.

Fowler could purchase the properties back upon the completion of the renovations. However, Lalumiere frustrated Fowler's right to purchase the properties by defaulting on the mortgages, causing the mortgagees to foreclose on the properties.

In the third alleged scheme, several of the Defendants agreed to pay-off and discharge Plaintiff James Lewis's defaulted mortgage and to lend him money to make improvements to his property in exchange for him deeding the property to a corporation and making certain payments. After the title was transferred, they refused to loan him the money and subsequently foreclosed on the property.

The Plaintiffs' claims against CNB involve the second scheme noted above in relation to one property: 181 St. John Street, Portland, Maine. In June 2015, MECAP, LLC—a Lalumiere-controlled entity—purchased the property from S & K Properties LLC. CNB extended a commercial loan to MECAP, LLC secured by a $140,000 mortgage to purchase this property. In May 2016, Lalumiere and Fowler entered into a renovation agreement involving the St. John Street property. In this agreement, Lalumiere would pay Fowler for renovation work on the St. John Street property in exchange for the right to purchase the property for the payoff amounts on the outstanding conventional mortgages once the work was completed. Because Lalumiere and his co-conspirators defaulted on their mortgage, in January 2020, CNB used a non-judicial foreclosure to auction off the St. John Street property, depriving Fowler of his right to purchase the property.[3]

---

[3] CNB claims it did not foreclose on the property, highlighting certain documents, and the lack thereof, that have been recorded in the Cumberland County Registry of Deeds. At this stage, however, the Court accepts all well-pleaded factual allegations as true, and thus for purposes of this Motion to Dismiss, I accept that CNB foreclosed on the property.

The Plaintiffs filed a Motion for Limited Discovery from CNB in connection with their response to the motions to dismiss.  On January 21, 2021, Magistrate Judge John C. Nivison entered an order denying the Plaintiffs' limited discovery request without prejudice, stating that "[t]he Court will consider Plaintiffs' [discovery] requests as part of the Court's assessment of each defendant's motion to dismiss."  ECF No. 156 at 3.  On January 28, 2021, the Plaintiffs filed a timely objection to the Magistrate Judge's order (ECF No. 162).  Below, I address the Plaintiffs' Motion for Limited Discovery and the Plaintiffs' objection to Magistrate Judge Nivison's order as it relates to CNB's Motion to Dismiss.

## II.  LEGAL ANALYSIS

In reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor."  *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face."  *Id.* at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  Additionally, a court may consider inferences "gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice."  *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

To assess the complaint's adequacy, courts apply a "two-pronged approach," *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011): First, the court must "isolate and ignore statements in the complaint that simply offer legal labels

and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). To determine the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusory statements may "provide the framework of a complaint, they must be supported by factual allegations." *Id.* The court must determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.*

In addition, the Plaintiffs' fraud-related claims are subject to Federal Rule of Civil Procedure 9(b), which requires that a complaint "state with particularity the circumstances constituting fraud." To satisfy this requirement, the complaint must set forth the "time, place and content of an alleged false representation." *Howell v. Advantage Payroll Servs., Inc.*, No. 2:16-cv-438-NT, 2017 WL 782881, at *6 (D. Me. Feb. 28, 2017) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)). The Plaintiffs' RICO claims are based in part on the predicate acts of mail and wire fraud, which "must satisfy the particularity requirements of Rule 9(b)." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).

The Plaintiffs assert three claims against CNB: (A) the RICO claim, (B) the breach of contract claim, and (C) the unjust enrichment claim. The RICO claim includes a single count against the alleged enterprise operating the conspiracy. The

contract claim and unjust enrichment claim stand for themselves.  I address each category in turn.

## A.    RICO Claim (Count IV)

The Complaint asserts that CNB participated in a RICO conspiracy under 18 U.S.C.A. § 1962(d) (West 2021).   "To prove a RICO conspiracy offense, the [plaintiff] must show that 'the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators "to further the endeavor, which, if completed, would satisfy all the elements of a substantive RICO offense."'" *United States v. Velazquez-Fontanez*, 6 F.4th 205, 212 (1st Cir. 2021) (alterations omitted) (quoting *United States v. Rodríguez-Torres*, 939 F.3d 16, 23 (1st Cir. 2019)). It is not necessary to "prove that the defendant or his co-conspirators committed any overt act in furtherance of the conspiracy." *United States v. Leoner-Aguirre*, 939 F.3d 310, 317 (1st Cir. 2019).

Here, the Complaint alleges CNB conspired to violate 18 U.S.C.A. § 1962(a), which makes it unlawful to use or invest income derived from a pattern of racketeering activity under certain circumstances:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in . . . interstate or foreign commerce.

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  18 U.S.C.A. § 1961(4) (West 2021).  "To establish a pattern of racketeering, a plaintiff must show at least two predicate acts of 'racketeering

activity', as the statute defines such activity, and must establish that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 788 (1st Cir. 1990) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239). "Racketeering activity" encompasses mail fraud under 18 U.S.C.A. § 1341 (West 2021), wire fraud under 18 U.S.C.A. § 1343 (West 2021), and money laundering under 18 U.S.C.A. § 1956 (West 2021). 18 U.S.C.A. § 1961(1). A plaintiff asserting a § 1962(a) claim must further prove that he was "injured 'in his business or property by reason of' the defendant's violation." *Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995) (quoting 18 U.S.C.A. § 1964(c) (West 2021)).

The Plaintiffs' theory is that CNB conspired with the Lalumiere Defendants[4] to reinvest the income from a pattern of racketeering activity back into the enterprise. The alleged racketeering activity was money laundering and mail and wire fraud. CNB argues that the Complaint fails to plausibly allege that CNB knowingly joined the overall conspiracy or that its actions resulted in an investment injury independent from the underlying predicate acts.[5] I agree.

---

[4] This term refers to Defendant Scott Lalumiere and the corporate entities he controlled: Defendants Birch Point Storage, LLC and MECAP, LLC.

[5] As I will explain, the Complaint fails to plausibly allege that CNB knowingly joined Lalumiere's conspiracy or that the Plaintiffs suffered a distinct investment injury. For those reasons alone, the Plaintiffs' RICO claims against CNB fail. Therefore, I do not address CNB's additional argument that the Complaint fails to sufficiently plead a plausible pattern of racketeering activity.

### 1.   Knowingly Conspired

The Plaintiffs assert that CNB knowingly conspired with Lalumiere because CNB was privy to information that the funds used to purchase the St. John Street property were part of a larger conspiracy to launder the enterprise's money. Specifically, the Complaint alleges that the St. John Street property was paid for with proceeds from a fraudulent transaction involving the property at 75 Queen Street, Gorham, Maine.   For the reasons I will explain, the Complaint's generalized allegations regarding CNB's knowledge are not sufficient to establish the required element of knowledge.

First, the Complaint alleges that CNB was "informed of the fraudulent conduct in late November 2019."  However, while knowledge can be pled generally, it cannot be alleged vaguely.  The Complaint does not allege that CNB knew Lalumiere's purchase of the St. John Street property was funded by the proceeds from fraudulent transactions involving 75 Queen Street.  The conclusory allegation that CNB was "informed of the fraudulent conduct" and then foreclosed on the St. John Street property is not sufficient to survive CNB's motion to dismiss.

Second, the Plaintiffs assert that CNB knew Lalumiere was involved in lease/buy-back agreements, and this information should have put CNB on notice that the transaction for the St. John Street property was fraudulent.  However, this assertion is made for the first time in the Plaintiffs' opposition to CNB's Motion to Dismiss and is not contained in the Complaint.  Regardless of the failure to properly plead this allegation, the Complaint fails to point to specific terms of the lease arrangement that, without more, would have put CNB on notice that this transaction

was used to launder money. The allegations suggest nothing more than a bank engaged in arm's-length financing in the normal course of business. *See Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991) ("Bankers do not become racketeers by acting like bankers"). The Complaint's conclusory allegations to the contrary are not enough to survive CNB's Motion to Dismiss.

Accordingly, the Complaint fails to allege facts that, if proven, would demonstrate that CNB knowingly joined the conspiracy.

### 2. Investment Injury

"[T]o have a private cause of action, a plaintiff asserting a civil RICO conspiracy claim must show 'injur[y] in his business or property by reason of a violation of Section 1962.'" *Veilleux v. Elec. Maine, LLC*, No. 1:16-cv-571-NT, 2017 WL 5490838, at *8 (D. Me. Nov. 15, 2017) (quoting 18 U.S.C.A. § 1964(c)). In the context of § 1962(a), this requirement is referred to as the "investment use rule," whereby "many courts have concluded that the mere reinvestment of racketeering proceeds in a corporate enterprise with the result that the enterprise continues to engage in the predicate acts of racketeering[] is insufficient to give rise to a 'use or investment injury' that is distinct from the harm caused by the predicate acts." *MyFreeMedicine.com, LLC v. Alpine Investors*, 739 F. Supp. 2d 8, 20 n.10 (D. Me. 2010). "[A] plaintiff cannot comply with the 'investment use rule' simply by 'repeating the crux of [his or her] allegations in regard to the pattern of racketeering.'" *Id.* (citations omitted). "[A] plaintiff must show that his or her injury was caused by the defendant's use or investment of racketeering proceeds," distinct from the injury caused by the predicate acts. *Id.* (citing *Compagnie De Reassurance*, 57 F.3d at 91).

9

With respect to CNB, the bank proceeded with a non-judicial foreclosure to auction off the St. John Street property.  The Complaint asserts that the non-judicial foreclosure sale, and the ultimate loss of the ability to purchase the property, was a result of fraud.  Fowler believed that the agreement was valid and that he would have the option to purchase the property once the work was complete.  However, because CNB foreclosed on the property, Fowler lost his ability to exercise his option to purchase.

While the Complaint alleges facts demonstrating that Fowler was harmed, it fails to identify an investment injury distinct from the harm caused by the predicate fraud.  The Complaint alleges that the St. John Street property was "paid for with the proceeds from the fraud in the transaction for 75 Queen Street." ECF No. 11 at ¶ 180.  Although the Complaint asserts that the proceeds were reinvested in the enterprise and furthered the alleged fraud, these allegations do not satisfy the injury requirement.   Even if one accepts the Complaint's theory that the Defendants' transactions were fraudulent, the Complaint fails to allege a plausible investment injury distinct from the loss of the property.  Without a specifically alleged investment injury, the Complaint fails to adequately plead an injury that is separate from the predicate harm.

Without pleading facts that could establish the required element of an investment injury, the Plaintiffs have failed to allege any substantive § 1962(a) claim, and therefore the § 1962(d) conspiracy claims must be dismissed.  *See Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000) ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the

conspiracy claim also fails."); *see also MyFreeMedicine.com*, 739 F. Supp. 2d at 30-31 (dismissing § 1962(d) conspiracy count because the complaint failed to allege a substantive RICO violation).

In sum, with regards to RICO, the Complaint fails to allege that CNB knowingly joined the overall conspiracy, and also fails to allege an investment injury distinct from the predicate acts.   Therefore, the RICO claim against CNB is dismissed.

## B.   Contract Claim (Count X)

The Complaint asserts one claim against CNB based on Lalumiere's misrepresentation that Fowler would be able to purchase the St. John Street property: breach of contract.   The problem, as CNB points out, is that CNB was not a party to the allegedly fraudulent transaction.   In response, the Plaintiffs argue that there was an enforceable contract but do not contest the fact that CNB was not a party to that contract.   Without more, the Complaint cannot sustain a claim against a party that was not involved in the agreement at issue.

## C.   Unjust Enrichment Claim (Count XVII)

The Complaint asserts a claim for unjust enrichment against CNB based on the alleged "extraction of equity from the homes at 661 Allen Avenue and 57 Queen Street."   ECF No. 11 ¶ 255.

A claim for unjust enrichment requires proof that "(1) [the complaining party] conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without

payment of its value." *Knope v. Green Tree Servicing, LLC*, 2017 ME 95, ¶ 12, 161 A.3d 696, 699 (quoting *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712).

The Complaint's unjust enrichment claim fails for two reasons.  First, the Complaint does not allege that a benefit was conferred on CNB.  The Complaint does not allege that CNB had any involvement in the Allen Avenue or Queen Street transactions, nor does it assert an unjust enrichment claim arising from the St. John Street renovation work.  Although Fowler suffered harm through the loss of his ability to purchase the St. John Street property, the Complaint fails to plausibly allege facts that would establish that a resulting benefit was conferred on CNB. There cannot be an unjust enrichment without a "conferred benefit."

Second, the Complaint does not allege that CNB had or should have had "appreciation or knowledge" of the benefit received.  The agreements that Lalumiere allegedly never intended to honor were entered into before CNB became involved. Further, for the reasons I have already discussed, the Complaint fails to allege facts that, if proven, would establish that CNB knew or should have known of the fraud when it made its loan to Lalumiere.

In sum, the Complaint fails to plead facts that, if proven, would establish a right of recovery based on unjust enrichment.

## D.   Motion for Limited Discovery

A dismissal is not automatic once the lower court determines that Rule 9(b) has not been satisfied.  *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987).  Instead, after the Rule 9(b) determination, a "court should make a

*second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint." *Id.* The plaintiff may have a right to limited discovery, to the extent necessary to cure a Rule 9(b) defect about "the details of just when and where the mail or wires were used." *Id.* A court also has "some latitude" to allow discovery "where a plausible claim may be indicated 'based on what is known,' at least where . . . 'some of the information needed may be in the control of the defendants.'" *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (alteration omitted) (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)).

Here, the Plaintiffs seek limited discovery from CNB to reveal "communications between [CNB] and the other defendants" who were allegedly involved in the conspiracy. ECF No. 103 at 3. Under the Plaintiffs' theory, they believe that CNB had exclusive access to communications which are necessary to prove the elements of fraud. CNB opposes the motion, asserting the Plaintiffs have failed to demonstrate a right to limited discovery because they have not pled a plausible claim and limited discovery is granted to cure particularity deficiencies, not plausibility defects.

The decisions in *Becher* and *Menard* establish two possible grounds for granting limited discovery. First, under *Menard*, where modest discovery may "provide the missing link" to satisfy the Rule 12(b)(6) plausibility standard, the court may allow limited discovery "at least where . . . 'some of the information needed may be in the control of the defendants.'" 698 F.3d at 45 (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)). Here, however, the Complaint is not lacking a

"missing link."  The Complaint does not plausibly suggest that CNB had information that would provide the "missing link" needed to remedy its deficiencies.

Second, as discussed in *Becher*, a court may allow discovery as to "the details of just when and where the mail or wires were used" in a "RICO mail and wire fraud case."  829 F.2d at 290; *see also Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).  Here, however, the Complaint already contains factual allegations as to how the scheme involved the use of interstate wires.  There is no doubt that CNB uses interstate wires in the course of its regular business activity.  Additional information as to how the conspiracy used the mail or wires would not cure the Complaint's failure to sufficiently allege that CNB knowingly joined the conspiracy.

Neither *Menard* nor *Becher* offers a basis to grant limited discovery for the Plaintiffs as against CNB.  Thus, the Motion for Limited Discovery as to CNB is denied, and the Plaintiffs' objection to the Magistrate Judge's Order (ECF No. 156) deferring action on the Motion for Limited Discovery until the Court assessed the motions to dismiss is denied as moot.

## III.  CONCLUSION

For the reasons stated above, it is **ORDERED** that Camden National Bank's Motion to Dismiss (ECF No. 61) is **GRANTED**.  The Amended Complaint (ECF No. 11) as to Camden National Bank is **DISMISSED**.  The Plaintiffs' Motion for Limited Discovery (ECF No. 103) is **DENIED** and the Plaintiffs' Objection to the Magistrate Judge's Order on Limited Discovery (ECF No. 162) is **DENIED AS MOOT** as to Camden National Bank.

14

**SO ORDERED.**

**Dated:  September 29, 2021**

_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**