# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| JOEL DOUGLAS, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
|         v. | ) 2:20-cv-00227-JDL |
| | ) |
| SCOTT LALUMIERE, et al., | ) |
| | ) |
|    Defendants. | ) |

## ORDER ON MOTION TO DISMISS BY DEFENDANTS COASTAL REALTY CAPITAL, LLC; MICHAEL LYDEN; AND SHAWN LYDEN

Joel Douglas, Steven Fowler, and James Lewis (collectively, "Plaintiffs") bring this action against Scott Lalumiere and twenty-five other defendants (collectively, "Defendants"), asserting seventeen claims arising out of an alleged scheme to defraud the Plaintiffs and obtain control or ownership of their real estate properties for the purpose of borrowing against the properties' equity. In total, the Defendants have filed thirteen motions to dismiss the First Amended Complaint (the "Complaint") (ECF No. 11) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] This order addresses Coastal Realty Capital, LLC; Michael Lyden; and Shawn Lyden's (collectively, "Coastal Realty Defendants") Motion to Dismiss the claims asserted against them under the

---

[1] The following defendants have filed motions to dismiss: Androscoggin Savings Bank (ECF No. 37); Camden National Bank (ECF No. 61); TTJR, LLC, LH Housing, LLC, and Eric Holsapple (ECF No. 65); LOSU, LLC and David Hirshon (ECF No. 70); Bangor Savings Bank and Robert Burgess (ECF No. 98); Wayne Lewis (ECF No. 110); Machias Savings Bank (ECF No. 111); Coastal Realty Capital, LLC, Michael Lyden, and Shawn Lyden (ECF No. 118); Andre Bellucci (ECF No. 147); BLR Capital, LLC (ECF No. 197); F.O. Bailey Real Estate, LLC and David Jones (ECF No. 203); Russell Oakes (ECF No. 223); and David Clarke (ECF No. 225). Only Defendants Scott Lalumiere, MECAP, LLC, and Birch Point Storage, LLC have not filed motions to dismiss.

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961-1968 (West 2021), and Maine tort and contract law (ECF No. 118). For the reasons that follow, I grant the Coastal Realty Defendants' Motion to Dismiss, deny the Plaintiffs' Motion for Limited Discovery (ECF No. 145),[2] and deny as moot the Plaintiffs' Objection to Magistrates Order on Limited Discovery (ECF No. 162).

## I. BACKGROUND

The Complaint alleges the following facts, which I treat as true for purposes of ruling on this Motion to Dismiss.

The Complaint asserts that Scott Lalumiere and other defendants engaged in three distinct but intertwined schemes to defraud the Plaintiffs. In the first scheme, the Complaint alleges that Scott Lalumiere, funded by various banks and private lenders, fraudulently induced several vulnerable individuals, including Plaintiffs Steven Fowler and Joel Douglas, who lacked access to conventional credit, to enter into unfavorable lease/buy-back agreements. Under the terms of the agreements, the title of the victim's property would be transferred to a corporate entity controlled by Lalumiere with the victim, as the lessee, retaining a purchase option. The Lalumiere-controlled entity would subsequently mortgage the property to banks and private lenders, and, when the entity defaulted on its loan, the mortgagees foreclosed on the property, frustrating the victim's option to purchase.

---

[2] I recognize that Magistrate Judge John C. Nivison denied the Motion for Limited Discovery on January 21, 2021 (ECF No. 156). His order expressly recognized, however, that the Plaintiffs' request for limited discovery should be revisited as part of the Court's assessment of the Motion to Dismiss. Accordingly, I have treated the earlier order denying the motion as a deferral of action on the motion. Further, I have considered the merits of the motion and, for the reasons explained herein, I deny the motion.

In the second alleged scheme, Fowler entered into an agreement with Lalumiere whereby he would provide labor and materials at a discounted rate to renovate certain properties controlled by Lalumiere, with the understanding that Fowler could purchase the properties back upon the completion of the renovations. However, Lalumiere frustrated Fowler's right to purchase the properties by defaulting on the mortgages, causing the mortgagees to foreclose on the properties.

In the third alleged scheme, several of the Defendants agreed to pay-off and discharge Plaintiff James Lewis's defaulted mortgage and to lend him money to make improvements to his property in exchange for him deeding the property to a corporation and making certain payments. After the title was transferred, they refused to loan him the money and subsequently foreclosed on the property.

The Plaintiffs' claims against the Coastal Realty Defendants involve the third scheme noted above in relation to one property: 57 Beach Street, South Portland, Maine. In December 2010, Milk Street Capital, LLC—a Lalumiere-controlled entity—through Michael Lyden, allegedly made promises to James Lewis that Milk Street Capital would pay-off his defaulted mortgage and loan him money to make improvements in exchange for him deeding the Beach Street property to a corporation to hold the title. Per the agreement, James Lewis could continue to live at the Beach Street property so long as he paid the mortgage. The Complaint fails to identify the specific mortgage to which it refers. On December 12, 2010, James Lewis executed a transfer of the 57 Beach Street property to Lewis Plumbing and Heating, LLC. The Complaint alleges that Coastal Realty Capital "refused to honor its promises to loan

3

additional money to Mr. Lewis for the necessary home improvements and never intended to loan Mr. Lewis money for home improvements," ECF No. 11 ¶ 115, although, on September 19, 2014, Michael Lyden arranged for Coastal Realty Capital to loan James Lewis $125,000. Coastal Realty Capital subsequently foreclosed on the Beach Street property. The Complaint separately alleges, in connection with Count IV alleging a RICO violation, that the Coastal Realty Defendants "realized . . . proceeds," and in late November 2019, one or more unnamed parties informed the Coastal Realty Defendants of unspecified "fraudulent conduct." *Id.* ¶¶ 174, 179.

The Plaintiffs filed a Motion for Limited Discovery from the Coastal Realty Defendants (ECF No. 145) in connection with the Plaintiffs' response to the Coastal Realty Defendants' Motion to Dismiss. On January 21, 2021, Magistrate Judge John C. Nivison entered an order denying the Plaintiffs' limited discovery request without prejudice, stating that "[t]he Court will consider Plaintiffs' [discovery] requests as part of the Court's assessment of each defendant's motion to dismiss." ECF No. 156 at 3. On January 28, 2021, the Plaintiffs filed a timely objection to the Magistrate Judge's order (ECF No. 162). Below, I address the Motion for Limited Discovery and the Plaintiffs' objection to Judge Nivison's order as it relates to the Coastal Realty Defendants.

## II. LEGAL ANALYSIS

In reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*,

711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). Additionally, a court may consider inferences "gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

To assess the complaint's adequacy, courts apply a "two-pronged approach," *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011): First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). To determine the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although conclusory legal statements may "provide the framework of a complaint, they must be supported by factual allegations." *Id.* The court must determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.*

In addition, the Plaintiffs' fraud-related claims are subject to Federal Rule of Civil Procedure 9(b), which requires that a complaint "state with particularity the

5

circumstances constituting fraud." To satisfy this requirement, the complaint must set forth the "time, place and content of an alleged false representation." *Howell v. Advantage Payroll Servs., Inc.*, No. 2:16-cv-438-NT, 2017 WL 782881, at *6 (D. Me. Feb. 28, 2017) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)). The Plaintiffs' RICO claims are based in part on the predicate acts of mail and wire fraud, which "must satisfy the particularity requirements of Rule 9(b)." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).

The Plaintiffs assert four categories of claims against the Coastal Realty Defendants: (A) the RICO claim, (B) the fraud claim, (C) the breach of contract claim, and (D) the unjust enrichment claim. The RICO claim includes a single count against the alleged enterprise operating the conspiracy. The fraud claim stems from Lalumiere's representations to the Plaintiffs that they had an option to purchase certain properties, and the contract claim involves alleged violations of contractual duties related to the 57 Beach Street property. The unjust enrichment claim stands for itself. I address each in turn.[3]

---

[3] The Complaint references the Coastal Realty Defendants in Count XIII, Unfair and Deceptive Trade Practice, but does not explicitly name them in the count. In their opposition to the Motion to Dismiss, the Plaintiffs do not press this claim against the Coastal Realty Defendants. Therefore, to the extent Count XIII asserts an unfair and deceptive trade practice claim against the Coastal Realty Defendants, I deem it abandoned.

## A.     RICO Claim (Count IV)[4]

The Complaint asserts that Shawn and Michael Lyden participated in a RICO conspiracy under 18 U.S.C.A. § 1962(d) (West 2021).  "To prove a RICO conspiracy offense, the [plaintiff] must show that 'the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators "to further the endeavor, which, if completed, would satisfy all the elements of a substantive RICO offense."'"  *United States v. Velazquez-Fontanez*, 6 F.4th 205, 212 (1st Cir. 2021) (alterations omitted) (quoting *United States v. Rodríguez-Torres*, 939 F.3d 16, 23 (1st Cir. 2019)).  It is not necessary to "prove that the defendant or his co-conspirators committed any overt act in furtherance of the conspiracy."  *United States v. Leoner-Aguirre*, 939 F.3d 310, 317 (1st Cir. 2019).

Here, the Complaint alleges that Shawn and Michael Lyden conspired to violate 18 U.S.C.A. § 1962(a), which makes it unlawful to use or invest income derived from a pattern of racketeering activity under certain circumstances:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in . . . interstate or foreign commerce.

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although

---

[4] The Coastal Realty Defendants assert that Count IV of the Complaint is alleged against Shawn and Michael Lyden but not Coastal Realty Capital.  In fact, though, the Complaint alleges that "Coastal Realty Capital LLC . . . realized the proceeds through the other part of the association in fact enterprise . . . all of which conspired in violation of 18 U.S.C. § 1962(d)."  ECF No. 11 ¶ 174.  The Complaint fails to sufficiently allege the RICO count against Coastal Realty Capital for the same reasons it fails as to Michael and Shawn Lyden.

not a legal entity." 18 U.S.C.A. § 1961(4) (West 2021). "To establish a pattern of racketeering, a plaintiff must show at least two predicate acts of 'racketeering activity', as the statute defines such activity, and must establish that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 788 (1st Cir. 1990) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239). "Racketeering activity" encompasses mail fraud under 18 U.S.C.A. § 1341 (West 2021), wire fraud under 18 U.S.C.A. § 1343 (West 2021), and money laundering under 18 U.S.C.A. § 1956 (West 2021). 18 U.S.C.A. § 1961(1). A plaintiff asserting a § 1962(a) claim must further prove that he was "injured 'in his business or property by reason of' the defendant's violation." *Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995) (quoting 18 U.S.C.A. § 1964(c) (West 2021)).

The Plaintiffs' theory for their RICO claim against Shawn and Michael Lyden is that the Lydens conspired with the Lalumiere Defendants[5] under § 1962(d) to reinvest the income from a pattern of racketeering activity back into the enterprise. The alleged racketeering activity was money laundering and mail and wire fraud. The Coastal Realty Defendants argue that the Complaint fails to plausibly allege that Shawn or Michael Lyden knowingly conspired to invest racketeering income into an enterprise. I agree.

---

[5] This term refers to Defendant Scott Lalumiere and the corporate entities he controlled: Defendants Birch Point Storage, LLC and MECAP, LLC.

The Complaint's one RICO count that includes the Lydens, Count IV, does not mention the Beach Street property or the events connected to it, and it also does not allege any other facts involving the Lydens that would establish a RICO violation by them. The Complaint merely alleges the Plaintiffs' conclusion that the Lydens "realized . . . proceeds." ECF No. 11 at ¶ 174. This vague allegation does not speak to whether the Lydens knowingly agreed to further the investment of racketeering income into the enterprise that is the subject of Count IV. The Complaint also alleges that the Lydens became "informed of the fraudulent conduct in late November 2019." *Id.* ¶ 179. This generalized allegation—which does not specify the fraud at issue, who informed the Lydens of the fraud, or the content of the communication—also does not plausibly allege that the Lydens knowingly agreed to further the investment of racketeering income.

The vague and conclusory allegations that mention Shawn and Michael Lyden in Count IV of the Complaint do not plausibly allege that they knowingly conspired to violate 18 U.S.C.A. § 1962(a), and I dismiss the RICO count as to them.

**B.     Fraud Claim (Count VI)**

The Plaintiffs seek to hold the Coastal Realty Defendants liable for the alleged "Beach Street Fraud Scheme," ECF No. 11 at 23, and also for Lalumiere's alleged misrepresentations to Douglas and Fowler that they would be able to purchase the Queen Street and Allen Avenue properties. The Plaintiffs acknowledge that any false representations about the Queen Street and Allen Avenue properties were made by

9

Lalumiere but argue that the fraud claim "appropriately alleges a civil conspiracy on which Maine law attributes liability." ECF No. 144 at 14.

Under Maine law, fraud has the following five elements:

(1) A party made a false representation, (2) The representation was of a material fact, (3) The representation was made with knowledge of its falsity or in reckless disregard of whether it was true or false, (4) The representation was made for the purpose of inducing another party to act in reliance upon it, and (5) The other party justifiably relied upon the representation as true and acted upon it to the party's damage.

*Thompson v. Cloud*, 764 F.3d 82, 88 n.9 (1st Cir. 2014) (quoting *Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280, 1286-87). To prevail, a party must prove the five elements by clear and convincing evidence. *Harris Mgmt., Inc. v. Coulombe*, 2016 ME 166, ¶ 26 n.7, 151 A.3d 7, 16 n.7. Again, a complaint must "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b), and set forth the "time, place and content of an alleged false representation." *Howell*, 2017 WL 782881, at *6 (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)).

The only non-conclusory allegations in the Complaint that are potentially germane to this fraud claim are: (1) Milk Street Capital, through Michael Lyden, promised to loan Lewis money to improve 57 Beach Street but Coastal Realty Capital refused to honor Milk Street Capital's promise and had never intended to honor that promise, and (2) Coastal Realty Capital did loan $125,000 to Lewis and then foreclosed on 57 Beach Street. Thus, the Complaint lacks any allegations that Coastal Realty Capital, Michael Lyden, or Shawn Lyden themselves knowingly made

false representations to the Plaintiffs, let alone false representations that would satisfy the particularity requirements of Rule 9(b).

Regarding the Queen Street and Allen Avenue properties, in Maine, civil conspiracy "is not a separate tort but rather a rule of vicarious liability." *Spyderco, Inc. v. Kevin, Inc.*, No. 2:17-cv-309-DBH, 2017 WL 6375965, at *3 (D. Me. Dec. 12, 2017) (quoting *Vincent v. Town of Scarborough*, No. Civ. 02-239-PH, 2003 WL 22757940, at *32 (D. Me. Nov. 20, 2003)). Therefore, a claim of civil conspiracy "is only a way of obtaining vicarious liability against someone who did not himself perform the tortious act." *Forbis v. City of Portland*, 270 F. Supp. 2d 57, 61 (D. Me. 2003).

The Complaint's fraud count does not assert any theory of civil conspiracy, merely stating that the Coastal Realty Defendants and others "misrepresented that the properties at 57 Beach [S]treet, 661 Allen Avenue, and 75 Queen Street would ever have title returned to their owners" and that these misrepresentations were made with "actual malice" and with the intention that the Plaintiffs would rely upon them. ECF No. 11 ¶¶ 199-200, 202. Even if the fraud count included allegations of a civil conspiracy, the Complaint, as I have previously explained, fails to allege that the Coastal Realty Defendants conspired with Lalumiere as to those transactions. According to the Complaint, the Coastal Realty Defendants did not even learn about the alleged fraud involving those properties until late 2019. Thus, the Coastal Realty Defendants cannot be held vicariously liable for Lalumiere's alleged misrepresentations.

Because the Complaint fails to allege that the Coastal Realty Defendants made any fraudulent misrepresentation or that there is a reason for them to be held liable for Lalumiere's alleged misrepresentations, I dismiss the fraud claim against the Coastal Realty Defendants.

## C.   Breach of Contract Claim (Count VII)

The Complaint alleges that Michael Lyden and Coastal Realty Capital both failed to honor a certain contract and that this breach injured James Lewis.[6]

"[T]he elements of breach of contract are '(1) breach of a material contract term; (2) causation; and (3) damages.'" *Me. Woods Pellet Co. v. W. World Ins. Co.*, 401 F. Supp. 3d 194, 199-200 (D. Me. 2019) (quoting *Me. Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶ 7, 724 A.2d 1248, 1250). "Contractual recovery is predicated in the first instance upon a consensual obligation between two or more parties." *Adams v. Buffalo Forge Co.*, 443 A.2d 932, 938 (Me. 1982).

The Complaint mentions two contracts. There is the 2010 contract between Milk Street Capital and James Lewis: Milk Street Capital agreed to pay-off a defaulted mortgage on the 57 Beach Street property, to lend James Lewis money to make improvements, and to let him live there. In return, he was to transfer the property to a corporation and make certain payments. Milk Street Capital made this agreement "through Mike Ly[]den," and then "Coastal Real[]ty Capital LLC refused to honor its promises to loan additional money to Mr. Lewis for the necessary home improvements." ECF No. 11 at ¶¶ 113, 115. The Complaint also identifies a 2014

---

[6] Because the Complaint fails to allege the elements of breach of contract, I do not address the Coastal Realty Defendants' additional arguments in support of dismissal.

contract through which "Mike Ly[]den arranged for Coastal Real[]ty Capital LLC[] to loan Mr. Lewis money in the principle amount [of] $125,000.00." *Id.* ¶ 116.

Even drawing all reasonable inferences in the Plaintiffs' favor, their allegations are too "meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010).

The Complaint does not specify whether Michael Lyden and Coastal Realty Capital breached the 2010 contract or the 2014 contract. The allegation that Coastal Realty Capital refused to loan money for home improvements suggests that the breach of contract claim is referring to the 2010 contract, since that was a term of that agreement. But the Complaint later describes the breach of contract as distinct from the "subsequent refusal to lend additional sums of money for necessary repairs." ECF No. 11 at ¶ 206. So, it is also possible that the 2014 contract is at issue.

Either way, the Plaintiffs have not sufficiently pleaded a breach of contract claim. The Complaint states that the 2010 contract was between James Lewis and Milk Street Capital. Although the Complaint goes on to state that "Mike Ly[]den made an oral contract with Mr. Lewis" for the repair-money loan, ECF No. 11 at ¶ 204, that conclusory allegation does not explain how Michael Lyden (or Coastal Realty Capital) assumed Milk Street Capital's duty to lend this money. Nor does the Complaint state that Michael Lyden is liable as an agent. *See, e.g., Est. of Saliba v. Dunning*, 682 A.2d 224, 226 (Me. 1996) ("An agent who makes a contract for an undisclosed principal or a partially disclosed principal will be liable as a party to the

contract."). And while Coastal Realty Capital (but not Michael Lyden) was a party to the 2014 contract, the Complaint does not identify anything that Coastal Realty Capital did to violate that agreement.

The Plaintiffs counter that Michael Lyden was an owner, manager, employee, or representative of Milk Street Capital and that a 2016 modification of the 2014 contract was, somehow, "[p]artial performance" through which Michael Lyden and Coastal Realty Capital acknowledged their duties to James Lewis. ECF No. 144 at 16. Even if the "partial performance" theory were enough to save Plaintiffs' breach of contract claim—they do not offer any factual allegations that explain why the 2016 modification should be deemed partial performance of the 2014 contract—I do not consider it because it is not asserted in the Complaint and was raised for the first time in Plaintiffs' opposition to the Motion to Dismiss. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71-72 (1st Cir. 2014) ("Barring 'narrow exceptions,' courts tasked with [reviewing 12(b)(6) motions] usually consider only the complaint, documents attached to it, and documents expressly incorporated into it." (quoting *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). The Complaint merely states that Michael Lyden is an owner, manager, employee, or representative of one or more entities involved in the alleged enterprise, and it omits any mention of the 2016 modification. Accordingly, the Plaintiffs fail to state a claim for breach of contract.

### D.     Unjust Enrichment Claim (Count XVII)[7]

The Complaint asserts a claim for unjust enrichment against the Coastal Realty Defendants based on the alleged "extraction of equity from the homes at 661 Allen Avenue and 57 Queen Street." ECF No. 11 ¶ 255.

A claim for unjust enrichment requires proof that "(1) [the complaining party] conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Knope v. Green Tree Servicing, LLC*, 2017 ME 95, ¶ 12, 161 A.3d 696, 699 (quoting *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712).

The Plaintiffs' unjust enrichment claim must be dismissed because the Complaint fails to allege that a benefit was conferred on the Coastal Realty Defendants in connection with the Queen Street or Allen Avenue properties. Although the Plaintiffs allegedly suffered harm through the frustration of their rights to purchase those two properties, the Complaint fails to assert facts that would plausibly establish that a resulting benefit was conferred on the Coastal Realty Defendants. Nowhere do the Plaintiffs allege that the Coastal Realty Defendants had any involvement in the Allen Avenue or Queen Street transactions. In sum, the

---

[7] The Coastal Realty Defendants point out that the "Plaintiffs name Maine Capital Group, but not Coastal Realty, in Count XVII" and state that, "[a]lthough [they] generally presume that a reference to Maine Capital Group is a reference to Coastal Realty, they do not do so with regard to Count XVII." ECF No. 118 at 2 n.4. Regardless, the Complaint fails to sufficiently allege unjust enrichment against Coastal Realty Capital for the same reasons it fails as to Michael and Shawn Lyden.

Complaint fails to plead facts that, if proven, would establish a right of recovery based on unjust enrichment.

### E.     Motion for Limited Discovery

A dismissal is not automatic once the lower court determines that Rule 9(b) has not been satisfied. *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987). Instead, after the Rule 9(b) determination, a "court should make a *second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint." *Id.* The plaintiff may have a right to limited discovery, to the extent necessary to cure a Rule 9(b) defect about "the details of just when and where the mail or wires were used." *Id.* A court also has "some latitude" to allow discovery "where a plausible claim may be indicated 'based on what is known,' at least where . . . 'some of the information needed may be in the control of the defendants.'" *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (alteration omitted) (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)).

Here, the Plaintiffs seek limited discovery from the Coastal Realty Defendants to reveal communications between the Coastal Realty Defendants and the other defendants to prove the RICO claim. However, the Complaint does not plausibly suggest that the Coastal Realty Defendants have information that would provide the "missing link" needed to remedy its deficiencies. The Complaint already contains factual allegations as to how the scheme involved the use of mail and wires. Additional information as to how the conspiracy used the mail or wires would not

cure the Complaint's failure to sufficiently allege that the Coastal Realty Defendants knowingly joined the conspiracy. Thus, neither *Becher* nor *Menard* offers a basis to grant limited discovery for the Plaintiffs as against the Coastal Realty Defendants.

The Motion for Limited Discovery as to the Coastal Realty Defendants (ECF No. 145) is denied, and the Plaintiffs' Objection to the Magistrate's Order on Limited Discovery (ECF No. 162) deferring action on the Motion for Limited Discovery until the Court assessed the Motion to Dismiss is denied as moot.

### III. CONCLUSION

For the reasons stated above, it is **ORDERED** that the Coastal Realty Defendants' Motion to Dismiss (ECF No. 118) is **GRANTED**. The Amended Complaint (ECF No. 11) as to the Coastal Realty Defendants is **DISMISSED**. The Plaintiffs' Motion for Limited Discovery (ECF No. 145) is **DENIED**, and the Plaintiffs' Objection to the Magistrate's Order on Limited Discovery (ECF No. 162) is **DENIED AS MOOT** as to the Coastal Realty Defendants.

**SO ORDERED.**

Dated: September 29, 2021

                                                                   **/s/ JON D. LEVY**
                                                     **CHIEF U.S. DISTRICT JUDGE**