## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| JOEL DOUGLAS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) 2:20-cv-00227-JDL |
| | ) |
| SCOTT LALUMIERE, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON MOTIONS TO DISMISS BY DEFENDANTS ERIC HOLSAPPLE, TTJR, LLC, AND LH HOUSING, LLC; DEFENDANT WAYNE LEWIS; DEFENDANT BLR CAPITAL, LLC; AND DEFENDANT RUSSELL OAKES

Joel Douglas, Steven Fowler, and James Lewis (collectively, "Plaintiffs") bring this action against Scott Lalumiere and twenty-five other defendants (collectively, "Defendants"), asserting seventeen claims arising out of an alleged scheme to defraud the Plaintiffs and obtain control or ownership of their real estate properties for the purpose of borrowing against the properties' equity. In total, the Defendants have filed thirteen motions to dismiss the First Amended Complaint (the "Complaint") (ECF No. 11) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] This order addresses Eric Holsapple,

---

[1] The following defendants have filed motions to dismiss: Androscoggin Savings Bank (ECF No. 37); Camden National Bank (ECF No. 61); TTJR, LLC, LH Housing, LLC, and Eric Holsapple (ECF No. 65); LOSU, LLC and David Hirshon (ECF No. 70); Bangor Savings Bank and Robert Burgess (ECF No. 98); Wayne Lewis (ECF No. 110); Machias Savings Bank (ECF No. 111); Coastal Realty Capital, LLC, Michael Lyden, and Shawn Lyden (ECF No. 118); Andre Bellucci (ECF No. 147); BLR Capital, LLC (ECF No. 197); F.O. Bailey Real Estate, LLC and David Jones (ECF No. 203); Russell Oakes (ECF No. 223); and David Clarke (ECF No. 225). Only Defendants Scott Lalumiere, MECAP, LLC, and Birch Point Storage, LLC have not filed motions to dismiss.

TTJR, LLC, and LH Housing, LLC's (collectively, "Holsapple Defendants") Motion to Dismiss (ECF No. 65); Wayne Lewis's Motion to Dismiss (ECF No. 110); BLR Capital, LLC's Motion to Dismiss (ECF No. 197); and Russell Oakes's Motion to Dismiss (ECF No. 223). The claims arise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961-1968 (West 2021), federal and state consumer protection laws, and Maine tort and contract law. For the reasons that follow, I grant the Holsapple Defendants', Wayne Lewis's, and Russell Oakes's motions to dismiss as to all claims but the RICO counts, and I grant BLR Capital's Motion to Dismiss in full. Furthermore, I deny the Plaintiffs' motions for limited discovery (ECF Nos. 107, 136, 202, 228)[2] and deny as moot the Plaintiffs' Objection to Magistrate's Order on Limited Discovery (ECF No. 162).

## I. BACKGROUND

The Complaint alleges the following facts, which I treat as true for purposes of ruling on the motions to dismiss.

The Complaint asserts that Scott Lalumiere and other defendants engaged in three distinct but intertwined schemes to defraud the Plaintiffs. In the first scheme, the Complaint alleges that Scott Lalumiere, funded by various banks and private lenders, fraudulently induced several vulnerable individuals, including Plaintiffs Steven Fowler and Joel Douglas, who lacked access to conventional credit, to enter

---

[2] I recognize that Magistrate Judge John C. Nivison denied the motions for limited discovery on January 21, 2021 (ECF No. 156), April 6, 2021 (ECF No. 213), and August 2, 2021 (ECF No. 235). His orders expressly recognized, however, that the Plaintiffs' requests for limited discovery should be revisited as part of the Court's assessment of the motions to dismiss. Accordingly, I have treated the earlier orders denying the motions as deferrals of action on the motions. Further, I have considered the merits of the motions and, for the reasons explained herein, I deny the motions.

into unfavorable lease/buy-back agreements.  Under the terms of the agreements, the title of the victim's property would be transferred to a corporate entity controlled by Lalumiere with the victim, as the lessee, retaining a purchase option.  The Lalumiere-controlled entity would subsequently mortgage the property to banks and private lenders, and, when the entity defaulted on its loan, the mortgagees foreclosed on the property, frustrating the victim's option to purchase.

In the second alleged scheme, Fowler entered into an agreement with Lalumiere whereby he would provide labor and materials at a discounted rate to renovate certain properties controlled by Lalumiere, with the understanding that Fowler could purchase the properties back upon the completion of the renovations. However, Lalumiere frustrated Fowler's right to purchase the properties by defaulting on the mortgages, causing the mortgagees to foreclose on the properties.

In the third alleged scheme, several of the Defendants agreed to pay-off and discharge Plaintiff James Lewis's defaulted mortgage and to lend him money to make improvements to his property in exchange for him deeding the property to a corporation and making certain payments.  After the title was transferred, they refused to loan him the money and subsequently foreclosed on the property.

I offer a brief introduction of the Defendants and their relationships: Eric Holsapple and Wayne Lewis, both based in Colorado, conducted business with Lalumiere in Maine.  Russell Oakes is an individual based in Maine who communicated with Eric Holsapple and Wayne Lewis.  Eric Holsapple directed the activities of Lalumiere through Wayne Lewis, who acted as, in the words of the

Complaint, a "go between" for Eric Holsapple. ECF No. 11 ¶ 41. LH Housing is a Maine company formed between Eric Holsapple and Lalumiere in December 2012. BLR Capital is a Colorado company formed by Eric Holsapple and Wayne Lewis in October 2019. TTJR is a Maine company. TTJR, LH Housing, and BLR Capital are all entities managed by Wayne Lewis.

The Plaintiffs' claims against the Holsapple Defendants, Wayne Lewis, BLR Capital, and Russell Oakes involve the first scheme noted above in relation to two Maine properties: 75 Queen Street in Gorham and 661 Allen Avenue in Portland. Additionally, the Plaintiffs assert a claim involving the second scheme against Eric Holsapple and Wayne Lewis stemming from an incident involving property at 33 Sanborn Lane, Limerick, Maine.

## A.   Queen Street Property

On May 19, 2015, MECAP, LLC—a Lalumiere-controlled entity—entered into an agreement with Douglas, whereby MECAP would lease the Queen Street property to Douglas for one year, subject to a purchase and sale agreement that would close at the end of the lease, on June 30, 2016. Per the agreement, Douglas had a contractual right to purchase the property for $275,000 in exchange for payments of $2,500 due within three business days and $30,000 due before closing. That same day, Eric Holsapple and Wayne Lewis, who were in Colorado, authorized Lalumiere to purchase the Queen Street property. On June 24, 2015, Lalumiere did purchase the property from an unspecified seller "on . . . behalf" of Douglas. ECF No. 11 ¶ 66. Lalumiere deeded it to MECAP in July 2015, and MECAP transferred title to LH

Housing in April 2016.  Lalumiere, acting through LH Housing, then encumbered the Queen Street property with a $256,500 mortgage from Machias Savings Bank ("MSB").

In October 2019, LH Housing mortgaged the Queen Street property to BLR Capital, which included an assignment of rents to BLR Capital.  In June 2020, Wayne Lewis communicated by text message to Russell Oakes, telling him that Douglas would have to pay $405,000 to purchase the property, even though Douglas had already paid $32,500 for the right to purchase the property for $275,000.  Wayne Lewis communicated the same price to Douglas.  One or more of the Defendants used the $256,500 loan proceeds from MSB and the $32,500 paid by Douglas to purchase additional properties, including 33 Sanborn Lane, discussed below.

## B.   Allen Avenue Property

In April 2017, Fowler transferred the Allen Avenue property to Birch Point Storage, LLC—another Lalumiere-controlled entity—subject to a five-year lease and purchase agreement under which Fowler could buy back the property for $219,000. On the same day the deal closed, Birch Point encumbered the Allen Avenue property with an approximately $397,000 mortgage from Androscoggin Savings Bank ("ASB"), and Birch Point assigned its interest in the Allen Avenue property to ASB.  In December 2018, a dispute arose between Lalumiere and Wayne Lewis based on an allegation by a former MECAP employee that she "discovered that money from the sale of [an unrelated property], which should have gone to LH Housing LLC was deposited into an account for MECAP LLC."  ECF No. 11 ¶ 92.  Lalumiere and Wayne

Lewis resolved the dispute by agreeing that Birch Point would mortgage the Allen Avenue property to TTJR.  In November 2019, TTJR assigned the mortgage to LH Housing.  Because Lalumiere and his co-conspirators defaulted on their mortgage with ASB, the title to the Allen Avenue property was transferred to a third party through a non-judicial foreclosure sale.

## C.    Sanborn Lane Property

In May 2016, Fowler entered into an agreement with Lalumiere whereby Lalumiere would pay Fowler for renovation work on 33 Sanborn Lane in exchange for the right to purchase the property for the payoff amount on the outstanding conventional mortgage once the work was completed.[3]  In November 2016, Bangor Savings Bank ("BSB") extended a loan to Lalumiere secured by a $139,200 mortgage on the Sanborn Lane property.  Fowler was given control of the Sanborn Lane property, where he rented out the house portion and used the garage portion for his business.  Fowler paid Lalumiere rent for the Sanborn Lane property from October 2016 to November 2019.  In March 2020, David Jones, another defendant, denied Fowler access to 33 Sanborn Lane and removed Fowler's personal property.

## D.    Plaintiffs' Motions for Limited Discovery

The Plaintiffs filed motions for limited discovery from the Holsapple Defendants, Wayne Lewis, BLR Capital, and Russell Oakes in connection with the

---

[3] I infer that this agreement was with Lalumiere in his personal capacity from the Complaint's statement that "[t]he terms of this agreement were Mr. Lalumiere would pay Mr. Fowler a portion of his hourly rate and . . . in exchange Mr. Fowler would be allowed to purchase the three properties." ECF No. 11 ¶ 101.  But if the Plaintiffs meant to allege that Fowler entered into an agreement with a Lalumiere-controlled entity, that would not alter my analysis.

Plaintiffs' responses to the motions to dismiss.  On January 21, 2021, Magistrate Judge John C. Nivison entered an order denying the Plaintiffs' limited discovery requests as to the Holsapple Defendants and Wayne Lewis without prejudice.  On January 28, 2021, the Plaintiffs filed a timely objection to the Magistrate Judge's order (ECF No. 162), and, therefore, I address that Motion for Limited Discovery and the Plaintiffs' objection to Magistrate Judge Nivison's order as it relates to the Holsapple Defendants and Wayne Lewis.

On April 6, 2021, the Magistrate Judge similarly denied the Plaintiffs' Motion for Limited Discovery as to BLR Capital (ECF No. 213), and, on August 2, 2021, the Magistrate Judge denied the Plaintiffs' Motion for Limited Discovery as to Russell Oakes (ECF No. 235).  The Plaintiffs did not object to either order.  In denying the four motions for limited discovery, Magistrate Judge Nivison stated that this Court would consider the Plaintiffs' requests when considering the relevant motions to dismiss.

## II.  LEGAL ANALYSIS

In reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  Additionally,

a court may consider inferences "gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

To assess the complaint's adequacy, courts apply a "two-pronged approach," *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011): First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). To determine the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusory statements may "provide the framework of a complaint, they must be supported by factual allegations." *Id.* The court must determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.*

In addition, the Plaintiffs' fraud-related claims are subject to Federal Rule of Civil Procedure 9(b), which requires that a complaint "state with particularity the circumstances constituting fraud." To satisfy this requirement, the complaint must set forth the "time, place and content of an alleged false representation." *Howell v. Advantage Payroll Servs., Inc.*, No. 2:16-cv-438-NT, 2017 WL 782881, at *6 (D. Me. Feb. 28, 2017) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)). The

Plaintiffs' RICO claims are based in part on the predicate acts of mail and wire fraud, which "must satisfy the particularity requirements of Rule 9(b)." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).

The Plaintiffs' claims cluster into four categories: (A) the RICO claims; (B) the Truth in Lending Act ("TILA"), Maine Consumer Credit Code ("MCCC"), fraud, and contract claims; (C) the Maine Unfair and Deceptive Trade Practice claim ("MUTPA"); and (D) the unjust enrichment claim. The RICO claims include multiple counts against the alleged enterprise operating the alleged conspiracy. The TILA, MCCC, fraud, and contract claims all stem from Lalumiere's representations to the Plaintiffs that they had an option to purchase certain properties. The MUTPA and unjust enrichment claims stand for themselves. I address each category in turn.

## A.    RICO Claims (Counts I-IV)

The Complaint asserts that Eric Holsapple, Wayne Lewis, and Russell Oakes participated in a RICO conspiracy under 18 U.S.C.A. § 1962(d) (West 2021). "To prove a RICO conspiracy offense, the [plaintiff] must show that 'the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators "to further the endeavor, which, if completed, would satisfy all the elements of a substantive RICO offense."'" *United States v. Velazquez-Fontanez*, 6 F.4th 205, 212 (1st Cir. 2021) (alterations omitted) (quoting *United States v. Rodríguez-Torres*, 939 F.3d 16, 23 (1st Cir. 2019)). It is not necessary to "prove that the defendant or his co-conspirators committed any overt act in furtherance of the conspiracy." *United States v. Leoner-Aguirre*, 939 F.3d 310, 317 (1st Cir. 2019).

Here, the Complaint alleges that Eric Holsapple, Wayne Lewis, and Russell Oakes conspired to violate 18 U.S.C.A. § 1962(a), which makes it unlawful to use or invest income derived from a pattern of racketeering activity under certain circumstances:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in . . . interstate or foreign commerce.

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4) (West 2021). "To establish a pattern of racketeering, a plaintiff must show at least two predicate acts of 'racketeering activity', as the statute defines such activity, and must establish that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 788 (1st Cir. 1990) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239). "Racketeering activity" encompasses mail fraud under 18 U.S.C.A. § 1341 (West 2021), wire fraud under 18 U.S.C.A. § 1343 (West 2021), and money laundering under 18 U.S.C.A. § 1956 (West 2021). 18 U.S.C.A. § 1961(1). A plaintiff asserting a § 1962(a) claim must further prove that he was "injured 'in his business or property by reason of' the defendant's violation." *Compagnie De Reassurance D'Ile de France v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995) (quoting 18 U.S.C.A. § 1964(c) (West 2021)).

The Plaintiffs' theory is that Eric Holsapple, Wayne Lewis, and Russell Oakes conspired with the Lalumiere Defendants[4] to reinvest the income from a pattern of racketeering activity back into the enterprise.  The alleged racketeering activity was money laundering and mail and wire fraud.  According to the Complaint, those predicate crimes "return[ed] the funds used by the Enterprise."  ECF No. 11 ¶ 128.  Most specifically, the Complaint states, "The Enterprise purchased [three properties, including 33 Sanborn Lane, that the Defendants allegedly used to perpetrate additional schemes] . . . with the proceeds from the fraud in the transaction for 75 Queen Street and generally comingled the proceeds throughout the Enterprise."  ECF No. 11 ¶ 180.

Eric Holsapple, Wayne Lewis, and Russell Oakes assert two reasons why the RICO conspiracy claims should be dismissed.  First, they argue that the Plaintiffs failed to allege facts sufficient to support common law fraud, which goes to whether the income at issue really came from a pattern of racketeering activity.  This argument is misplaced, however, because the alleged predicate acts of racketeering activity are mail and wire fraud and money laundering, not common law fraud.  Nowhere in Eric Holsapple, Wayne Lewis, or Russell Oakes's briefs do they argue that the Complaint fails to allege predicate acts of mail and wire fraud or money laundering.

Second, Eric Holsapple, Wayne Lewis, and Russell Oakes argue that the RICO claims fail as a matter of law because the Complaint does not include any allegations

---

[4] This term refers to Defendant Scott Lalumiere and the corporate entities he controlled, including Defendants Birch Point and MECAP.

that they participated in the predicate acts of racketeering. That argument misstates the applicable standard. Plaintiffs have alleged a § 1962(d) conspiracy to violate § 1962(a). So, they must allege that Eric Holsapple, Wayne Lewis, and Russell Oakes knowingly agreed to further the investment, directly or indirectly, of income from a pattern of racketeering activity into the enterprise. *See* 18 U.S.C.A. § 1962(a), (d). The Complaint's failure to allege that Eric Holsapple, Wayne Lewis, and Russell Oakes agreed to further the underlying pattern of racketeering activity that generated the racketeering income is of no consequence. Those allegations would support a § 1962(d) claim that defendants conspired to violate § 1962(c), which prohibits "participat[ing] . . . in the conduct of [an] enterprise's affairs through a pattern of racketeering activity." Indeed, actual participation in an enterprise through a pattern of racketing activity would be required only for a pure § 1962(c) claim.

Because Eric Holsapple, Wayne Lewis, and Russell Oakes have failed to identify a reason why the RICO claims should not proceed against them, I deny their motions to dismiss as to the RICO counts.[5]

## B.   TILA, MCCC, Fraud, and Contract Claims (Counts V, VI, VIII, IX and X)

The Complaint asserts four claims premised on Lalumiere's alleged misrepresentations that Douglas and Fowler would be able to purchase the Queen Street and Allen Avenue properties: TILA and MCCC violations, fraud, and breach

---

[5] Unlike several of the other Defendants, Eric Holsapple, Wayne Lewis, and Russell Oakes do not argue that the RICO claims fail to adequately allege an "investment injury" under § 1962(a). *See Compagnie De Reassurance*, 57 F.3d at 91.

of contract.  The Complaint also contains a claim for breach of contract for the 33 Sanborn Lane property.  But the Complaint does not assert that the Holsapple Defendants, Wayne Lewis, BLR Capital, and Russell Oakes were parties to the Queen Street, Allen Avenue, or Sanborn Lane agreements.  The Queen Street contract was between MECAP and Douglas, the Allen Avenue contract was between Birch Point and Fowler, and the Sanborn Lane contract was between Lalumiere and Fowler.  Moreover, the Complaint does not contain any allegedly fraudulent statements made to the Plaintiffs by the Holsapple Defendants, Wayne Lewis, BLR Capital, or Russell Oakes.

In their responses to the motions to dismiss, the Plaintiffs predicate these five claims on the theory that the Lalumiere Defendants (a group that includes MECAP and Birch Point) acted as agents of the Holsapple Defendants, Wayne Lewis, and BLR Capital when the Lalumiere Defendants entered into the contracts with Douglas and Fowler.  And, responding to Russell Oakes's Motion to Dismiss, the Plaintiffs contend that Russell Oakes was an agent of Lalumiere and Eric Holsapple.  The Complaint, however, does not mention "agency" or any "agency relationship," and, for reasons I will explain, it fails to allege facts that plausibly demonstrate the existence of an agency relationship.

"When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third

party agree otherwise." *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 10, 983 A.2d 382, 386-87 (quoting Restatement (Third) of Agency § 6.01 (2006)).

"An express actual agency is 'that authority which is directly granted to or conferred upon the agent in express terms by the principal.'" *Higgins v. Penobscot Cnty. Sheriff's Dep't*, No. CIV 04157BW, 2005 WL 1961369, at *2 (D. Me. Aug. 15, 2005) (alterations omitted) (quoting *Libby v. Concord Gen. Mut. Ins. Co.*, 452 A.2d 979, 981 (Me. 1982)). "An implied actual agency is an 'authority circumstantially proven from the facts and circumstances attending the transaction in question.'" *Id.* (quoting *Libby*, 452 A.2d at 982). "An implied [actual] agency may be inferred from 'the words used, from customs and from the relations of the parties.'" *Id.* (quoting *Libby*, 452 A.2d at 982). An apparent agency "is created only when a third party subjectively believes, by the conduct or words of the purported principal, that another party is an agent." *Id.* (citing *Libby*, 452 A.2d at 982-83).

Taking the last possibility first, the Plaintiffs do not suggest that the Holsapple Defendants, Wayne Lewis, BLR Capital, or Russell Oakes did anything that led the Plaintiffs to believe that the Lalumiere Defendants were their agents when the Plaintiffs contracted with the Lalumiere Defendants. Nor is there any assertion that the Lalumiere Defendants had express authorization from the Holsapple Defendants, Wayne Lewis, BLR Capital, or Russell Oakes to enter into the allegedly fraudulent transactions with the Plaintiffs. While the Complaint does allege Eric Holsapple and Wayne Lewis authorized Lalumiere's purchase of the Queen Street property, there is

no allegation that they authorized Lalumiere or MECAP to enter into MECAP's agreement with Douglas to lease and potentially sell the property to Douglas.

Thus, the question presented is whether the Complaint alleges facts that, if proven, could establish the existence of an implied actual agency. Nothing in the Complaint suggests that the Lalumiere Defendants ever acted on behalf of TTJR, BLR Capital, or Russell Oakes. On May 15, 2015, Lalumiere, acting through MECAP, entered into the allegedly fraudulent agreement with Douglas regarding the Queen Street property. On March 24, 2017, Lalumiere, acting through Birch Point, entered into the allegedly fraudulent lease buy-back agreement with Fowler regarding the Allen Avenue property. And in May 2016, Lalumiere, in his personal capacity, entered into an agreement with Fowler regarding 33 Sanborn Lane. There is no implication that Lalumiere, MECAP, or Birch Point were agents of TTJR, BLR Capital, or Russell Oakes. Indeed, for Russell Oakes, the Plaintiffs argue exactly the opposite: that Russell Oakes was an agent of Lalumiere.

It is a closer question whether Eric Holsapple, Wayne Lewis, and LH Housing were the implied actual agents of the Lalumiere Defendants. The Complaint states that LH Housing was formed between Eric Holsapple and Lalumiere in December 2012. Wayne Lewis "managed" LH Housing, and Eric Holsapple "direct[ed]" Lalumiere through Wayne Lewis. ECF No. 11 ¶¶ 39, 44. When LH Housing mortgaged the Queen Street property to MSB, Lalumiere signed the financing documents on behalf of LH Housing, as its manager.

That agency theory fails, however, because the Complaint does not plausibly allege that the Lalumiere Defendants were acting on behalf of LH Housing, Eric Holsapple, or Wayne Lewis when they entered into the fraudulent agreements. The Complaint's allegations are sufficient to establish that Lalumiere had some authority to act for LH Housing. But the Complaint does not contain additional allegations that plausibly tie Lalumiere's allegedly unlawful conduct—which was through MECAP (Queen Street), through Birch Point (Allen Avenue), and in his personal capacity (Sanborn Lane)—to his role at LH Housing.

Absent the plausible allegation of facts that would establish an agency relationship, the TILA, MCCC, fraud, and breach of contract claims fail because the Holsapple Defendants, Wayne Lewis, BLR Capital, and Russell Oakes were not parties to the agreements at issue and are not alleged to have made any fraudulent statements.[6]

## C.    MUTPA Claim (Count XIII)

The Complaint asserts that Eric Holsapple and Wayne Lewis violated MUTPA, 5 Me. Rev. Stat. tit. 5, §§ 205-214 (West 2021). The allegations stem from the Sanborn Lane incident, in which Fowler rented the Sanborn Lane property from Lalumiere until March 2020 when Jones denied Fowler access and removed his personal

---

[6] In passing, the Plaintiffs argue that even if the Holsapple Defendants, Wayne Lewis, and BLR Capital are not liable as agents, Maine law would allow piercing the corporate veil. But the Complaint does not contain nonconclusory allegations that these defendants "abused the privilege of a separate corporate identity" and "an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Town of Lebanon v. E. Lebanon Auto Sales LLC*, 2011 ME 78, ¶ 8, 25 A.3d 950, 953 (quoting *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶¶ 6-7, 720 A.2d 568, 571). Moreover, the Complaint does not allege that these particular defendants are officers or shareholders of the corporations that contracted with the Plaintiffs.

property.  Specifically, the Complaint alleges that, pursuant to Me. Rev. Stat. tit. 14, § 6030 (West 2021), "[i]t is an unfair and deceptive trade practice in violation of [Me. Rev. Stat. tit. 5, § 207] for a landlord to require a tenant to enter into a lease or tenancy at will agreement for a dwelling unit . . . in which the tenant agrees to a provision that has the effect of waiving a tenant right" under various tenant-protection laws.

As a preliminary matter, there are no nonconclusory allegations connecting Eric Holsapple or Wayne Lewis to the Sanborn Lane incident.  As such, Fowler does not have a claim against them under Me. Rev. Stat. tit. 14, § 6030 because they were not his landlords and they did not enter into a lease or tenancy-at-will agreement with him.  Furthermore, in the Plaintiffs' responses to the Holsapple Defendants' and Wayne Lewis's motions to dismiss, the Plaintiffs did not address the Holsapple Defendants' or Wayne Lewis's request for dismissal of the MUTPA claim, and therefore I treat the claim as abandoned.  *See ITI Holdings, Inc. v. Odom*, 468 F.3d 17, 18 (1st Cir. 2006) (affirming dismissal based on failure to oppose motion to dismiss under Rule 12(b)(6)).  For these reasons, this claim against Eric Holsapple and Wayne Lewis is properly dismissed.

Nonetheless, even if Eric Holsapple and Wayne Lewis were included, the claim still fails for the following reason: MUTPA provides "a private right of action to consumers who are injured as a result of the use of unfair or deceptive business practices."  *McGahey v. Fed. Nat'l Mortg. Ass'n*, 266 F. Supp. 3d 421, 435 (D. Me. 2017).  By its terms, however, MUTPA applies only to transactions that are made

"primarily for personal, family or household purposes."  Me. Rev. Stat. tit. 5, § 213(1) (West 2021); *see C-B Kenworth, Inc. v. Gen. Motors Corp.*, 706 F. Supp. 952, 957 (D. Me. 1988) ("[MUTPA] creates a private right of action *only* for those who have purchased goods, services or property 'primarily for personal, family or household purposes.'" (quoting Me. Rev. Stat. tit. 5, § 213(1)); *Seacoast RV, Inc. v. Sawdran, LLC*, 2013 ME 6, ¶ 5, 58 A.3d 1135, 1137 (concluding the plaintiff did not purchase a car "primarily for personal purposes, and, therefore, cannot bring a private cause of action pursuant to the [M]UTPA").  The Complaint alleges that Fowler "rented out the house portion" of the Sanborn Lane property and "used the garage portion for his business."  ECF No. 11 ¶ 119.  There is no allegation that Fowler used the property for personal, family, or household purposes.

## D.   Unjust Enrichment Claim (Count XVII)

The Complaint asserts a claim for unjust enrichment against the Holsapple Defendants, Wayne Lewis, BLR Capital, and Russell Oakes based on the alleged "extraction of equity from the homes at 661 Allen Avenue and 57 Queen Street."  ECF No. 11 ¶ 255.

A claim for unjust enrichment requires proof that "(1) [the complaining party] conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value."  *Knope v. Green Tree Servicing, LLC*, 2017 ME 95, ¶ 12,

161 A.3d 696, 699 (quoting *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712).

The Plaintiffs' unjust enrichment claim must be dismissed because the Complaint fails to allege that a benefit was conferred on the Holsapple Defendants, Wayne Lewis, BLR Capital, or Russell Oakes. Although it is undisputed that Douglas and Fowler suffered harm through the frustration of their rights to purchase the Queen Street and Allen Avenue properties, the Complaint fails to assert facts that would plausibly establish that a resulting benefit was conferred on the Holsapple Defendants, Wayne Lewis, BLR Capital, or Russell Oakes. In sum, the Complaint fails to plead facts which, if proven, would establish a right of recovery based on unjust enrichment.

## E.    Motions for Limited Discovery

A dismissal is not automatic once the lower court determines that Rule 9(b) has not been satisfied. *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987). Instead, after the Rule 9(b) determination, a "court should make a *second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint." *Id*. The plaintiff may have a right to limited discovery, to the extent necessary to cure a Rule 9(b) defect about "the details of just when and where the mail or wires were used." *Id*. A court also has "some latitude" to allow discovery "where a plausible claim may be indicated 'based on what is known,' at least where . . . 'some of the information needed may be in the control of the defendants.'"

*Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (alteration omitted) (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)).

Here, the Plaintiffs seek limited discovery from the Holsapple Defendants, Wayne Lewis, BLR Capital, and Russell Oakes to reveal "communications between [the Holsapple Defendants, Wayne Lewis, BLR Capital, and Russell Oakes] and the other defendants" who were allegedly involved in the RICO conspiracy. ECF No. 107 at 3; ECF No. 136 at 3; ECF No. 202 at 3; ECF No. 228 at 3. Under the Plaintiffs' theory, the Holsapple Defendants, Wayne Lewis, BLR Capital, and Russell Oakes had exclusive access to communications that are necessary to prove the elements of fraud.

Because I deny the Holsapple Defendants', Wayne Lewis's, and Russell Oakes's motions to dismiss the RICO counts, the Plaintiffs are not entitled to limited discovery from them. As for BLR Capital, BLR Capital is not named in any RICO count, and thus the Plaintiffs have failed to demonstrate a need for discovery to ascertain BLR Capital's participation in the RICO conspiracy. The motions for limited discovery as to the Holsapple Defendants, Wayne Lewis, BLR Capital, and Russell Oakes are denied, and the Plaintiffs' objection to the Magistrate Judge's Order (ECF No. 156), deferring action on the Motion for Limited Discovery until the Court assessed the motions to dismiss is denied as moot.

## III. CONCLUSION

For the reasons stated above, it is **ORDERED** that Eric Holsapple, TTJR, LLC, and LH Housing, LLC's Motion to Dismiss (ECF No. 65) and Wayne Lewis's

Motion to Dismiss (ECF No. 110) are **GRANTED IN PART** as to Counts V, VI, VIII, IX, X, XIII, and XVII and **DENIED IN PART** as to Counts I, II, III, and IV.  Russell Oakes's Motion to Dismiss (ECF No. 223) is **GRANTED IN PART** as to Counts VI and XVII and **DENIED IN PART** as to Count IV.  BLR Capital, LLC's Motion to Dismiss (ECF No. 197) is **GRANTED**.  The Amended Complaint (ECF No. 11) as to TTJR, LLC, LH Housing, LLC, and BLR Capital, LLC is **DISMISSED**.  The Plaintiffs' motions for limited discovery (ECF Nos. 107, 136, 202, 228) are **DENIED**, and the Plaintiffs' Objection to the Magistrate Judge's Order on Limited Discovery (ECF No. 162) is **DENIED AS MOOT** as to the Holsapple Defendants and Wayne Lewis.

      **SO ORDERED.**

      **Dated:  September 29, 2021**

                                **_/s/ JON D. LEVY_**
                                **CHIEF U.S. DISTRICT JUDGE**