## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

JOEL DOUGLAS, et al.,       )
                                 )
     Plaintiffs,         )
                                 )
           v.              )    2:20-cv-00227-JDL
                                 )
SCOTT LALUMIERE, et al.,     )
                                 )
     Defendants.       )

**ORDER ON MACHIAS SAVINGS BANK'S MOTION TO DISMISS**

Joel Douglas, Steven Fowler, and James Lewis (collectively, "Plaintiffs") bring this action against Scott Lalumiere and twenty-five other defendants (collectively, "Defendants"), asserting seventeen claims arising out of an alleged scheme to defraud the Plaintiffs and obtain control or ownership of their real estate properties for the purpose of borrowing against the properties' equity.  In total, the Defendants have filed thirteen motions to dismiss the First Amended Complaint (the "Complaint") (ECF No. 11) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  This order addresses Machias Savings Bank's ("MSB") motion to dismiss the claims asserted against it under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961-1968 (West

---

[1] The following defendants have filed motions to dismiss: Androscoggin Savings Bank (ECF No. 37); Camden National Bank (ECF No. 61); TTJR, LLC, LH Housing, LLC, and Eric Holsapple (ECF No. 65); LOSU, LLC and David Hirshon (ECF No. 70); Bangor Savings Bank and Robert Burgess (ECF No. 98); Wayne Lewis (ECF No. 110); Machias Savings Bank (ECF No. 111); Coastal Realty Capital, LLC, Michael Lyden, and Shawn Lyden (ECF No. 118); Andre Bellucci (ECF No. 147); BLR Capital, LLC (ECF No. 197); F.O. Bailey Real Estate, LLC and David Jones (ECF No. 203); Russell Oakes (ECF No. 223); and David Clarke (ECF No. 225).  Only Defendants Scott Lalumiere, MECAP, LLC, and Birch Point Storage, LLC have not filed motions to dismiss.

2021), federal and state consumer lending laws, and Maine contract law (ECF No. 111). For the reasons that follow, I grant MSB's Motion to Dismiss, deny the Plaintiffs' Motion for Limited Discovery,[2] and deny as moot the Plaintiffs' objection to the Magistrate Judge's order denying the Plaintiffs' Motion for Limited Discovery.

## I. BACKGROUND

The Complaint alleges the following facts, which I treat as true for purposes of ruling on this Motion to Dismiss.

The Complaint asserts that Scott Lalumiere and other defendants engaged in three distinct but intertwined schemes to defraud the Plaintiffs. In the first scheme, the Complaint alleges that Scott Lalumiere, funded by various banks and private lenders, fraudulently induced several vulnerable individuals, including Plaintiffs Steven Fowler and Joel Douglas, who lacked access to conventional credit, to enter into unfavorable lease/buy-back agreements. Under the terms of the agreements, the title of the victim's property would be transferred to a corporate entity controlled by Lalumiere with the victim, as the lessee, retaining a purchase option. The Lalumiere-controlled entity would subsequently mortgage the property to banks and private lenders, and, when the entity defaulted on its loan, the mortgagees foreclosed on the property, frustrating the victim's option to purchase.

---

[2] I recognize that Magistrate Judge John C. Nivison denied the Motion for Limited Discovery on January 21, 2021 (ECF No. 156). His order expressly recognized, however, that the Plaintiffs' request for limited discovery should be revisited as part of the Court's assessment of the Motion to Dismiss. Accordingly, I have treated the earlier order denying the motion as a deferral of action on the motion. Further, I have considered the merits of the motion and, for the reasons explained herein, I deny the motion.

In the second alleged scheme, Fowler entered into an agreement with Lalumiere whereby he would provide labor and materials at a discounted rate to renovate certain properties controlled by Lalumiere, with the understanding that Fowler could purchase the properties back upon the completion of the renovations. However, Lalumiere frustrated Fowler's right to purchase the properties by defaulting on the mortgages, causing the mortgagees to foreclose on the properties.

In the third alleged scheme, several of the Defendants agreed to pay-off and discharge Plaintiff James Lewis's defaulted mortgage and to lend him money to make improvements to his property in exchange for him deeding the property to a corporation and making certain payments. After the title was transferred, they refused to loan him the money and subsequently foreclosed on the property.

The Plaintiffs' claims against MSB involve the first scheme noted above in relation to one property: 75 Queen Street, Gorham, Maine. On May 19, 2015, MECAP, LLC—a Lalumiere-controlled entity—entered into an agreement with Douglas, whereby MECAP would lease the Queen Street property to Douglas for one year, subject to a purchase and sale agreement that would close at the end of the lease, on June 30, 2016. Per the agreement, Douglas had a contractual right to purchase the property for $275,000 in exchange for payments of $2,500 due within three business days and $30,000 due before closing. That same day, other defendants authorized Lalumiere to purchase the Queen Street property. On June 24, 2015, Lalumiere did purchase the property from an unspecified seller "on . . . behalf" of Douglas. ECF No. 11 ¶ 66. Lalumiere deeded it to MECAP in July 2015, and MECAP

transferred title to LH Housing, LLC in April 2016, an entity managed by Wayne Lewis, another defendant, who worked with Lalumiere.  Lalumiere, acting through LH Housing, then encumbered the Queen Street property with a $256,500 mortgage from MSB.  MSB's only involvement in this scheme is extending to LH Housing a commercial loan, secured by a $256,500 mortgage on the Queen Street property.  The Complaint alleges that the $32,500 deposit paid by Douglas to enter into the agreement, and the loan from MSB to LH Housing, provided the funds to purchase three other properties in order to perpetuate the fraudulent behavior.

The Plaintiffs filed a Motion for Limited Discovery from MSB in connection with their response to the Motion to Dismiss.  On January 21, 2021, Magistrate Judge John C. Nivison entered an order denying the Plaintiffs' limited discovery request without prejudice, stating that "[t]he Court will consider Plaintiffs' [discovery] requests as part of the Court's assessment of each defendant's motion to dismiss." ECF No. 156 at 3.  On January 28, 2021, the Plaintiffs filed a timely objection to the Magistrate Judge's order (ECF No. 162).  Below, I address the Plaintiffs' Motion for Limited Discovery and the Plaintiffs' objection to Judge Nivison's order as it relates to MSB's Motion to Dismiss.

## II.  LEGAL ANALYSIS

In reviewing a motion to dismiss for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72

(1st Cir. 2011)). To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). Additionally, a court may consider inferences "gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

To assess the complaint's adequacy, courts apply a "two-pronged approach," *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011): First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). To determine the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although legal conclusory statements may "provide the framework of a complaint, they must be supported by factual allegations." *Id.* The court must determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.*

In addition, the Plaintiffs' fraud-related claims are subject to Federal Rule of Civil Procedure 9(b), which requires that a complaint "state with particularity the circumstances constituting fraud." To satisfy this requirement, the complaint must

set forth the "time, place and content of an alleged false representation." *Howell v. Advantage Payroll Servs., Inc.*, No. 2:16-cv-438-NT, 2017 WL 782881, at *6 (D. Me. Feb. 28, 2017) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)). The Plaintiffs' RICO claims are based in part on the predicate acts of mail and wire fraud, which "must satisfy the particularity requirements of Rule 9(b)." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).

The Plaintiffs' claims against MSB cluster into three categories: (A) the RICO claims; (B) the Truth in Lending Act ("TILA"), Maine Consumer Credit Code ("MCCC"), and contract claims; and (C) the unjust enrichment claim. The RICO claims include multiple counts against the alleged enterprise operating the conspiracy. The TILA, MCCC, and contract claims all stem from Lalumiere's representations to the Plaintiffs that they did have an option to purchase certain properties. The unjust enrichment claim stands for itself. I address each category in turn.

## A.    RICO Claims (Counts III and IV)

The Complaint asserts that MSB participated in a RICO conspiracy under 18 U.S.C.A. § 1962(d) (West 2021). "To prove a RICO conspiracy offense, the [plaintiff] must show that 'the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators "to further the endeavor, which, if completed, would satisfy all the elements of a substantive RICO offense."'" *United States v. Velazquez-Fontanez*, 6 F.4th 205, 212 (1st Cir. 2021) (alterations omitted) (quoting *United States v. Rodríguez-Torres*, 939 F.3d 16, 23 (1st Cir. 2019)). It is not necessary to "prove

that the defendant or his co-conspirators committed any overt act in furtherance of the conspiracy." *United States v. Leoner-Aguirre*, 939 F.3d 310, 317 (1st Cir. 2019).

Here, the Complaint alleges that MSB conspired to violate 18 U.S.C.A. § 1962(a), which makes it unlawful to use or invest income derived from a pattern of racketeering activity under certain circumstances:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in . . . interstate or foreign commerce.

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4) (West 2021). "To establish a pattern of racketeering, a plaintiff must show at least two predicate acts of 'racketeering activity', as the statute defines such activity, and must establish that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 788 (1st Cir. 1990) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239). "Racketeering activity" encompasses mail fraud under 18 U.S.C.A. § 1341 (West 2021), wire fraud under 18 U.S.C.A. § 1343 (West 2021), and money laundering under 18 U.S.C.A. § 1956 (West 2021). 18 U.S.C.A. § 1961(1). A plaintiff asserting a § 1962(a) claim must further prove that he was "injured 'in his business or property by reason of' the defendant's violation." *Compagnie De Reassurance D'Ile de France v. New England*

*Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995) (quoting 18 U.S.C.A. § 1964(c) (West 2021)).

The Plaintiffs' theory is that MSB conspired with the Lalumiere Defendants[3] to reinvest the income from a pattern of racketeering activity back into the enterprise. The alleged racketeering activity was money laundering and mail and wire fraud. MSB argues that the Complaint fails to plausibly allege that MSB knowingly joined the overall conspiracy or that its actions resulted in an investment injury independent from the underlying predicate acts.[4]  I agree.

### 1.    Knowingly Conspired

The Plaintiffs argue that the Complaint alleges facts that "allow the inference" that MSB "knew the extent of the enterprise[']s racketeering activity when it agreed to provide funds to the enterprise through LH Housing LLC."  ECF No. 142 at 22. The Complaint asserts that MSB had access to the purchase agreement and "would have had to see the terms of the lease" and therefore should have known that the lease was fraudulent.  ECF No. 11 at ¶ 165.  The Complaint's generalized allegations regarding MSB's knowledge are not sufficient to establish the required element of knowledge.

The Plaintiffs rely on the Complaint's allegation that, because MSB had access to the Queen Street purchase agreement and had the opportunity to review it before

---

[3] This term refers to Defendant Scott Lalumiere and the corporate entities he controlled: Defendants Birch Point Storage, LLC and MECAP, LLC.

[4] As I will explain, the Complaint fails to plausibly allege that MSB knowingly joined Lalumiere's conspiracy or that the Plaintiffs suffered a distinct investment injury.  For those reasons alone, the Plaintiffs' RICO claims against MSB fail.  Therefore, I do not address MSB's additional argument that the Complaint fails to sufficiently plead a plausible pattern of racketeering activity.

making the loan, it should have known that Lalumiere had the intention to defraud Douglas and not honor the agreement.  However, the Complaint fails to point to any of the specific terms of the lease arrangement that, without more, would have put MSB on notice that Lalumiere intended to violate the agreement's terms.  The allegations thus suggest nothing more than a bank engaged in arm's-length financing in the normal course of business.  *See Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991) ("Bankers do not become racketeers by acting like bankers").  The Complaint's conclusory allegations to the contrary are not enough to survive MSB's Motion to Dismiss.

Accordingly, the Complaint fails to allege facts that, if proven, would demonstrate that MSB knowingly joined the conspiracy.

### 2.    Investment Injury

"[T]o have a private cause of action, a plaintiff asserting a civil RICO conspiracy claim must show 'injur[y] in his business or property by reason of a violation of Section 1962.'"  *Veilleux v. Elec. Maine, LLC*, No. 1:16-cv-571-NT, 2017 WL 5490838, at *8 (D. Me. Nov. 15, 2017) (quoting 18 U.S.C. § 1964(c)).  In the context of § 1962(a), this requirement is referred to as the "investment use rule," whereby "many courts have concluded that the mere reinvestment of racketeering proceeds in a corporate enterprise with the result that the enterprise continues to engage in the predicate acts of racketeering[] is insufficient to give rise to a 'use or investment injury' that is distinct from the harm caused by the predicate acts."  *MyFreeMedicine.com, LLC v. Alpine Investors*, 739 F. Supp. 2d 8, 20 n.10 (D. Me.

2010).  "[A] plaintiff cannot comply with the 'investment use rule' simply by 'repeating the crux of [his or her] allegations in regard to the pattern of racketeering.'"  *Id.* (citations omitted).  "[A] plaintiff must show that his or her injury was caused by the defendant's use or investment of racketeering proceeds," distinct from the injury caused by the predicate acts.  *Id.* (citing *Compagnie De Reassurance*, 57 F.3d at 91).

With respect to MSB, the Complaint alleges that that the proceeds from the Queen Street fraud were used to purchase other properties involved in the alleged racketeering scheme.  The Complaint asserts that the money laundering cost the Plaintiffs "more than $1,000,000.00" in damages.  ECF No. 11 at ¶ 190.

The Complaint alleges facts demonstrating that Douglas was harmed.  However, the Complaint fails to identify an investment injury distinct from the harm caused by the predicate fraud.  The Complaint alleges that "proceeds from the fraud were used to purchase additional real estate for the Enterprise and were made to appear legitimate through those other real estate transactions."  ECF No. 11 at ¶ 91.  Although the Complaint asserts that the proceeds were reinvested in the enterprise and furthered the alleged fraud, these allegations do not satisfy the injury requirement.  Even if one accepts the Complaint's theory that the Defendants' transactions were fraudulent, the Complaint fails to allege a plausible investment injury distinct from the loss of the property.  Without a specifically alleged non-conclusory investment injury, the Complaint fails to adequately plead an injury that is separate from the predicate harm.

Without pleading facts that could establish the required element of an investment injury, the Plaintiffs have failed to allege any substantive § 1962(a) claim, and therefore the § 1962(d) conspiracy claims must be dismissed. *See Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000) ("[I]f the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails."); *see also MyFreeMedicine.com*, 739 F. Supp. 2d at 30-31 (dismissing § 1962(d) conspiracy count because the complaint failed to allege a substantive RICO violation).

In sum, with regards to RICO, the Complaint fails to allege that MSB knowingly joined the overall conspiracy and also fails to allege an investment injury distinct from the predicate acts. Therefore, the RICO claims against MSB are dismissed.

## B.    TILA, MCCC, and Contract Claims (Counts V, IX)

The Complaint asserts two claims against MSB based on Lalumiere's misrepresentation that Douglas would be able to purchase the Queen Street property: TILA and MCCC violations and breach of contract. Although "agency" or an "agency relationship" are not explicitly mentioned in the Complaint, the Plaintiffs predicate these two claims against MSB on the theory that the Lalumiere Defendants acted as agents of MSB when they entered into the contracts with Douglas. Because MSB did not make any representations to Douglas and did not enter into any agreements with Douglas, and because the Complaint fails to allege facts that plausibly demonstrate

the existence of an agency relationship between the Lalumiere Defendants and MSB, both of these counts must be dismissed.

"When an agent acting with actual or apparent authority makes a contract on behalf of a disclosed principal, (1) the principal and the third party are parties to the contract; and (2) the agent is not a party to the contract unless the agent and third party agree otherwise." *Fitzgerald v. Hutchins*, 2009 ME 115, ¶ 10, 983 A.2d 382, 386-87 (quoting Restatement (Third) of Agency § 6.01 (2006)).

"An express actual agency is 'that authority which is directly granted to or conferred upon the agent in express terms by the principal.'" *Higgins v. Penobscot Cnty. Sheriff's Dep't*, No. CIV 04157BW, 2005 WL 1961369, at *2 (D. Me. Aug. 15, 2005) (alterations omitted) (quoting *Libby v. Concord Gen. Mut. Ins. Co.*, 452 A.2d 979, 981 (Me. 1982)). "An implied actual agency is an 'authority circumstantially proven from the facts and circumstances attending the transaction in question.'" *Id.* (quoting *Libby*, 452 A.2d at 982). "An implied [actual] agency may be inferred from 'the words used, from customs and from the relations of the parties.'" *Id.* (quoting *Libby*, 452 A.2d at 982). An apparent agency "is created only when a third party subjectively believes, by the conduct or words of the purported principal, that another party is an agent." *Id.* (citing *Libby*, 452 A.2d at 982-83).

Here, the Complaint contains no allegations suggesting that MSB did anything that led the Plaintiffs to believe that the Lalumiere Defendants were MSB's agents when the Plaintiffs contracted with the Lalumiere Defendants, or that the Lalumiere Defendants had express authorization from MSB to enter the allegedly fraudulent

agreements with the Plaintiffs. Thus, the question presented is whether the Complaint alleges facts that, if proven, could establish the existence of an implied actual agency.

The Complaint alleges that MSB had a "special relationship" with Lalumiere "that allowed [it] to lend money to the corporate entities without personal guarantees and without regard to debt to income ratios of the specific corporate entity holding title." ECF No. 11 ¶ 120.  Specifically, MSB extended a commercial loan secured by a $256,500 mortgage on the Queen Street property.  However, the mere fact that MSB provided a loan to Lalumiere does not plausibly suggest that MSB implicitly authorized Lalumiere to act on its behalf.  Without a plausible allegation of an agency relationship, both counts premised on this theory must be dismissed.

First, the Plaintiffs premise the TILA, 15 U.S.C.A. § 1601, et seq. (West 2021), and MCCC, Me. Rev. Stat. Ann. tit. 9-A, §§ 8-505, 9-401 (West 2021), violations on the alleged misrepresentations and omissions made in connection with the Queen Street transaction.  As a threshold matter, while the Complaint states that Count V is based in part on TILA, none of the allegations of Count V refer to TILA.  Regardless, the claim fails because MSB was not a party to that transaction.  "A claim of misrepresentation under the Maine Consumer Credit Code requires a showing that a creditor or person acting for him induced a consumer to enter a credit transaction by misrepresenting a material fact with respect to the terms and conditions of the extension of credit." *McGahey v. Fed. Nat'l Mortg. Ass'n*, 266 F. Supp. 3d 421, 442 (D. Me. 2017) (citing Me. Rev. Stat. Ann. tit. 9-A, § 9-401).  Without an adequate agency

relationship, this claim fails because the Complaint fails to plead facts which, if proven, would establish that Lalumiere was acting in an agency capacity with MSB when he made the alleged misrepresentations and omissions.[5]

Second, the breach of contract claim for the Queen Street property fails as to MSB because MSB was not a party to the purchase agreement between Douglas and MECAP. Without a plausible allegation of a principal-agent relationship, the Complaint cannot sustain a claim against a party not involved in the agreements at issue.

## C.   Unjust Enrichment Claim (Count XVII)

The Complaint asserts a claim for unjust enrichment against MSB based on the alleged "extraction of equity from the homes at 661 Allen Avenue and 57 Queen Street." ECF No. 11 ¶ 255.

A claim for unjust enrichment requires proof that "(1) [the complaining party] conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Knope v. Green Tree Servicing, LLC*, 2017 ME 95, ¶ 12, 161 A.3d 696, 699 (quoting *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712).

---

[5]  MSB also argues that TILA and MCCC do not apply to commercial transactions or extensions of credit primarily for business or commercial purposes. Because the Complaint fails to establish that Lalumiere was operating as an agent of MSB, I do not reach this additional argument.

But the Complaint does not allege that a benefit was conferred on MSB. Although it is undisputed that Douglas and Fowler suffered harm through the frustration of their rights to purchase the Queen Street and Allen Avenue properties, the Complaint fails to assert facts that would plausibly establish that a resulting benefit was conferred on MSB.  There cannot be an unjust enrichment without a "benefit conferred."

In sum, the Complaint fails to plead facts which, if proven, would establish a right of recovery based on unjust enrichment.

## D.      Motion for Limited Discovery

A dismissal is not automatic once the lower court determines that Rule 9(b) has not been satisfied.  *New England Data Servs., Inc. v. Becher*, 829 F.2d 286, 290 (1st Cir. 1987).  Instead, after the Rule 9(b) determination, a "court should make a *second* determination as to whether the claim as presented warrants the allowance of discovery and if so, thereafter provide an opportunity to amend the defective complaint."  *Id.*  The plaintiff may have a right to limited discovery, to the extent necessary to cure a Rule 9(b) defect about "the details of just when and where the mail or wires were used."  *Id.*  A court also has "some latitude" to allow discovery "where a plausible claim may be indicated 'based on what is known,' at least where . . . 'some of the information needed may be in the control of the defendants.'" *Menard v. CSX Transp., Inc.*, 698 F.3d 40, 45 (1st Cir. 2012) (alteration omitted) (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)).

Here, the Plaintiffs seek limited discovery from MSB to reveal "communications between [MSB] and the other defendants" who were allegedly involved in the conspiracy. ECF No. 143 at 2. Under the Plaintiffs' theory, they believe that MSB had exclusive access to communications that are necessary to prove the elements of fraud.

The decisions in *Becher* and *Menard* establish two possible grounds for granting limited discovery. First, under *Menard*, where modest discovery may "provide the missing link" to satisfy the Rule 12(b)(6) plausibility standard, the court may allow limited discovery "at least where . . . 'some of the information needed may be in the control of the defendants.'" 698 F.3d at 45 (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)). Here, however, the Complaint is not lacking a "missing link." The Complaint does not plausibly suggest that MSB had information that would provide the "missing link" needed to remedy its deficiencies.

Second, as discussed in *Becher*, a court may allow discovery as to "the details of just when and where the mail or wires were used" in a "RICO mail and wire fraud case." 829 F.2d at 290; *see also Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Here, however, the Complaint already contains factual allegations as to how the scheme involved the use of interstate wires. There is no doubt that MSB uses interstate wires in the course of its regular business activity. Additional information as to how the conspiracy used the mail or wires would not cure the Complaint's failure to sufficiently allege that MSB knowingly joined the conspiracy.

Neither *Menard* nor *Becher* offers a basis to grant limited discovery for the Plaintiffs as against MSB.  Thus, the Motion for Limited Discovery as to MSB is denied, and the Plaintiffs' objection to the Magistrate Judge's Order (ECF No. 156) deferring action on the Motion for Limited Discovery until the Court assessed the motions to dismiss is denied as moot.

### III.  CONCLUSION

For the reasons stated above, it is **ORDERED** that Machias Savings Bank's Motion to Dismiss (ECF No. 111) is **GRANTED**.  The Amended Complaint (ECF No. 11) as to Machias Savings Bank is **DISMISSED**.  The Plaintiffs' Motion for Limited Discovery (ECF No. 143) is **DENIED** and the Plaintiffs' Objection to the Magistrate Judge's Order on Limited Discovery (ECF No. 162) is **DENIED AS MOOT** as to Machias Savings Bank.

**SO ORDERED.**

**Dated:  September 29, 2021**

_____/s/ **JON D. LEVY**_____
**CHIEF U.S. DISTRICT JUDGE**