## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| JOEL DOUGLAS, et al., | ) |
| | ) |
|    Plaintiffs, | ) |
| | ) |
|         v. | ) 2:20-cv-00227-JDL |
| | ) |
| SCOTT LALUMIERE, et al., | ) |
| | ) |
|    Defendants. | ) |

### ORDER ON F.O. BAILEY REAL ESTATE LLC AND DAVID JONES'S MOTION TO DISMISS

Joel Douglas, Steven Fowler, and James Lewis (collectively, "Plaintiffs") bring this action against Scott Lalumiere and 25 other defendants, asserting 17 claims arising out of an alleged scheme to defraud the Plaintiffs and obtain control or ownership of their real property for the purpose of borrowing against the properties' equity. I have granted or granted in part many of the defendants' motions to dismiss the amended complaint (the "Complaint") (ECF No. 11) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] This order addresses the motion to dismiss filed by F.O. Bailey Real Estate LLC ("F.O. Bailey") and David Jones (ECF No. 203) seeking the dismissal of the claims asserted against them under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961-1968 (West 2022), and Maine

---

[1] I granted motions to dismiss filed by Androscoggin Savings Bank (ECF No. 238); Bangor Savings Bank and Robert Burgess (ECF No. 239); Andre Bellucci (ECF No. 240); Camden National Bank (ECF No. 241); Coastal Realty Capital, LLC, Michael Lyden, and Shawn Lyden (ECF No. 242); David Hirshon and LOSU, LLC (ECF No. 243); BLR Capital, LLC (ECF No. 244); and Machias Savings Bank (ECF No. 245). I granted in part motions to dismiss filed by Eric Holsapple; TTJR, LLC; LH Housing, LLC; Wayne Lewis; and Russell Oakes (ECF No. 244). Another motion to dismiss (ECF No. 225), which I address separately, has been filed by David Clarke.

statutory and common law. For the reasons that follow, I grant in part and deny in part the motion to dismiss, and I also deny the Plaintiffs' Motion for Limited Discovery (ECF No. 215).[2]

## I. BACKGROUND

The Complaint alleges the following facts, which I treat as true for purposes of ruling on this motion to dismiss.

The Complaint asserts that Scott Lalumiere and other defendants engaged in three distinct but intertwined schemes to defraud the Plaintiffs. In the first scheme, the Complaint alleges that Lalumiere, funded by various banks and private lenders, fraudulently induced several vulnerable individuals, including Plaintiffs Steven Fowler and Joel Douglas, who lacked access to conventional credit, to enter into lease/buy-back agreements. Under the terms of the agreements, the title of the victim's real property would be transferred to a corporate entity controlled by Lalumiere with the victim, as the lessee, retaining a purchase option. The Lalumiere-controlled entity would subsequently mortgage the property to banks and private lenders, and, when the entity defaulted, the mortgagees foreclosed, frustrating the victim's option to purchase.

This first scheme fed into a second scheme when the defendants allegedly used the proceeds from the first scheme to purchase additional properties. Some or all of those additional properties were the subject of an agreement between Fowler and

---

[2] I recognize that Magistrate Judge John C. Nivison denied the Motion for Limited Discovery on May 20, 2021 (ECF No. 220). His order expressly recognized, however, that the Plaintiffs' request for limited discovery should be revisited as part of the Court's assessment of the motion to dismiss. Accordingly, I have treated the earlier order denying the motion as a deferral of action on the motion. Further, I have considered the merits of the motion and, for the reasons explained herein, I deny the motion.

2

Lalumiere whereby Fowler would provide labor and materials at a discounted rate to renovate the additional properties with the understanding that Fowler could purchase them upon the completion of the renovations for the payoff amounts on their bank-held mortgages. Another aspect of Fowler's agreement with Lalumiere was that Fowler would control the properties until he purchased them. The Complaint alleges that Fowler made payments for three years but has not received title to the properties; instead, banks foreclosed on them. Additionally, Fowler had been using the garage at one of the properties, 33 Sanborn Lane, for his business while renting out the house portion, until he was denied access and his personal property was removed and destroyed.

In the third alleged scheme, several of the defendants agreed to pay-off and discharge Plaintiff James Lewis's defaulted mortgage and to lend him money to make improvements to his property in exchange for him deeding the property to a corporation and making certain payments. After the title was transferred, certain defendants refused to loan him the money and subsequently foreclosed on the property.

The Complaint seeks to connect F.O. Bailey and Jones to an effort to help other defendants realize the profits of the first scheme, although it offers few details in support. The Plaintiffs state that Jones resides in Falmouth, Maine and owns F.O. Bailey, a Maine corporation. After other defendants used the proceeds of the first scheme to buy additional properties, they decided to launder those proceeds by selling the additional properties. Then, "[i]n November of 2019, [other defendants] informed David Jones of the problem with the 'leases'"—their allegedly "fraudulent" nature—

"and he agreed to market the properties for sale." ECF No. 11 ¶¶ 97, 179. Put differently, one or more unspecified defendants told Jones about the first scheme and then Jones agreed to market the properties that had been partially purchased with proceeds from the first scheme. The Complaint does not specify exactly which properties Jones agreed to market, which properties he actually marketed, or the results of that marketing.

The Complaint further alleges that Jones had a role in the second scheme; specifically, the events at 33 Sanborn Lane. Jones denied Fowler access to that property, which Fowler controlled per his agreement with Lalumiere. Although Fowler told Jones that Fowler's personal property was in the home and he wanted it back, Jones denied him access to the personal property, removed it, and caused it to be destroyed by disposing of it. Jones claimed to be acting under the authority of Defendant Bangor Savings Bank, which had provided a mortgage secured by the property and had begun to foreclose on it, although the bank denied that it had given Jones the full authority that he asserted.

Finally, the Complaint contains the conclusory allegation that F.O. Bailey and Jones "extraction [sic] of equity" from two homes from the first scheme in a way that caused unjust enrichment. ECF No. 11 ¶ 255.

The Plaintiffs have filed a Motion for Limited Discovery as to F.O. Bailey and Jones in connection with the Plaintiffs' response to the motion to dismiss. Magistrate Judge John C. Nivison entered an order on May 20, 2021, denying the Plaintiffs' limited discovery request without prejudice, stating that "[t]he Court will consider Plaintiffs' [discovery] request as part of the Court's assessment of Defendants'

4

pending motion to dismiss." ECF No. 220 at 2. The Plaintiffs did not file an objection. Below, I address the Plaintiffs' Motion for Limited Discovery as it relates to F.O. Bailey and Jones's motion to dismiss.

## II. LEGAL ANALYSIS

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)). To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)). Additionally, a court may consider inferences "gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Id.* (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).

To assess the complaint's adequacy, courts apply a "two-pronged approach," *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011): First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012). To determine the plausibility of a claim is "a context-specific

5

task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Although conclusory legal statements may "provide the framework of a complaint, they must be supported by factual allegations." *Id.* The court must determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.*

In addition, the Plaintiffs' fraud-related claims are subject to Federal Rule of Civil Procedure 9(b), which requires that a complaint "state with particularity the circumstances constituting fraud." To satisfy this requirement, the complaint must set forth the "time, place and content of an alleged false representation." *Howell v. Advantage Payroll Servs., Inc.*, No. 2:16-cv-438, 2017 WL 782881, at *6 (D. Me. Feb. 28, 2017) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)). The Plaintiffs' RICO claim is based in part on predicate acts of mail and wire fraud that "must satisfy the particularity requirements of Rule 9(b)." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).

The Plaintiffs assert (A) a RICO claim against Jones; (B) a fraud claim against F.O. Bailey; (C) a trespass claim against Jones; (D) an illegal eviction claim against F.O. Bailey and Jones; (E) a Maine Unfair Trade Practices Act claim against F.O. Bailey and Jones; (F) a conversion claim against Jones; (G) a negligence claim against Jones; (H) and an unjust enrichment claim against F.O. Bailey and Jones. I address each in turn.

**A.    RICO (Count IV)**

The Complaint asserts that Jones participated in a RICO conspiracy under 18 U.S.C.A. § 1962(d) (West 2022). "To prove a RICO conspiracy offense, the

[plaintiff] must show that 'the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators "to further the endeavor, which, if completed, would satisfy all the elements of a substantive RICO offense."'" *United States v. Velazquez-Fontanez*, 6 F.4th 205, 212 (1st Cir. 2021) (alterations omitted) (quoting *United States v. Rodríguez-Torres*, 939 F.3d 16, 23 (1st Cir. 2019)). It is not necessary to "prove that the defendant or his co-conspirators committed any overt act in furtherance of the conspiracy." *United States v. Leoner-Aguirre*, 939 F.3d 310, 317 (1st Cir. 2019).

Here, the Complaint alleges that Jones conspired to violate 18 U.S.C.A. § 1962(a), which makes it unlawful to use or invest income derived from a pattern of racketeering activity under certain circumstances:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in . . . interstate or foreign commerce.

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4) (West 2022). "To establish a pattern of racketeering, a plaintiff must show at least two predicate acts of 'racketeering activity', as the statute defines such activity, and must establish that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 788 (1st Cir. 1990) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "Racketeering activity" encompasses mail fraud under 18 U.S.C.A. § 1341 (West 2022), wire fraud

7

under 18 U.S.C.A. § 1343 (West 2022), and money laundering under 18 U.S.C.A. § 1956 (West 2022). 18 U.S.C.A. § 1961(1).

Further, a RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *accord* 18 U.S.C.A. § 1964(c) (West 2022). "Thus, in proving a right to recover for a RICO violation premised upon § 1962(a), the plaintiffs had to prove that they were *harmed* by reason of [the defendant's] use or investment of income derived from a pattern of racketeering activity in some enterprise . . . ." *Compagnie De Reassurance D'Ile de Fr. v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995). "Even assuming that [plaintiffs] had been defrauded through the use of the mails or international wires, that alone is not enough to show that they were harmed additionally by [a defendant's] use or investment of the proceeds of that fraud to establish or operate [an enterprise]." *Id.* (citation omitted).

The Plaintiffs' theory for their RICO claim against Jones is that he conspired with other defendants in violation of § 1962(d) to reinvest the income from a pattern of racketeering activity back into the enterprise, a violation of § 1962(a). The alleged racketeering activity was mail and wire fraud from the first scheme involving the lease/buy-back agreements and money laundering. The Plaintiffs allege that Jones agreed to market unspecified properties that had been purchased in part using the proceeds from the racketeering activities, after unspecified persons informed him of other defendants' fraudulent conduct. Jones offers multiple counterarguments,

8

including that the Plaintiffs fail to allege that they were harmed by the investment of racketeering proceeds back into the enterprise.

While the Complaint alleges that the Plaintiffs were harmed by the original fraudulent transactions, there is no explanation of how they were injured by the reinvestment of money into the enterprise from the sale of properties purchased in part with the proceeds of the alleged fraud. In the Plaintiffs' memorandum in opposition to the motion to dismiss, they argue that they were injured once when they paid for fraudulent purchase options and again when the properties they had the option to purchase were sold or mortgaged. But neither of those claimed injuries was caused by the reinvestment of money back into the enterprise from the sale of properties that were purchased in part with the proceeds of the predicate acts. As such, the Plaintiffs' conspiracy claim against Jones fails because he is alleged to have furthered conduct that is not alleged to have harmed them.[3]

For this reason, I grant the motion to dismiss with respect to the RICO count against Jones.

---

[3] In their memorandum of law, the Plaintiffs raise a new allegation: that Jones's marketing "made it harder to recover the property lost in the frauds both because it was cloaked in legitimacy and it was no longer possible to enforce the contracts against the parts of the enterprise that issued them." ECF No. 214 at 13. While this allegation represents an attempt to connect the reinvestment of illicit proceeds to an injury suffered by the Plaintiffs, on a Rule 12(b)(6) motion to dismiss, a court's inquiry is confined to the allegations in the complaint and its attachments. *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 73-74 (1st Cir. 2014) (concluding that the district court improperly considered evidence beyond the allegations in the pleadings). Additionally, this new allegation would be insufficient to establish the requisite investment injury for § 1962(a) because the Plaintiffs do not plausibly explain how reinvesting money into the enterprise from the sale of a property that had been purchased in part using the illicit proceeds of fraud made it more difficult for the Plaintiffs to recover the property that they lost pursuant to the fraud.

9

### B.     Fraud (Count VI)

The Complaint alleges that F.O. Bailey committed fraud in connection to three properties during the first and third schemes.  Under Maine law, fraud has the following five elements:

> (1) A party made a false representation, (2) The representation was of a material fact, (3) The representation was made with knowledge of its falsity or in reckless disregard of whether it was true or false, (4) The representation was made for the purpose of inducing another party to act in reliance upon it, and (5) The other party justifiably relied upon the representation as true and acted upon it to the party's damage.

*Thompson v. Cloud*, 764 F.3d 82, 88 n.9 (1st Cir. 2014) (quoting *Barr v. Dyke*, 2012 ME 108, ¶ 16, 49 A.3d 1280, 1286-87).  As already mentioned, fraud claims are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

The Complaint does not include any alleged statements by F.O. Bailey, let alone false representations of material fact made with knowledge or reckless disregard of falsity that injured the Plaintiffs through justifiable reliance and that were made for that purpose.  In their response memorandum, the Plaintiffs argue that Jones (not F.O. Bailey) is vicariously liable for fraud because the Complaint alleged a civil conspiracy.  In Maine, a claim of civil conspiracy "is only a way of obtaining vicarious liability against someone who did not himself perform the tortious act." *Forbis v. City of Portland*, 270 F. Supp. 2d 57, 61 (D. Me. 2003).  Here, the fraud count in the Complaint does not assert any theory of civil conspiracy and is asserted against F.O. Bailey, not Jones.  Even if the fraud count included allegations of civil conspiracy against F.O. Bailey, the Complaint fails to allege that F.O. Bailey participated in or knowingly agreed to further any fraudulent conduct.

For these reasons, I grant the motion to dismiss with respect to the fraud count against F.O. Bailey.

## C. Trespass (Count XI)

"A person is liable for common law trespass 'irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally enters land in the possession of the other, or causes a thing or a third person to do so.'" *Medeika v. Watts*, 2008 ME 163, ¶ 5, 957 A.2d 980, 982 (quoting Restatement (Second) of Torts § 158(a) (Am. Law Inst. 1965)). The Plaintiffs allege that Fowler had possession of 33 Sanborn Lane pursuant to his agreement with Lalumiere and that Jones unlawfully entered the home and removed Fowler's personal property, destroying it.

Jones contends that he is not liable for trespass because the Complaint does not allege that Fowler had possession of 33 Sanborn Lane when Jones entered the property and removed Fowler's personal property. Although Fowler does state that he was in possession of the land, Jones attempts to sidestep that allegation by arguing that Fowler failed to allege possession at the precise time when Jones entered and removed the personal property. Jones speculates that this may be because Fowler did not want to contradict the allegation that Jones denied him access to the property, which supports Fowler's illegal-eviction claim.

The Complaint alleges that Lalumiere and Fowler entered into a contract that gave Fowler control over the property; that Fowler used the garage on the property for his business while renting out the residential portion; that Fowler "had lawful possession of the aforementioned home"; and that Jones entered the property without

11

a legal right to do so. ECF No. 11 ¶ 220. Drawing all reasonable inferences in Fowler's favor, he has sufficiently alleged possession of 33 Sanborn Lane at the time of the trespass. To the extent that it is inconsistent, as Jones argues, to assert that a trespass culminated in an illegal eviction, a plaintiff is free to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3); *accord Von Hirsch v. Olson*, Docket No. 2:21-cv-00107, 2022 WL 123895, at *9 (D. Me. Jan. 13, 2022).

For these reasons, I deny the motion to dismiss with respect to the trespass claim against Jones.

**D.     Illegal Eviction (Count XII)**

Fowler's illegal-eviction count alleges that Jones denied Fowler, a tenant at will, access to 33 Sanborn Lane without proper notice of the termination of the lease. This count of the Complaint cites to 14 M.R.S.A. § 6014(1) (West 2022), which provides that evictions "effected without resort to the provisions of this chapter are illegal" and which lays out a rule against landlords improperly denying access to tenants. Jones responds that this claim must fail because Maine's illegal-eviction statute applies only against landlords and the Complaint does not allege that Jones was Fowler's landlord. Fowler responds that section 6014 does apply to Jones.

Jones has the better argument. In *Higgins v. Penobscot County Sheriff's Department*, a court in this district held that section 6014 "creates rights and duties between landlords and tenants and authorizes remedies against each other; third persons are not subject to its provisions," not even "the agent of a landlord." No. CIV 04157BW, 2005 WL 1961369, at *3 (D. Me. Aug. 15, 2005). That reasoning was

12

affirmed by the First Circuit. *Higgins v. Penobscot Cnty. Sheriff's Dep't*, 446 F.3d 11, 13-14 (1st Cir. 2006). The Plaintiffs do not cite any Maine authority to the contrary.

For this reason, I grant the motion to dismiss with respect to the illegal-eviction claim against Jones.

### E.     Maine Unfair Trade Practices Act (Count XIII)

Fowler asserts, again in connection to 33 Sanborn Lane, that both F.O. Bailey and Jones violated the Maine Unfair Trade Practices Act's ("MUTPA") prohibition against "unfair or deceptive acts or practices." 5 M.R.S.A. § 207 (West 2022). More specifically, the Complaint invokes the rule from 14 M.R.S.A. § 6030 (West 2022) that "[i]t is an unfair and deceptive trade practice . . . for a landlord to require a tenant to enter into a lease or tenancy at will agreement for a dwelling unit . . . in which the tenant agrees to a provision that has the effect of waiving [certain] tenant right[s]." The Complaint also alleges that fraud and removing personal property are unfair and deceptive trade practices.

F.O. Bailey and Jones counter that the Complaint does not allege that they were Fowler's landlords or that they entered into any agreement with him that waived tenant rights. F.O. Bailey and Jones further argue that the Complaint does not plausibly allege that they engaged in fraudulent conduct or that Fowler purchased or leased anything from them for personal, family, or household purposes.

MUTPA "creates a private right of action *only* for those who have purchased goods, services or property 'primarily for personal, family or household purposes.'" *C-B Kenworth, Inc. v. Gen. Motors Corp.*, 706 F. Supp. 952, 957 (D. Me. 1988) (quoting 5 M.R.S.A. § 213(1) (West 2022)); *accord Seacoast RV, Inc. v. Sawdran, LLC*, 2013

13

ME 6, ¶ 5, 58 A.3d 1135, 1137 (concluding the plaintiff did not purchase a car "primarily for personal purposes, and, therefore, cannot bring a private cause of action pursuant to the [M]UTPA").

The Complaint alleges that Fowler rented-out the house portion of 33 Sanborn Lane and used the garage for his business. There is no allegation that Fowler used the property for personal, family, or household purposes. Additionally, the Complaint fails to allege that F.O. Bailey or Jones were Fowler's landlords or entered into any agreement with Fowler, let alone an agreement that waived Fowler's tenant rights. Finally, the Complaint does not plausibly allege that F.O. Bailey or Jones engaged in fraud.

For these reasons, I grant the motion to dismiss with respect to the MUTPA claim against F.O. Bailey and Jones.

## F.     Conversion of Personal Property (Count XIV)

"[T]he gist of conversion is an invasion of a party's possession or right to possession." *Bradford v. Drummond*, 675 A.2d 957, 962 (Me. 1996) (alteration in original) (quoting *Doughty v. Sullivan*, 661 A.2d 1112, 1122 (Me. 1995)). "The Plaintiff must show '(1) a property interest in the goods; (2) the right to their possession at the time of the alleged conversion; and (3) when the holder has acquired possession rightfully, a demand by the person entitled to possession and a refusal by the holder to surrender.'" *Id.* (quoting *Doughty*, 661 A.2d at 1122).

The Plaintiffs allege that Fowler had an interest in his personal property at 33 Sanborn Lane and a right to its possession when Jones took possession of the personal property and denied Fowler access to it. The Complaint further alleges that Fowler

14

told Jones that the personal property was in the house, that Fowler wanted it back, and that Jones had no right to it. Jones argues that Fowler's conversion claim fails because the Complaint does not specify which items of personal property are at issue. He infers from Maine precedent addressing the elements of conversion that a more fulsome description of the goods is required and argues that the count is so lacking in specificity that dismissal is appropriate.

"Dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ocasio-Hernández*, 640 F.3d at 11 (quoting Fed. R. Civ. P. 8(a)(2)). "A 'short and plain' statement needs only enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 12 (alteration in original) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "This means that . . . the statement of claim must 'at least set forth minimal facts as to who did what to whom, when, where, and why.'" *Calvi v. Knox Cnty.*, 470 F.3d 422, 430 (1st Cir. 2006) (quoting *Educadores Puertorriqueños en Acción v. Hernández*, 367 F.3d 61, 68 (1st Cir. 2004)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *Haley*, 657 F.3d at 46 (quoting *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010)).

The Complaint alleges that Fowler used the garage at 33 Sanborn Lane while renting out the home; his personal property was inside; Jones denied Fowler access to this personal property; and Jones removed and destroyed the personal property.

While the Complaint's failure to provide any description of the personal property makes this a borderline case, I conclude that the Complaint is not so vague that it fails to notify Jones of what Fowler's claim is and the grounds upon which it rests. Drawing all reasonable inferences in Fowler's favor, he has plausibly alleged who did what to whom, when, where, and why in a way that elevates the possibility of relief beyond mere conjecture. The Complaint asserts that on Thursday, March 19, 2020, Jones went to 33 Sanborn Lane and took possession of all of the personal property that Fowler had on the premises, claiming that he was acting on behalf of Bangor Savings Bank after the bank had begun to foreclose on the property. While these allegations are far from comprehensive, "Rule 8 . . . does not require 'detailed factual allegations,'" only something "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

I deny the motion to dismiss with respect to the conversion claim against Jones.

### G.     Negligent Destruction of Personal Property (Count XV)

"To state a negligence claim in the state of Maine, a plaintiff must establish the following elements: 'a duty owed, a breach of that duty, and an injury . . . that is proximately caused by a breach of that duty.'" *Baker v. Goodman*, 442 F. Supp. 3d 366, 374 (D. Me. 2020) (alteration in original) (quoting *Belyea v. Shiretown Motor Inn, LP*, 2010 ME 75, ¶ 6, 2 A.3d 276, 278). The Complaint alleges that Jones breached his duty to protect Fowler's personal property when Jones disposed of it, causing the property to be destroyed.

Jones makes three counterarguments. First, Fowler does not provide a sufficient description of what property was destroyed. Second, Fowler has failed to

sufficiently plead facts plausibly supporting the conclusion that Jones owed a legal duty to protect the personal property from destruction, particularly in the absence of allegations that Jones was Fowler's landlord or property-management agent. Third, Fowler fails to allege that the destroyed property had value, which means there is no allegation of injury.

I rejected the first argument in the context of Fowler's conversion claim. I reject it here as well. Regarding the second argument, when the Complaint is construed most favorably to Fowler, it alleges that Jones was at 33 Sanborn Lane as an agent of Bangor Savings Bank while that bank was foreclosing on the property and that Jones denied him access to the premises and to his personal property. "The existence of a duty and the scope of that duty are questions of law," *Gniadek v. Camp Sunshine at Sebago Lake, Inc.*, 2011 ME 11, ¶ 17, 11 A.3d 308, 313, and the parties have not briefed whether the agent of a foreclosing bank has a duty to protect tenants' possessions after the agent has excluded them from the property and denied them access to the possessions. Since that is an issue of law, I am not persuaded that Fowler's negligence claim should be dismissed at this stage for failure to allege sufficient facts showing the existence of a legal duty. Finally, Fowler seeks "damages in the amount equal to the value of his destroyed property," ECF No. 11 ¶ 247, so it is reasonable to infer that the destroyed property had value. At this stage, I must draw all reasonable inferences from the Complaint in Fowler's favor.

For these reasons, I deny the motion to dismiss with respect to the negligence claim against Jones.

### H.  Unjust Enrichment (Count XVII)

The Complaint asserts a claim for unjust enrichment against F.O. Bailey and Jones based on the alleged "extraction of equity from the homes at 661 Allen Avenue and 57 Queen Street," two of the properties involved in the alleged lease/buy-back fraud.  ECF No. 11 ¶ 255.  A claim for unjust enrichment requires proof that "(1) [the complaining party] conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Knope v. Green Tree Servicing, LLC*, 2017 ME 95, ¶ 12, 161 A.3d 696, 699 (quoting *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712).

The Complaint's unjust enrichment claim must be dismissed because the Complaint fails to allege that a benefit was conferred on F.O. Bailey or Jones relating to the alleged schemes involving 661 Allen Avenue and 57 Queen Street.  Although the Plaintiffs were allegedly harmed through the loss of their properties, the Complaint fails to assert facts that would plausibly establish that a resulting benefit was conferred on F.O. Bailey or Jones.  Relatedly, the Complaint does not allege that they had or should have had "appreciation or knowledge" of the benefit received.

Accordingly, I grant the motion to dismiss with respect to the unjust enrichment claim against F.O. Bailey and Jones.

### I.  Motion for Limited Discovery

The Plaintiffs seek limited discovery from F.O. Bailey and Jones to reveal communications between them and the other defendants that were used to commit

the alleged predicate acts constituting the pattern of racketeering activity that generated the income Jones allegedly conspired to reinvest. F.O. Bailey and Jones oppose the motion, asserting that the Plaintiffs have failed to demonstrate a right to limited discovery because the Complaint does not allege that F.O. Bailey and Jones committed the alleged predicate acts.

Under *Menard v. CSX Transportation, Inc.*, "where modest discovery may provide the missing link" to satisfy the Rule 12(b)(6) plausibility standard, the court may allow limited discovery "at least where . . . 'some of the information needed may be in the control of the defendants.'" 698 F.3d 40, 45 (1st Cir. 2012) (alteration omitted) (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)). Here, however, the communications that the Plaintiffs seek to discover would not provide a "missing link" needed to remedy the Complaint's fatal deficiency discussed above: the failure to plausibly allege harm from the investment of illicit proceeds of racketeering activity back into the enterprise. Second, as discussed in *New England Data Services, Inc. v. Becher*, a court may allow discovery as to "the details of just when and where the mail or wires were used" in a "RICO mail and wire fraud case." 829 F.2d at 290; *see also Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Here, however, additional information as to how these defendants used the mail or wires to commit the alleged predicate acts of fraud would not cure the Complaint's deficiency.

Neither *Menard* nor *Becher* offers a basis to grant limited discovery in this instance. Thus, I deny the Motion for Limited Discovery.

## III.  CONCLUSION

For the reasons stated above, it is **ORDERED** that F.O. Bailey Real Estate LLC and David Jones's Motion to Dismiss (ECF No. 203) is **GRANTED IN PART** with respect to Counts IV, VI, XII, XIII, and XVII and **DENIED IN PART** with respect to Counts XI, XIV, and XV.  The amended complaint (ECF No. 11) as to F.O. Bailey Real Estate LLC is **DISMISSED.**  The Plaintiffs' Motion for Limited Discovery (ECF No. 215) is **DENIED**.

**SO ORDERED.**

Dated:  March 23, 2022

                                            **/s/ JON D. LEVY**
                                  **CHIEF U.S. DISTRICT JUDGE**