## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| JOEL DOUGLAS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) 2:20-cv-00227-JDL |
| | ) |
| SCOTT LALUMIERE, et al., | ) |
| | ) |
| Defendants. | ) |

## ORDER ON DAVID CLARKE'S MOTION TO DISMISS

Joel Douglas, Steven Fowler, and James Lewis (collectively, "Plaintiffs") bring this action against Scott Lalumiere and 25 other defendants, asserting 17 claims arising out of an alleged scheme to defraud the Plaintiffs and obtain control or ownership of their real property for the purpose of borrowing against the properties' equity. I have granted or granted in part many of the defendants' motions to dismiss the amended complaint (the "Complaint") (ECF No. 11) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] This order addresses the motion to dismiss filed by David Clarke (ECF No. 225) seeking the dismissal of the claims asserted against him under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C.A. §§ 1961-1968 (West 2022), and Maine contract law. For the reasons that follow, I grant

---

[1] I granted motions to dismiss filed by Androscoggin Savings Bank (ECF No. 238); Bangor Savings Bank and Robert Burgess (ECF No. 239); Andre Bellucci (ECF No. 240); Camden National Bank (ECF No. 241); Coastal Realty Capital, LLC, Michael Lyden, and Shawn Lyden (ECF No. 242); David Hirshon and LOSU, LLC (ECF No. 243); BLR Capital, LLC (ECF No. 244); and Machias Savings Bank (ECF No. 245). I granted in part motions to dismiss filed by Eric Holsapple; TTJR, LLC; LH Housing, LLC; Wayne Lewis; and Russell Oakes (ECF No. 244). Another motion to dismiss (ECF No. 203), which I address separately, has been filed by F.O. Bailey Real Estate LLC and David Jones.

Clarke's motion to dismiss, and I also deny the Plaintiffs' Motion for Limited Discovery (ECF No. 230).[2]

## I.  BACKGROUND

The Complaint alleges the following facts, which I treat as true for purposes of ruling on this motion to dismiss.

The Complaint asserts that Scott Lalumiere and other defendants engaged in three distinct but intertwined schemes to defraud the Plaintiffs.  In the first scheme, the Complaint alleges that Lalumiere, funded by various banks and private lenders, fraudulently induced several vulnerable individuals, including Plaintiffs Steven Fowler and Joel Douglas, who lacked access to conventional credit, to enter into lease/buy-back agreements.  Under the terms of the agreements, the title of the victim's real property would be transferred to a corporate entity controlled by Lalumiere with the victim, as the lessee, retaining a purchase option.  The Lalumiere-controlled entity would subsequently mortgage the property to banks and private lenders, and, when the entity defaulted, the mortgagees foreclosed, frustrating the victim's option to purchase.

In the second alleged scheme, Fowler entered into an agreement with Lalumiere whereby Fowler would provide labor and materials at a discounted rate to renovate certain properties controlled by Lalumiere, with the understanding that Fowler could purchase the properties upon the completion of the renovations.

---

[2] I recognize that Magistrate Judge John C. Nivison denied the Motion for Limited Discovery on August 11, 2021 (ECF No. 237).  His order expressly recognized, however, that the Plaintiffs' request for limited discovery should be revisited as part of the Court's assessment of the motion to dismiss. Accordingly, I have treated the earlier order denying the motion as a deferral of action on the motion. Further, I have considered the merits of the motion and, for the reasons explained herein, I deny the motion.

However, Lalumiere frustrated Fowler's right to purchase the properties by defaulting on the mortgages, causing the mortgagees to foreclose on the properties.

In the third alleged scheme, several of the defendants agreed to pay-off and discharge Plaintiff James Lewis's defaulted mortgage and to lend him money to make improvements to his property in exchange for him deeding the property to a corporation and making certain payments. After the title was transferred, certain defendants refused to loan him the money and subsequently foreclosed on the property.

The Complaint contains scant details regarding Clarke's participation in these schemes. The Complaint merely alleges that Clarke is a person residing in Westbrook, Maine; that he "realized the proceeds" of other defendants' misconduct; and that he was "informed of the fraudulent conduct in late November 2019." ECF No. 11 ¶¶ 174, 179. The Complaint also alleges that "Clarke extraction [sic] of equity" from two homes in a way that caused unjust enrichment. ECF No. 11 ¶ 255.

The Plaintiffs have filed a Motion for Limited Discovery as to Clarke in connection with their response to the motion to dismiss. Magistrate Judge John C. Nivison entered an order on August 11, 2021 denying the Plaintiffs' limited discovery request without prejudice, stating that "[t]he Court will consider Plaintiffs' [discovery] request as part of the Court's assessment of Defendant's pending motion to dismiss." ECF No. 237 at 2. The Plaintiffs did not file an objection. Below, I address the Plaintiffs' Motion for Limited Discovery as it relates to Clarke's motion to dismiss.

## II.  LEGAL ANALYSIS

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, a court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011)).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Id.* at 53 (quoting *Grajales v. P.R. Ports Auth.*, 682 F.3d 40, 44 (1st Cir. 2012)).  Additionally, a court may consider inferences "gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Id.* (quoting *Haley v. City of Bos.*, 657 F.3d 39, 46 (1st Cir. 2011)).

To assess the complaint's adequacy, courts apply a "two-pronged approach," *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011):  First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements," and, second, the court will "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief," *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012).  To determine the plausibility of a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Although conclusory legal statements may "provide the framework of a complaint, they must be supported by

factual allegations." *Id.* The court must determine whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.*

In addition, the Plaintiffs' fraud-related claims are subject to Federal Rule of Civil Procedure 9(b), which requires that a complaint "state with particularity the circumstances constituting fraud." To satisfy this requirement, the complaint must set forth the "time, place and content of an alleged false representation." *Howell v. Advantage Payroll Servs., Inc.*, No. 2:16-cv-438, 2017 WL 782881, at *6 (D. Me. Feb. 28, 2017) (quoting *Hayduk v. Lanna*, 775 F.2d 441, 444 (1st Cir. 1985)). The Plaintiffs' RICO claim is based in part on predicate acts of mail and wire fraud that "must satisfy the particularity requirements of Rule 9(b)." *Ahmed v. Rosenblatt*, 118 F.3d 886, 889 (1st Cir. 1997).

The Plaintiffs' claims against Clarke are: (A) a RICO claim and (B) an unjust enrichment claim. I address each in turn.

## A.    RICO (Count IV)

The Complaint asserts that Clarke participated in a RICO conspiracy under 18 U.S.C.A. § 1962(d) (West 2022). "To prove a RICO conspiracy offense, the [plaintiff] must show that 'the defendant knowingly joined the conspiracy, agreeing with one or more coconspirators "to further the endeavor, which, if completed, would satisfy all the elements of a substantive RICO offense.""" *United States v. Velazquez-Fontanez*, 6 F.4th 205, 212 (1st Cir. 2021) (alterations omitted) (quoting *United States v. Rodríguez-Torres*, 939 F.3d 16, 23 (1st Cir. 2019)). It is not necessary to "prove that the defendant or his co-conspirators committed any overt act in furtherance of the conspiracy." *United States v. Leoner-Aguirre*, 939 F.3d 310, 317 (1st Cir. 2019).

Here, the Complaint alleges that Clarke conspired to violate 18 U.S.C.A. § 1962(a), which makes it unlawful to use or invest income derived from a pattern of racketeering activity under certain circumstances:

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in . . . interstate or foreign commerce.

An "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C.A. § 1961(4) (West 2022). "To establish a pattern of racketeering, a plaintiff must show at least two predicate acts of 'racketeering activity', as the statute defines such activity, and must establish that the 'predicates are related, *and* that they amount to or pose a threat of continued criminal activity.'" *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 788 (1st Cir. 1990) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). "Racketeering activity" encompasses mail fraud under 18 U.S.C.A. § 1341 (West 2022), wire fraud under 18 U.S.C.A. § 1343 (West 2022), and money laundering under 18 U.S.C.A. § 1956 (West 2022). 18 U.S.C.A. § 1961(1).

Further, a RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *accord* 18 U.S.C.A. § 1964(c) (West 2022). "Thus, in proving a right to recover for a RICO violation premised upon § 1962(a), the plaintiffs had to prove that they were

*harmed* by reason of [the defendant's] use or investment of income derived from a pattern of racketeering activity in some enterprise . . . ." *Compagnie De Reassurance D'Ile de Fr. v. New England Reinsurance Corp.*, 57 F.3d 56, 91 (1st Cir. 1995). "Even assuming that [plaintiffs] had been defrauded through the use of the mails or international wires, that alone is not enough to show that they were harmed additionally by [a defendant's] use or investment of the proceeds of that fraud to establish or operate [an enterprise]." *Id.* (citation omitted).

The Plaintiffs' theory for their RICO claim against Clarke is that he conspired with other defendants in violation of § 1962(d) to reinvest the income from a pattern of racketeering activity back into the enterprise, a violation of § 1962(a). The alleged racketeering activity was mail and wire fraud and money laundering. Clarke argues that the RICO claim should be dismissed because the Complaint merely alleges that he became aware of wrongdoing and somehow benefitted from it, rather than alleging that he knowingly participated in a conspiracy. The Plaintiffs argue that the Complaint sufficiently alleges a conspiracy to violate 18 U.S.C.A. § 1962(a) and that Clarke intended to further its goals. For reasons I will explain, the Plaintiffs' argument is unpersuasive.

The Complaint contains few allegations against Clarke, and it is impossible to discern how he might be connected to the Plaintiffs' claims, let alone conclude that he agreed to conspire with the other defendants. The Complaint's only description of Clarke is that he is a person residing in Westbrook, Maine. The sole RICO allegations against Clarke assert that he "realized the proceeds" of the RICO enterprise and was "informed of the fraudulent conduct in late November 2019." ECF No. 11 ¶¶ 174,

7

179.   The Complaint does not contain any description of how Clarke agreed to further the reinvestment of illicit proceeds back into the enterprise.  Indeed, the Plaintiffs' memorandum in opposition to the motion to dismiss concedes that "the amended Complaint should have included a more specific allegation with respect to Mr. Clarke providing of [sic] funds to the enterprise."  ECF No. 229 at 4 n.1.

The Plaintiffs' memorandum sets forth additional facts not contained in the Complaint, claiming that Clarke "is a sophisticated money lender"; "provided funds to Scott Lalumiere in exchange for a mortgage on 33 Sanborn Lane," one of the three properties at issue in the second scheme, in August 2019; "knew that Mecap LLC was in the business of selling properties as rent to own and that Mr. Lalumiere did not have a license to engage in consumer credit transactions"; and "[e]ven after the fraud became public knowledge Mr. Clarke has treated the mortgage as legitimate" by continuing to hold the mortgage and waiting for the sale of 33 Sanborn Lane.  ECF No. 229 at 4, 13.  However, on a Rule 12(b)(6) motion to dismiss, a court's inquiry is confined to the allegations in the complaint and its attachments.  *See Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 73-74 (1st Cir. 2014) (concluding that the district court improperly considered evidence beyond the allegations in the pleadings).  But even if these additional allegations were considered, the Plaintiffs would not have sufficiently alleged that Clarke conspired to reinvest the enterprise's illicit proceeds back into the enterprise.  Among other deficiencies, the Plaintiffs merely allege that Clarke provided his own money to the enterprise *before* he was informed about the alleged fraud involving different properties and without being told of any connection between that fraud and 33 Sanborn Lane.  Finally, if Clarke's conduct could somehow

be classified as agreeing to reinvest the enterprise's illicit proceeds, there is no plausible explanation given for how this reinvestment (as opposed to the original fraud) harmed the Plaintiffs.

Looking only at the materials that can be properly considered at this stage, there is no plausible allegation that Clarke knowingly joined a conspiracy to reinvest income derived from a pattern of racketeering activity back into an enterprise. For these reasons, the RICO count against Clarke is dismissed.

## B.   Unjust Enrichment (Count XVII)

The Complaint asserts a claim for unjust enrichment against Clarke based on the alleged "extraction of equity from the homes at 661 Allen Avenue and 57 Queen Street," two of the properties involved in the alleged lease/buy-back fraud. ECF No. 11 ¶ 255. A claim for unjust enrichment requires proof that "(1) [the complaining party] conferred a benefit on the other party; (2) the other party had appreciation or knowledge of the benefit; and (3) the acceptance or retention of the benefit was under such circumstances as to make it inequitable for it to retain the benefit without payment of its value." *Knope v. Green Tree Servicing, LLC*, 2017 ME 95, ¶ 12, 161 A.3d 696, 699 (quoting *Me. Eye Care Assocs., P.A. v. Gorman*, 2008 ME 36, ¶ 17, 942 A.2d 707, 712).

The Complaint's unjust enrichment claim must be dismissed because the Complaint fails to allege that a benefit was conferred on Clarke relating to the alleged schemes involving 661 Allen Avenue and 57 Queen Street. Although the Plaintiffs were allegedly harmed through the loss of their properties, the Complaint fails to assert facts that would plausibly establish that a resulting benefit was conferred on

9

Clarke.  Relatedly, the Complaint does not allege that Clarke had or should have had "appreciation or knowledge" of the benefit received.

In sum, the Complaint fails to plead facts that, if proven, would establish a right of recovery based on unjust enrichment.  Thus, the unjust enrichment count against Clarke is dismissed.

### C.     Motion for Limited Discovery

The Plaintiffs seek limited discovery from Clarke to reveal communications between him and the other defendants that were used to commit the alleged predicate acts constituting the pattern of racketeering activity that generated the income that Clarke is alleged to have conspired to reinvest.  Clarke opposes the motion, asserting that the Plaintiffs have failed to demonstrate a right to limited discovery because the Complaint does not allege that Clarke committed the predicate acts such that information concerning those crimes would be in his exclusive possession.

Under *Menard v. CSX Transportation, Inc.*, "[w]here modest discovery may provide the missing link" to satisfy the Rule 12(b)(6) plausibility standard, the court may allow limited discovery "at least where . . . 'some of the information needed may be in the control of the defendants.'"  698 F.3d 40, 45 (1st Cir. 2012) (alteration omitted) (quoting *Pruell v. Caritas Christi*, 678 F.3d 10, 15 (1st Cir. 2012)).  Here, however, the communications that the Plaintiffs seek to discover would not provide a "missing link" needed to remedy the Complaint's fatal deficiency discussed above: the failure to plausibly allege that Clarke knowingly joined a conspiracy to reinvest income from a pattern of racketeering activity.  Second, as discussed in *New England Data Services, Inc. v. Becher*, a court may allow discovery as to "the details of just

when and where the mail or wires were used" in a "RICO mail and wire fraud case."
829 F.2d at 290; *see also Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997).  Here,
however, additional information as to how these defendants used the mail or wires to
commit the alleged predicate acts of fraud would not cure the Complaint's deficiency.

Neither *Menard* nor *Becher* offers a basis to grant limited discovery in this
instance.  Thus, the Motion for Limited Discovery is denied.

### III.  CONCLUSION

For the reasons stated above, it is **ORDERED** that David Clarke's Motion to
Dismiss (ECF No. 225) is **GRANTED**.  The amended complaint (ECF No. 11) as to
David Clarke is **DISMISSED**.  The Plaintiffs' Motion for Limited Discovery as to
David Clarke (ECF No. 230) is **DENIED.**

**SO ORDERED.**

**Dated:  March 23, 2022**

_____/s/ **JON D. LEVY**_____
**CHIEF U.S. DISTRICT JUDGE**