UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| STEVEN FOWLER, et al., ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | 2:20-cv-00227-LEW |
| ) | |
| BANGOR SAVINGS BANK, et al., ) | |
| ) | |
| Defendants ) | |

**ORDER ON BANGOR SAVINGS BANK'S MOTION
FOR SUMMARY JUDGMENT**

Plaintiff Steven Fowler claims that Defendant Bangor Savings Bank and one of its former representatives, Robert Burgess, subjected him to an illegal eviction and unlawfully converted his personal property. The matter is before the Court on the Motion for Summary Judgment of Burgess and Bangor Savings Bank (ECF No. 363), which I grant.

**FACTS**

The following statement of facts is drawn from the parties' statements of material facts, opposing statements, and reply statements. See Loc. R. 56. In the course of my review of the parties' statements I have reviewed the referenced summary judgment record in the light most favorable to Fowler, the non-movant, including by indulging reasonable factual inferences in his favor, but I have not paid heed to conclusory assertions, improbable inferences, or speculation. *Quintana-Dieppa v. Dep't of Army*, --- F.4th ---, ---, 2025 WL 602351, at *3 (1st Cir. Feb. 25, 2025).

The dispute concerns Fowler's alleged right to possession of real property located in Limerick, Maine, and certain personal property he left there. The real property was owned, at the relevant time, by MECAP LLC. Bangor Savings Bank ("BSB") provided MECAP with secured financing and held a mortgage on the property. Under the terms of the mortgage note, BSB had a right to assume possession of the property in the event of MECAP's default, to assume rights in MECAP's leases, and to collect rents owed to MECAP by tenants of the property. Mot. Ex. 3 (ECF No. 363-5) ¶¶ 2.1, 2.1(a).

In 2016, around the time of MECAP's acquisition of the property, or sometime thereafter, Fowler rented the property from MECAP pursuant to an oral understanding he had with Scott Lalumiere, MECAP's principal. There is no evidence that the oral lease agreement established a term for which Fowler would remain liable for rents. Fowler used the property for business purposes and stored some vehicles and other property there. He sublet the residence to another person, but did not take up residence there himself.

In late 2019, Lalumiere left the State of Maine and walked away from MECAP and his other business interests. Soon after, MECAP defaulted on its loan obligation to BSB. When Fowler learned that Lalumiere was walking away from MECAP's interest in the property, Fowler stopped making rental payments and shut down the utilities, including electrical service. He removed several items of personal property, including various vehicles, but left some other vehicles and items behind. There is no evidence that he continued to use the property or sublet it; only that he left personal property behind.

Meanwhile, MECAP, through its counsel, retained a realtor, David Jones, to sell the property. Fowler, through his counsel, contacted Robert Burgess of BSB by email and

stated that he would provide a list of personal property he left behind, presumably with the expectation that BSB would assume some responsibility over Fowler's property. Although the email placed BSB on notice that Fowler had personal property on the premises, there is no evidence that BSB gave any assurances or assumed any responsibility concerning the property Fowler left behind. Furthermore, BSB never exerted any authority under the mortgage note to wrest possession of the property from MECAP. Nor did BSB ever attempt to collect rents from Fowler.

Before the end of winter, in early 2020, the property had frozen pipes and a flooded basement.

After the passage of several months, Jones secured a buyer. The buyer offered to buy the property as-is and negotiated a slight reduction in price to assume the burden of cleaning up and removing personal property left on the premises. The sale closed and the buyer took a deed to the property from MECAP. For its part in the transaction, BSB agreed to accept less than what it was owed and allowed the sale to close free and clear of BSB's mortgage interest. At some point, Fowler's personal property was removed from the premises. There is no evidence that it was removed at the direction of Burgess or any other representative of BSB.

Fowler complains that the foregoing developments resulted in his unlawful eviction and the conversion of his personal property, and he seeks to impose liability on BSB and Burgess. However, Fowler has not offered any evidence that BSB or Burgess undertook any steps to bar him from the premises or removed or disposed of his personal property. The evidence he relies on to support his cause is evidence demonstrating (1) that BSB paid

an individual to clean up the basement of the property and perform mold remediation work; (2) that MECAP's realtor, Jones, interacted with BSB and expressed his understanding to Fowler that BSB had effective control over the property; (3) that Jones told Fowler that Fowler did not own the property; and (4) that Jones told Fowler that Fowler had no right to be on the property.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that has the potential to determine the outcome of the litigation. *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986). To raise a genuine issue of material fact, the party opposing the summary judgment motion must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material issues in their favor. *See Triangle Trading Co. v. Robroy Indus.*, *Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) ("Unless the party opposing a motion for summary judgment can identify a genuine issue as to a material fact, the motion may end the case."). "If the court finds that no genuine issue of material fact exists and that no reasonable jury would favor the nonmoving party, then it must grant the moving party's motion." *Quintana-Dieppa*, --- F.4th at ---, 2025 WL 602351, at *3.

4

A.   **Illegal Eviction**

BSB[1] argues that Fowler cannot raise a genuine issue of material fact that BSB illegally evicted him from the property. It observes that MECAP was the only entity that stood in the role of landlord to Fowler and that, in any event, Fowler abandoned his leasehold. Fowler cites Maine law governing the rights and responsibilities of landlords and their tenants, 14 M.R.S. §§ 6001 – 6016-a. He argues that because BSB's mortgage note gave it authority to "control" the property, BSB necessarily did control the property. He says BSB was his "landlord by default," Fowler Opp'n at 6 (ECF No. 371), and his eviction was illegal under 14 M.R.S. § 1614. Fowler also contends that the realtor's statement that he had no right to be on the property should be attributed to BSB based on the realtor's apparent authority.

Maine law makes it illegal for a landlord to evict a residential tenant by means of resorting to self-help remedies like shutting off utilities to the property, seizing the property or barring access to it, or seizing or denying access to the tenant's personal property. 144 M.R.S. § 1614(1). However, no reasonable fact finder would find that BSB subjected Fowler to an illegal eviction.

Contrary to Fowler's importunings, he has failed to raise a genuine issue whether BSB was ever his landlord or evicted him from any premises over which he intended to

---

[1] When referring to BSB in the discussion, I include Burgess as well. There is nothing in the record that would justify treating Burgess less favorably than BSB in regard to the claims at issue.

maintain exclusive occupancy and possession. The entry of summary judgment for BSB on the wrongful eviction claim is therefore appropriate.

**B.      Conversion**

"The necessary elements to establish a claim for conversion are a showing that (1) the person claiming that his or her property was converted has a property interest in the property; (2) the person had the right to possession at the time of the alleged conversion; and (3) the party with the right to possession made a demand for its return that was denied by the holder." *Belyea v. Campbell*, 320 A.3d 465, 472-73 (Me. 2024).

BSB argues that it is entitled to summary judgment because the record will not support a finding that it was ever the holder of Fowler's property or that it ever received a proper demand to retrieve his property. BSB further observes that the uncontroverted record shows that Fowler has no idea who removed his personal property. Fowler responds that the conversion of his property "was complete . . . when David Jones excluded Mr. Fowler from the property and [BSB] refused to pause the situation at [his] request." Fowler Opp'n at 10.[2] The evidence associated with these contentions does not bear their weight or otherwise support a finding that BSB ever did anything to assume the status of holder of Fowler's personal property. Furthermore, the only personal property of which Fowler has made the Court aware would be the items he left behind in the yard and perhaps in the garages, such as dilapidated cars and boats. Fowler has not pointed to any evidence of

---

[2] David Jones' separate motion for summary judgment is addressed in a companion order.

personal property that he kept in the residence. Accordingly, the entry of summary judgment is appropriate.

## CONCLUSION

For the reasons explained above, the Motion for Summary Judgment of Burgess and Bangor Savings Bank (ECF No. 363) is GRANTED. Count XII and XIV are dismissed as to Defendants Burgess and Bangor Savings Bank. As all other claims against them were dismissed in the Court's Order on Bangor Savings Bank and Robert Burgess's Motion to Dismiss (ECF No. 239), Bangor Savings Bank and Robert Burgess are dismissed from the case.

**SO ORDERED.**

**Dated this 10th day of March, 2025.**

/s/ Lance E. Walker
Chief U.S. District Judge