UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| STEVEN FOWLER, et al., | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | )   No. 2:20-cv-00227-LEW |
| | ) |
| DAVID JONES, et al., | ) |
| | ) |
| Defendants | ) |

**ORDER ON DAVID JONES'**
**MOTION FOR SUMMARY JUDGMENT**

Plaintiff Steven Fowler claims that Defendant David Jones committed trespass and converted or caused the negligent destruction of Fowler's personal property. The matter is before the Court on Jones' Motion for Summary Judgment (ECF No. 368), which I grant.

FACTS

The following facts are drawn from the parties' statements of material facts, opposing statements, and reply statements. See Loc. R. 56. In the course of my review of the parties' statements I have reviewed the referenced summary judgment record in the light most favorable to Fowler, the non-movant, including by indulging reasonable factual inferences in his favor, but I have not paid heed to conclusory assertions, improbable inferences, or speculation. *Quintana-Dieppa v. Dep't of Army*, --- F.4th ---, ---, 2025 WL 602351, at *3 (1st Cir. Feb. 25, 2025).

From roughly 2016 through 2021, MECAP LLC, a closely-held business entity controlled by Scott Lalumiere, held title to a property located at 33 Sanborn Lane in Limerick. Plaintiff Steven Fowler had an oral agreement with Lalumiere. Fowler could use the premises, on which there is a residential home and two garages, in exchange for payments of rent to MECAP and the performance of unspecified work on the property. Lalumiere also told Fowler that he would have the right to purchase the property and granted Fowler the right to sublet the premises. Fowler made monthly payments in person to MECAP at Lalumiere's office. He used the garages for business purposes and sublet the residential structure. Fowler also stored a number of vehicles on the property, some damaged and in need of repair, as well as a Zodiac boat and trailer, a wheel-balancing machine, and a tire changing machine.

In late 2019, Lalumiere left the State of Maine and walked away from MECAP and his other business interests in Maine. In response, Fowler stopped making rental payments to MECAP. Presumably, there was no longer a subtenant in the residence because Fowler shut off the utilities during the winter months. Fowler also removed a number of items of personal property from the garages, including several classic cars, ATVs, snowmobiles, and motorcycles. He did not, however, remove five vehicles parked in the yard, the Zodiac boat and trailer, the wheel-balancing machine, or the tire changing machine. What he may have left behind inside the residence is not indicated in the summary judgment record.

David Jones is the owner and President of F.O. Bailey Real Estate LLC. Jones is a licensed Maine real estate broker. On or about January 13, 2020, Jones accepted a listing to market and broker the sale of the property on behalf of MECAP. At no time did Jones

ever serve as property manager or property management agent for MECAP with regard to the Sanborn Lane Property. As the listing broker, Jones marketed the property to find a buyer.

Later that winter, Jones was contacted by David Clarke, who held a second mortgage on the property. Clarke went to look at the property and informed Jones that the property was abandoned with no heat, frozen pipes, and a flooded basement. Clarke sent Jones photographs that he had taken of the exterior and interior of the premises. Jones connected Clarke with Rob Burgess at Bangor Savings Bank, which held a first mortgage on the property and would be interested in protecting its collateral. The Bank agreed to retain Clarke to repair the damage to the interior of the property.

In March 2020, Jones and Fowler communicated with one another. Jones says it was by telephone and text. Fowler says that he also encountered Jones on the property on one occasion in March and had an unpleasant exchange. Jones states that he told Fowler that Fowler should remove his belongings from the premises because the property was being sold, and that Fowler responded he would remove his belongings by the end of the week, which he later revised to the following Monday. To this, Fowler offers a blanket denial, but he cites only a deposition statement in which he testified that Jones told him he "had no right to this property and I'm going to do whatever I want to do to it." Fowler Dep. at 40. As explained in the following paragraph, that denial does not controvert Jones' statement that the men discussed and anticipated the removal of Fowler's personal property, regardless of what Jones may have said about Fowler's rights in the premises.

Jones told Fowler that the property was not his. Jones was referring to the real estate, not the personal property items left on the premises. Fowler offers a qualification that he understood Jones to mean more than just the real property. However, the record evidence he cites—his own deposition testimony—reflects that Fowler testified that Jones said, "You have no right to this property, you don't own it." Fowler Dep. at 50. It is apparent from the context that Fowler himself was referring to the premises. He testified that he "found it very odd that a realtor would tell me I had no rights to property *and I can't go on it*." *Id.* (emphasis added). He also testified that Jones told him he "had no rights to be there." *Id.* at 52. The attempt to deny or qualify Jones' statements to maintain that Jones refused Fowler the ability to retrieve his personal property has no probative evidentiary support in Fowler's testimony. Indeed, Fowler acknowledged at his deposition that he had been advised by Jones to remove his possessions. *Id.* at 160.

During his tenure as listing broker, at no time did Jones ever remove or destroy any personal property items located on the premises. Nor did he ever authorize or direct anyone else to do so. Fowler denies this statement, too. However, he merely cites deposition testimony indicating that there were dumpsters on the premises. Fowler Dep. at 39. At his deposition, Fowler admitted that he was unaware of any property of his that was actually removed on the day in March 2020 when he claims to have encountered Jones and saw the dumpsters. He simply testified that he saw dumpsters on the site that day. It also bears

4

noting that there is no evidence, nor would it be fair to infer, that the dumpsters contained boats, cars, a wheel-balancing machine, or a tire changing machine.[1]

There is no evidence that Fowler ever exerted himself to remove personal belongings from the property after his communications with Jones. There is nothing to suggest, for example, that he sought to remove the items and was denied the chance. Fowler and his counsel state, however, that Jones and a representative of Bangor Savings Bank were not receptive to counsel's report that Fowler had property on the premises and that they "refused to stop disposing of the property." Andrews Dep. ¶¶ 8, 12 (ECF No. 374-7). This is curious because it appears the property that Fowler had deposited outdoors (cars, boats, etc.) remained on the premises throughout 2020, and because there is nothing in the parties' respective statements to identify what actual property was ever disposed of by Jones or by anyone else acting at his direction.

The Sanborn Lane Property sold on January 8, 2021. The vehicles and boat(s) remained on the premises at that time. Fowler has no idea who removed his personal property from the premises. At no time did Fowler make or attempt to make any specific arrangement for the retrieval of his personal property. Instead, Fowler's counsel sent an email to Bangor Savings Bank representative Robert Burgess on March 19, 2020, stating that he would later provide Burgess with "a detailed statement of what is current [sic] on the property, where it is, and it [sic] value" and "a detailed statement of what is missing,

---

[1] The record reflects that interior repairs were underway at the residence due to burst pipes and water damage.

where it was, where believed [*sic*] it went." No such information was ever provided over the following nine or ten months leading up to the sale of the premises.

### DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that has the potential to determine the outcome of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To raise a genuine issue of material fact, the party opposing the summary judgment motion must demonstrate that the record contains evidence that would permit the finder of fact to resolve the material issues in their favor. *See Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) ("Unless the party opposing a motion for summary judgment can identify a genuine issue as to a material fact, the motion may end the case."). "If the court finds that no genuine issue of material fact exists and that no reasonable jury would favor the nonmoving party, then it must grant the moving party's motion." *Quintana-Dieppa*, --- F.4th at ---, 2025 WL 602351, at *3.

Fowler's claims against Jones allege (A) trespass, (B) conversion, and (C) negligent destruction of property. I address each claim in turn.

**A.      Trespass**

Fowler alleges in a claim of trespass that "Mr. Jones's entry into the home and removal of Mr. Fowler's personal property caused the destruction of Mr. Fowler's personal property." Am. Compl. ¶ 222. He requests a recovery "in the amount equal to the value of the destroyed property." *Id.* ¶ 223.

Jones is entitled to summary judgment on the trespass claim because, contrary to Fowler's allegations, Fowler has failed to demonstrate that the record would permit the finder of fact to conclude that Jones removed or destroyed Fowler's personal property. While it might be fair to infer that a listing agent would tour the premises, and therefore enter them, the record still does not support a finding that Jones removed or destroyed Fowler's personal property. On the current record there is not even probative evidence that Fowler maintained a possessory interest in the premises since it is undisputed that he did not live there, no longer used it for business purposes, stopped paying rent, removed some of his property of value, and disconnected the electrical service. On these facts, no reasonable finder of fact would favor Fowler on his trespass claim by making Jones pay Fowler an "amount equal to the value of the destroyed property," as Fowler requests. Am. Compl. ¶ 223.[2]

---

[2] Fowler also insists that Jones is liable to him in trespass because Fowler was functionally dispossessed of his leasehold without recourse to the entry and detainer procedures found in Title 14 of the Maine Revised Statutes. The Court previously dismissed Fowler's illegal eviction claim against Jones because Jones was not Fowler's landlord. Order on F.O. Bailey Real Estate LLC and David Jones' Motion to Dismiss (ECF No. 253) at 12-13. I do not read Fowler's amended complaint as asserting a claim of technical trespass against Jones based on Jones' mere presence because Fowler requests as his remedy the payment of the value of destroyed property and no other measure of economic damages is exigible. Furthermore, even with regard to nominal damages, which can be awarded in a trespass action, *Medeika v. Watts*, 957 A.2d 980, 982 (Me. 2008), under the common law of trespass, when a tenant engages in conduct that the landlord would reasonably interpret as abandonment of the leasehold, such as nonpayment of rent coupled with an abandonment that results in waste, the landlord is, minimally, permitted to enter and take measures to prevent and/or mitigate waste and loss. *Moore v. Boyd*, 24 Me. 242, 247 (1844) ("An entry may be lawful and justifiable for one purpose, and unlawful and unjustifiable for another."); *Morales-Garcia v. Higuera Farms, Inc.*, 2021 WL 6774327, at *21 (C.D. Cal. Oct. 15, 2021), *aff'd sub nom. Morales-Garcia v. Better Produce, Inc.*, 70 F.4th 532 (9th Cir. 2023) ("[M]ost possessory leasehold estates enable a landlord or lessor to regain possession upon abandonment of the property and require a tenant to avoid waste. *See* 2 Powell on Real Property § 17.05 (2021) (discussing a landlord's remedies upon abandonment of property); 8 Powell on Real Property § 56.03 (2021) ("[The] [w]aste doctrine is designed to ensure that future interest holder will receive

**B.     Conversion**

"The necessary elements to establish a claim for conversion are a showing that (1) the person claiming that his or her property was converted has a property interest in the property; (2) the person had the right to possession at the time of the alleged conversion; and (3) the party with the right to possession made a demand for its return that was denied by the holder." *Belyea v. Campbell*, 320 A.3d 465, 472-73 (Me. 2024).

Jones argues he is entitled to summary judgment because Fowler has no evidence who actually took his personal property from 33 Sanborn Lane. Fowler responds with a convoluted argument that Jones is liable for conversion because he denied Fowler access to remove his property and did not observe the requirements of 14 M.R.S. § 6013.

The evidence of record does not support a finding that Jones, the listing broker, was ever the holder of Fowler's property.[3] That means Fowler is entitled to summary judgment on Fowler's conversion claim as a matter of law.

---

land in substantially same condition as when present possession began.").");  *Symes Investing Co. v. Wheelock*, 136 P. 65, 67 (Colo. 1913) (entry to prevent waste by making repairs is recognized as an exception to trespass doctrine); *MacKellar v. Sigler*, 47 How. Pr. 20, 1874 WL 9840 (N.Y. Com. Pl. 1874) (same). Under the circumstances, the mere presence of a listing broker who was an agent of the landlord is no true trespass since the landlord would have justification for his own presence on the property. In any event, the amended complaint's omission of a plea for nominal damages warrants the conclusion that the trespass claim should not endure for the sole purpose of a nominal recovery. *Harris v. Univ. of Mass. Lowell*, 43 F.4th 187, 193 (1st Cir. 2022).

[3] The record also does not support the inference that Fowler ever demanded that he be allowed on the premises for the purpose of removing the property at issue or that he ever went to the property for that purpose and was denied access. Nor does it support a finding that there was any property of Fowler's left behind that might be associated with a residential use of the premises. Concerning the only personal property that the record speaks to, it was not incumbent on Jones or anyone else to take on the expense of delivering broken down vehicles and boats, or mechanical tools, to Fowler, only to not stand in the way of Fowler's efforts to retrieve them.

## C.    Negligence

Fowler alleges that Jones negligently destroyed his personal property. Jones argues that summary judgment must enter on his behalf because he never possessed Fowler's property or oversaw its removal or destruction. In response, Fowler attempts (again) to reimagine the claim as some kind of alternative to a wrongful eviction claim or claim for failure to give notice concerning the disposition of personal property left behind by a tenant (as if Fowler lacked notice of the need to remove his property or lacked the opportunity to do so over a period of more than nine months).

To prove negligence, "a plaintiff must establish that a duty was owed, the duty was breached, and the plaintiff's injuries or damages were proximately caused by the breach of that duty." *Parrish v. Wright*, 828 A.2d 778, 783 (Me. 2003).

I am not persuaded that Jones' status as MECAP's listing agent is enough to give rise to a duty owed by Jones to Fowler to personally ensure that Fowler was able to retrieve his personal property, even assuming that Fowler's dispossession of the property was a function of eviction rather than abandonment. Because the record cannot support the necessary finding that Jones ever had possession of Fowler's personal property or directed anyone over whom he had authority to dispose of it, the claim for "negligent destruction of property" necessarily fails.

## CONCLUSION

For the reasons explained above, Jones' Motion for Summary Judgment (ECF No. 368) is GRANTED. Count XI, XIV, and XV are dismissed as to Defendant David Jones.

Because the only other claim against Jones (Count XII) was dismissed by the Court in an earlier order (ECF No. 253 at 12-13), Jones is dismissed from the case.

**SO ORDERED.**

Dated this 10th day of March, 2025.

/s/ Lance E. Walker
Chief U.S. District Judge