UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

JOEL DOUGLAS, STEVEN FOWLER, )
and JAMES LEWIS, )
)
      Plaintiffs )
)
    v. )     No. 2:20-cv-227-LEW
)
SCOTT LALUMIERE, *et al.*, )
)
      Defendants )

## ORDER ON MOTION TO AMEND

The matter is before the Court on Plaintiffs' Motion to Amend Scheduling Order to Allow Second Amended Complaint ("Motion to Amend") (ECF No. 408).  Plaintiffs' Motion to Amend is opposed by Defendants Androscoggin Savings Bank, Machias Savings Bank, LH Housing LLC, TTJR LLC, Eric Holsapple, Wayne Lewis, and Russell Oakes (ECF Nos. 409, 411, 412). In reply, Plaintiffs also propose that they also receive leave to file a supplemental complaint, separate from their proposed second amended complaint.  Reply (ECF No. 413).[1]

## BACKGROUND

In this action, Plaintiffs have alleged that the Defendants conspired to capitalize on a fraudulent campaign instituted by Scott Lalumiere and certain LLCs he closely held to mislead owners of distressed properties to convey their titles with the right to lease the properties and

---

[1] Plaintiffs' Motion for Default Judgment Against Birch Point Storage LLC and MECAP LLC and Request for Damages Hearing (ECF No. 406) remains pending following the Procedural Order and Order to Show Cause that issued on February 6, 2026.  The Motion for Default Judgment will be addressed separately.

purchase them back at a later time.  Mr. Lalumiere exited this litigation through bankruptcy.  His LLCs, Birch Point Storage and MECAP, defaulted.  The remaining defendants have all obtained dismissal orders on motions to dismiss or motions for summary judgment.  At present, the only remaining claims requiring resolution are the claims against the two defaulted LLCs.

On August 29, 2025, Plaintiffs filed their request for a default judgment and a damages hearing.  Mot. for Default J. and Mem. in Support of Rescission (ECF No. 406).  Their request indicates that Steven Fowler seeks the remedy of rescission against Birch Point Storage, to recover title to a commercial property located on Allen Avenue in Portland, Maine, and that Joel Douglas seeks the rescission remedy against MECAP, to secure title to a residential property located on Queen Street in Gorham, Maine.[2]  Their claims to rescission rest on contractual representations, allegedly made to them in writings signed by Mr. Lalumiere, that they would be able to lease with the option to purchase the subject properties on a set timeline and for a set amount.  It was based on these representations that Mr. Fowler and Mr. Douglas agreed to convey their properties to Mr. Lalumiere's LLCs. However, before the expiration of the contracts, Mr. Lalumiere alienated the properties through mortgage transactions with banks and subsequently lost the Allen Avenue Property in a foreclosure and sold the Queen Street Property to third parties.

Rather than seeking specific enforcement of their contracts with Lalumiere or his LLCs, Plaintiffs have requested the remedy of rescission to unwind the conveyances through which they

---

[2] Plaintiff James Lewis does not seek rescission.  His home was sold as part of a bankruptcy discharge.

first transferred the properties to Mr. Lalumiere's LLCs.[3]  As of this date, almost six years after the filing of Plaintiff's original complaint, the properties are owned by third parties to this case.

Although Mr. Fowler and Mr. Douglas indicate that they believe they are entitled to rescission against the third parties who now hold the properties, I deferred their request for default judgment on the ground that I would not in any event award a remedy at a default judgment hearing that would deprive third parties of their interest in real estate when they were never made a party to the case.  Procedural Order and Order to Show Cause at 3 (ECF No. 407).  I instructed Mr. Fowler and Mr. Douglas to seek leave to amend, anticipating the need for some substantive briefing related to the propriety of amendment and the viability of the proposed rescission remedy, so that I would not be forced to assess the matter in the near vacuum of a default judgment hearing and without giving interested parties an opportunity to be heard.

In support of their Motion to Amend, Plaintiffs have related that the properties are, in fact, presently held by third parties and that Plaintiffs would serve the identified third parties.  Counsel for Plaintiffs has since filed an affidavit of service.  Aff. of Robert C. Andrews (ECF No. 410). Plaintiffs argue that the Court should liberally grant them leave to amend the scheduling order and their pleadings because "[t]he Court has just made [the] determination [that justice would be served] with its procedural order that the third parties in interest are required parties," and that this determination also satisfies the good cause requirement for amendment of the Court's schedule. Mot. to Amend at 3.  Plaintiffs assert that "[t]here has been no delay at all" and that the third parties would not be prejudiced by late amendment since they can now "defend their interest." *Id.*

---

[3] There is some suggestion in the record that Mr. Fowler and/or Mr. Douglas could have met the terms of the buy-back agreement, though this has never been clearly demonstrated.

at 4.  Plaintiffs further assert, in their reply brief, that in addition to joining title holders as interested parties they seek to file a supplemental complaint against the new parties, since Plaintiffs' claims against them arose only with relatively more recent conveyances.  Plaintiffs observe that the disposition of their claims against the existing Defendants need not be modified by either the proposed amendment or by the proposed supplemental complaint.  Reply (ECF No. 413).

## AMENDMENT OF PLEADINGS UNDER RULE 15

Pursuant to Rule 15, a "party may amend its pleading once as a matter of course no later than 21 days after serving it."  Fed. R. Civ. P. 15(a)(1)(A).  But after that period, it must obtain "the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  Leave should be given freely "when justice so requires."  *Id.*  But "[a]s a case progresses, and the issues are joined, the burden on a plaintiff seeking to amend a complaint becomes more exacting."  *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004).  Additionally, when deadlines established in a scheduling order have transpired, "the liberal default rule is replaced buy the more demanding 'good cause' standard" of Rule 16.  *Id.*; *see* Fed. R. Civ. P. 16(b).  "The 'good cause' standard focuses on both the conduct of the moving party and the prejudice, if any, to the nonmovant."  *Miceli v. JetBlue Airways Corp*., 914 F.3d 73, 86 (1st Cir. 2019).  "The longer a plaintiff delays, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Id.*  (citation modified).  *See also Hewes v. Pangburn*, 162 F.4th 177, 201-202 (1st Cir. 2025).

Rule 15 also allows for the filing of a supplemental pleading. Fed. R. Civ. P. 15(d). Less commonly invoked, Rule 15(d) provides:

> On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented. The court may permit supplementation even though the original pleading is defective in stating a claim or defense. The court may order that the opposing party plead to the supplemental pleading within a specified time.

*Id.* The "supplementation of pleading is encouraged 'when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action.'" *U.S. ex rel Gadbois v. PharMerica Corp.*, 809 F.3d 1, 4 (1st Cir. 2015) (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1504, at 258–59 (3d ed. 2010)). *See also Cortes-Ramos v. Martin-Morales*, 956 F.3d 36, 44 (1st Cir. 2020).

## DISCUSSION

In terms of the timeliness of Plaintiff's Motion to Amend, I conclude that the "protracted delay" label applies. *Miceli*, 914 F.3d at 86. The last time the Court considered an amendment of the Scheduling Order was in April of 2024, and only in the context of a request to extend discovery. Furthermore, the deadline for amendment of the pleadings was May 12, 2023, more than three years ago. Both of the properties at issue here came into the possession and ownership of third parties to this case before the deadline to amend. Under the circumstances, the proposed amendment or supplementation would be exceedingly tardy and would introduce a new dimension to the case, one that would necessitate additional discovery, new hearings, and perhaps even a trial, assuming the remedy of rescission is even viable.

5

In regard to the Allen Avenue Property, although Plaintiffs maintain that their request is better understood to seek supplementation of the pleadings based on recent developments (new third parties entering the chain of title), in fact the adversity of third party Whipping Post LLC, an early successor through a power of sale foreclosure, was evident as early as 2020, yet Plaintiffs never proposed to join Whipping Post by amendment or supplementation. The mere fact that there are more recent, new owners in the chain of title for the Allen Avenue Property does not override concerns for the protracted delay associated with Plaintiffs' Motion to Amend (or Supplement).

Circumstances are much the same for the Queen Street Property sought by Joel Douglas, which was sold to third-parties Rushford and Pennel in 2022, almost a year before the expiration of the deadline to amend the pleadings. If there was an opportune time to implead them, it would have been within the deadline to amend the pleadings, some three years ago.

With this initial determination of excessive tardiness in place, I consider the additional arguments offered by those Defendants who have filed opposition briefs. Defendant Androscoggin Savings Bank ("ASB"), which issued loan proceeds secured by a mortgage against the Allen Avenue Property and subsequently foreclosed on it, opposes Plaintiffs' request for leave. ASB Opp'n (ECF No. 409). ASB argues that Steven Fowler is not the proper party to pursue a rescission because he conveyed the property to a third-party LLC of his own before the property came into the possession of Birch Point Storage. Consequently, when the alleged scheme transpired, Mr. Fowler did not hold title to the property and unwinding his transaction with Lalumiere would not afford him any relief. The Fowler-controlled, third-party LLC is not a plaintiff in this case. ASB also argues that the equitable remedy of rescission is not available

6

when innocent third parties have acquired the property through follow-on conveyances. It notes that the Court indicated as early as February of 2021 that third party Whipping Post could not be lawfully dispossessed absent proof of its knowledge of the fraud, effectively indicating in an early order that the issue of third-party notice would require some focused attention. *See* Order on Pl. Fowler's Mot. for TRO at 5-6 (ECF No. 193). Next, ASB asserts that the only viable claim that might sustain the rescission remedy is under the Maine Consumer Credit Code, and that the Code does not apply to the lease (with buy-back) transaction that informs Mr. Fowler's claim. For these reasons (and for the reason of excessive tardiness), ASB argues that the proposed amendment to implead third parties now holding and/or in the chain of title to the Allen Avenue Property would be futile as well as unduly burdensome and prejudicial, both to the impleaded parties and to existing Defendants who have already secured dismissals.

Machias Savings Bank ("MSB"), which issued loan proceeds that were secured by a mortgage on the Queen Street Property, opposes Plaintiffs' Motion to Amend for the same reasons. It emphasizes the tardiness of the motion, the prejudice entailed in reopening proceedings involving dismissed defendants and new property owners, the unavailability of rescission where innocent parties have gained ownership, and the Court's earlier finding that MSB engaged in arm's length financing and is not subject to liability under Maine law. MSB Opp'n (ECF No. 412).

LH Housing and related parties ("LHH") also oppose Plaintiffs' Motion to Amend. LHH Opp'n (ECF No. 411). They argue that a tardy amendment should not be allowed where the first transfer of title to a third party occurred before the Scheduling Order's deadline to amend the pleadings. They, too, emphasize the extreme tardiness of the request in relation to dispositive

7

motion practice, noting that they obtained summary judgment approximately one year ago and the deadline for amendments expired three years ago. They claim prejudice based on the need for further discovery and motion practice even after several years of litigation. They also claim that the amendment would be futile because the elements of rescission cannot be met and because no effort has been made to allege the facts necessary to prove up a claim for rescission concerning either property so far as third parties are concerned.

I find that the chorus of arguments offered by ASB, MSB, and LHH further militate against amendment or supplementation of the pleadings, although I also conclude that tardiness alone is sufficient to deny the Motion to Amend. The existence of third-party interests has been apparent in this litigation since well before the Scheduling Order's deadline for amendment, yet no effort was timely made to join them as parties for the sake of a proceeding involving the rescission of real estate conveyances induced by fraud. Moreover, Plaintiffs' more recent idea that equitable rescission should be administered like an option contract, such that a third-party purchaser or mortgagee with knowledge of their "options" remains subject to them is too novel to warrant an extension of the case to discover whether such a claim is even viable.[4] This case was long ago launched as a wide-reaching claim of a criminal enterprise seeking treble damages under federal

---

[4] Plaintiffs argue that "Mr. Fowler and Mr. Douglas had enforceable option[s] to purchase 661 Allen Avenue and 75 Queen Street, respectively." Reply at 5. Similarly, in their Motion for Default Judgment, Plaintiffs assert that "[a]ll third parties are subject to specific performance on these options," Mot. Default J. at 9 (ECF No. 406), and posit, "if the equitable remedy of specific performance can subject [sic] a third party after sale, so can the equitable remedy of rescission," *id.* at 13. But Plaintiffs Fowler and Douglas never attempted to focus this litigation or any other litigation on specific performance of their alleged options. In any event, "rescission is generally not available if it 'would prejudice intervening rights of innocent third parties.'" *Douglas v. Lalumiere*, 2021 WL 641370, at *3 (D. Me. Feb. 18, 2021) (Levy, J.) (quoting Restatement (Third) of Restitution and Unjust Enrichment § 54(4)(c) (Am. Law Inst. 2011)). Plaintiffs' proposed amendments do not plausibly suggest that the third parties who now hold the properties are other than innocent of Mr. Lalumiere's alleged malfeasance, and even if they did, this controversy has reached the sea after years of transit and a return to the tributaries of discovery and motion practice is unwarranted due to protracted delay and resulting prejudice.

racketeering law and was unaccompanied by any effort to actually enforce options to purchase in a timely manner, in accordance with the terms stated in the leases or purchase and sale documentation from which the claims arise.  Instead, Plaintiffs characterized the relevant transactions as a scheme to dupe them into relinquishing their property and sought to undo their conveyances rather than see their options performed.  In the interim, measured in years, the properties floated down the river and into the hands of new third parties lacking any alleged connection to the cast of defendants named in the existing pleadings.  That down-streaming process, moreover, started before the summary judgement stage of the litigation, before the close of discovery, and even before the expiration of the deadline to amend the pleadings. Consequently, I am not persuaded by Plaintiffs' argument that impleading new parties now is merely joinder-related housekeeping for the sake of justice that should be liberally granted.  It is not nearly that straightforward.

Plaintiffs' effort to obtain leave to amend or supplement—though warranted to attempt to preserve their rescission claims in the context of default judgment proceedings against Birch Point Storage and MECAP, provide notice to existing parties with a stake in the claim, and ensure the question is resolved after affording an opportunity to be heard—falls short of the good cause standard and would result in undue delay, trial inconvenience, and prejudice to the rights of other parties to the action, and to third parties, and will therefore be denied.

## CONCLUSION

Plaintiffs' Motion to Amend (ECF No. 408) is DENIED.  This means that Plaintiffs' related Motion for Default Judgment (ECF No. 406) is DENIED IN PART and RESERVED IN PART, meaning it will proceed, but without the rescission remedy.  As previously stated, based on the

existing pleadings, the default judgment hearing will focus on Count V of the First Amended Complaint and will be limited to Plaintiffs Douglas and Fowler, as Count V does not state a claim on behalf of Plaintiff Lewis. *See* Am. Compl. ¶¶ 191, 196 (ECF No. 11); *see also* Procedural Order and Order to Show Cause at 2-3 (ECF No. 407).

SO ORDERED.

Dated this 18th day of June, 2026.

/s/ Lance E. Walker
Chief U.S. District Judge

10